**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| LEE MOORE, | : | |
| Petitioner, | : | CASE NO.: C-1:00-CV-00023 |
| v. | : | JUDGE DLOTT |
| BETTY MITCHELL, WARDEN | : | MAGISTRATE JUDGE MERZ |
| Respondent. | : | |

**THE WARDEN'S OPPOSITION TO "PETITIONER'S REQUEST FOR AN
EVIDENTIARY HEARING ON HIS SECOND HABEAS GROUND FOR
RELIEF"**

Respondent, Betty Mitchell, by and through counsel, respectfully requests that

this Honorable Court deny Moore's motion as described above.  The reasons for this

request are fully set forth in the attached memorandum.

Respectfully submitted,

JIM PETRO
Attorney General

s/Charles L. Wille
CHARLES L. WILLE (0056444)
Senior Assistant Attorney General
Capital Crimes Section
30 East Broad Street, 23rd Floor
Columbus, Ohio 43215-3428
(614) 728-7055; (614) 728-8600 (Facsimile)

**COUNSEL FOR RESPONDENT**

## MEMORANDUM

### Statement of the Case

The Petitioner, Lee E. Moore (hereinafter "Moore"), is under a sentence of death. On January 18, 2000, Moore filed a petition for a writ of habeas corpus in which he alleged that his conviction and death sentence are in violation of federal law or the Constitution of the United States.  On March 20, 2000, the District Judge referred the case to United States Magistrate Judge Merz.  On June 1, 2000, per the order of the Magistrate Judge, Moore filed an amended petition for a writ of habeas corpus.  On July 17, 2000, Respondent filed an answer to the amended petition.  On June 23, 2003, the Magistrate Judge granted in part Moore's motion for discovery.  On June 30, 2004, in conformity with the scheduling order issued by the Magistrate Judge, Moore filed a motion for an evidentiary hearing.

### Statement of the Facts

In its opinion on direct appeal, the Supreme Court of Ohio described as follows the facts and circumstances surrounding Moore's indictment, trial, conviction and sentence:

> On the evening of January 14, 1994, defendant-appellant, Lee Edward Moore, Jr., and Jason Holmes abducted Melvin Olinger at gunpoint and forced him into the trunk of his blue Ford Taurus. Moore drove Olinger's car to Mt. Healthy, dropped Holmes off, and picked up Larry Kinley. The two drove Olinger's car to a factory area in Cincinnati, where Moore ordered Olinger out of the trunk, robbed him of his wallet, and shot him in the head, killing him. Moore later admitted committing the crimes but claimed that the shooting was accidental. Moore was subsequently convicted of aggravated murder, kidnapping, and aggravated robbery, and sentenced to death.

On January 14, 1994, at approximately 7:20 p.m., Melvin Olinger, a suburban Chicago businessman, visited his parents in Fairfield. Olinger then went to a funeral home during calling hours for a friend who had passed away. Later, he went to Gina's, a bar, around 9:00 to 9:30 p.m., where he talked with Charlotte James. He told her that he was going to visit his mother that evening before returning to Chicago the next day. Olinger stayed in the bar for about fifteen minutes.

That same evening, Moore and Jason Holmes drove to Fairfield, intending to steal a car. Moore waited outside Gina's and saw Olinger get out of his blue Ford Taurus and enter the bar. When Olinger returned to his car, Moore confronted him with a gun and told Olinger to get in. Moore drove the Taurus to the rear of the bar and forced Olinger to climb into the trunk. Moore drove the Taurus to Larry Kinley's house in Mt. Healthy while Holmes followed in Moore's Ford Fairmont.

Moore and Kinley drove to a store in the Taurus, leaving Holmes behind to babysit. Moore told Kinley how he had stolen the car and that he was going to get it painted and modified. Moore told Kinley that he was driving to the Cumminsville area of Cincinnati to show the car to a friend. Instead, Moore drove to a factory area at 3366 Llewellyn Street. On the way, Moore told Kinley that he was going to kill the man in the trunk. When Kinley asked Moore why he was going to kill the man, Moore responded, "This ain't nothing. * * * We're not going to get caught for it."

Upon driving into the factory area, Moore headed toward a dumpster. He stopped the car and let Olinger out of the trunk while Kinley remained in the car. Kinley testified that he didn't see what happened because the trunk lid was up, but that he heard Moore tell Olinger to empty his pockets. Kinley testified that Moore directed Olinger to the corner by the dumpster and that he heard Olinger beg and plead to Moore about Olinger's sick mother.

Kinley heard a gunshot, and then Moore jumped into the car. According to Kinley, Moore laughed and asked him, "Did you see his dome get shot off?" After leaving the scene, Moore directed Kinley to take the credit cards out of Olinger's wallet. Kinley said that Moore sounded upset because he had forgotten to ask Olinger for the personal identification number to his Jeanie card.

In a taped statement to police, Moore claimed that he asked Olinger for his wallet after directing him to the dumpster. When Olinger dropped the wallet and stepped forward, Moore said that he panicked and "accidentally pulled the trigger. But it was an accident. * * * I had a large amount of drinks an' * * * some marijuana. An' it truly truly was an accident."

Moore and Kinley returned to Kinley's house, where Moore told Holmes what had happened. Moore told Holmes that he planned to keep the Taurus and that Holmes could use his Fairmont any time he wanted. At Moore's request Kinley took the Michigan plates off Olinger's Taurus. Kinley then took one of the plates off Moore's Fairmont and put it on the Taurus.

The next day, Moore and Kinley went out to get "some stuff." Moore used Olinger's credit card to purchase over $1,000 worth of clothing and jewelry at two J.C. Penney stores in the Cincinnati area. A sales clerk became suspicious and contacted Penney's loss prevention officer. The officer observed two black males place their purchases in the trunk of a blue Ford Taurus with Ohio tags and drive away.

At approximately 5:30 p.m. on January 20, police apprehended Moore and Kinley as they waited for an order in the drive-through lane of a McDonald's restaurant. Moore was placed in a holding cell at the Mt. Healthy police station. Officers confiscated several items of clothing from Moore which were believed to have been purchased with Olinger's credit card. Shortly after midnight, Moore was advised of his Miranda rights and signed a waiver of rights form.

Moore was then taken to the downtown Cincinnati police station for questioning. Although the weather was cold and snowy, Moore was required to walk a short distance to and from the police car in his stocking feet, since his shoes had been confiscated as evidence. At approximately 6:30 a.m., while "crying a little bit" and sniffling, Moore admitted to police that he had robbed and kidnapped Olinger and that he had shot and killed Olinger. He claimed that the shooting was accidental.

Based on information supplied by Kinley, police located Olinger's body. The chief deputy coroner determined that Olinger had died of a single gunshot wound to the head fired from a distance of between six and twenty-four inches away.

The grand jury indicted Moore on three counts of aggravated murder, one count of aggravated robbery, and one count of kidnapping. All counts carried a firearm specification. All three aggravated murder counts carried three death-penalty specifications: (1) aggravated murder to escape detection for kidnapping and/or aggravated robbery [*R.C. 2929.04(A)(3)*]; (2) aggravated murder committed in connection with kidnapping where Moore either was the principal offender or committed the aggravated murder with prior calculation and design [*R.C. 2929.04(A)(7)*]; and (3) aggravated murder committed in connection with aggravated robbery where Moore either was the principal offender or

committed the aggravated murder with prior calculation and design [*R.C. 2929.04(A)(7)*].

The defense essentially admitted Moore's involvement in the crimes. It argued that Moore had not formed the specific intent to kill Olinger. After deliberation, the jury found Moore guilty as charged.

Prior to the mitigation hearing, the trial court merged the three death specifications of Count I (aggravated murder committed with prior calculation and design) into one specification: murder to escape detection for kidnapping and/or aggravated robbery. The court also merged the two felony murder counts into one count and merged the three specifications attached to these counts into two: murder during kidnapping and murder during aggravated robbery.

During the mitigation hearing, several witnesses testified on Moore's behalf, and Moore gave a remorseful unsworn statement admitting the wrongfulness of his actions.

The jury recommended death, and the court imposed the death penalty. The court also imposed consecutive prison sentences for Moore's other convictions. Upon appeal, the court of appeals affirmed the convictions and sentence of death.

The cause is now before this court upon an appeal as of right.

State v. Moore, 81 Ohio St.3d 22 (1998).

On direct appeal before the Supreme Court of Ohio, Moore claimed, in support of his Thirteenth Proposition of Law, that his trial counsels were constitutionally ineffective in their preparation and presentation of mitigating evidence. Moore alleged specifically that counsel's deficient preparation of Dr. Chiappone's precipitated "devastating" testimony on cross-examination to the effect that Moore admitted killing Mr. Olinger to avoid apprehension and that he lied to the police when he claimed that the killing was accidental, thereby depriving him of a fundamentally fair sentencing hearing. The Supreme Court of Ohio denied relief, essentially finding that the record did not substantiate Moore's allegations. State v. Moore, 81 Ohio St.3d at 34-37.

In his subsequent petition for post-conviction relief, Moore alleged, in support of his Third and Fourth Claims, that trial counsel were ineffective in failing to prepare for mitigation properly and in failing to present a theory of mitigation. The trial court denied relief. In affirming the trial court's judgment, the Ohio Court of Appeals found specifically that Moore did not present any evidence outside the record in support of his allegations, and that Moore did not suggest, let alone offer, other mitigating evidence that counsel could have presented. State v. Moore, 1998 WL 638353 (Ohio App. 1 Dist. 1998). The Supreme Court of Ohio denied without opinion Moore's discretionary appeal. State v. Moore, 84 Ohio St.3d 1472 (1999).

## Argument

### MOORE'S REQUESTS FOR AN EVIDENTIARY HEARING SHOULD BE DENIED.

Title 28 U.S.C. Section 2254(e) contains significant limitations on the authority of the district court to order an evidentiary hearing in federal habeas corpus:

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that --

(A)    the claim relies on--

(i)    a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was presently unavailable; or,

(ii)    a factual predicate that could not have been previously discovered through the exercise of due diligence; and,

(B)    the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

In Williams v. Taylor, 529 U.S. 420, 120 S.Ct. 1479 (2000), the Supreme Court of

6

the United States held that Section 2254(e) presupposes a lack of due diligence on the part of the habeas corpus petitioner in failing to develop the factual basis of a claim in state court. Id., at 432. "Diligence" for the purposes of Section 2254(e)(2) depends upon "whether the prisoner made a reasonable attempt, in light of the available information available at the time, to investigate and pursue claims in state court," and, "will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." Id., at 435, 437.

Even if the petitioner can satisfy Section 2254(e)(2), the petitioner still is not necessarily entitled to an evidentiary hearing. Rather, the petitioner must nevertheless demonstrate some deficiency in the state court's fact finding procedures, or that an evidentiary hearing is necessary to resolve factual disputes relevant to adjudicating a cognizable claim for relief. McAdoo v. Elo, 365 F.3d 487, 500 (6th Cir. 2004) (regardless of the applicability of Section 2254(e)(2), evidentiary hearing not warranted where record fully supported denial of relief); Cardwell v. Greene, 152 F.3d 331, 337 (4th Cir. 1998); Baja v. Ducharme, 187 F.3d 1075, 1078 (9th Cir. 1999); Murphy v. Johnson, 205 F.3d 809, 815 (5th Cir. 2000); Fisher v. Lee, 215 F.3d 438, 455 (4th Cir. 2000).

Finally, in the context of the standard of deference required by Section 2254(d)(1), the Supreme Court has "made clear that whether a state court's decision was unreasonable must be assessed in light of the record the court had before it." Holland v. Jackson, 542 U.S. __ (2004), 2004 LEXIS 4758, citing Yarborough v. Gentry, __ U.S. __, 124 S.Ct. 1 (2004). Thus, Section 22254(e)(2)'s restrictions apply when a petitioner seeks relief based on new evidence, regardless of whether or not the petitioner is given an

evidentiary hearing.    Holland v. Jackson, Slip Opinion at 4.   Moreover, where the state

court has rejected relief based on a finding that the petitioner failed to timely present the

new evidence, a federal habeas court errs by granting relief in disregard of the state

court's finding.   Id.

In this case, Moore requests an evidentiary hearing with respect to his second

ground, in which he alleges that his trial counsel were ineffective in the preparation and

presentation of mitigating evidence; and with respect to "factual issues raised by the

affirmative defenses asserted by the Warden, such as procedural default."   Moore also

argues that it is appropriate for the Court to receive the testimony of the attorneys who

represented him before the Supreme Court of Ohio, in relation to his claims of ineffective

assistance of appellate counsel.   Moore's Motion at 4.   The Warden opposes Moore's

requests.   As explained below, Moore failed to pursue with diligence in state court the

claims upon which he requests an evidentiary hearing.   And, in any event, Moore relied

exclusively on the trial record in presenting his claims to the state court.   As the question

presented here is whether the state courts unreasonably denied relief based on the record

before them, an evidentiary hearing is neither appropriate nor necessary.   Accordingly,

Moore's requests for an evidentiary hearing should be denied.


**A.    An evidentiary hearing is precluded by Section 2254(e)(2).**

Moore proposes as witnesses Daniel James and Timothy Deardorf, the attorneys

who represented him at trial; Dr. Chiappone, the psychologist who testified for Moore at

trial; Chuck Stidham, an attorney employed by Moore's trial attorneys as a mitigation

specialist; Steve Vonderhaar, Stidham's assistant; Dr. Janice Ort, whom Moore describes

as a "consulting expert regarding prejudice; and Robert Ruehlman, the trial judge. With the possible exception of Dr. Ort, Moore knew all of the proposed witnesses at the time Moore filed his petition for post-conviction relief. As found by the Ohio Court of Appeals, Moore offered no evidence outside the record in support of his post-conviction claims of ineffective counsel. Accordingly, whatever relevant information these witnesses may have had, it was not provided to the state courts.

Before the Court may consider information not presented to the state courts in adjudicating Moore's claims, *and regardless of Moore's requests for an evidentiary hearing*, Moore must show that he made "a reasonable attempt, in light of the available information available at the time," to obtain such information and present it in state court. Williams v. Taylor, supra at 435; Holland v. Jackson, supra, Slip Opinion at 4. Moore has not even attempted to make such a showing. For example, Moore has not averred that he attempted to interview the witnesses and obtain their affidavits, and that the witnesses refused to cooperate. And there is no evidence that the witnesses would have declined to provide affidavits or other relevant information. Indeed, according to their deposition testimony, Attorneys James and Deardorff voluntarily provided their files to the Office of the Ohio Public Defender upon request, in anticipation of Moore's federal proceedings. James Deposition of December 3, 2003, at 66; Deardorff Deposition at 116.

In his requests for an evidentiary hearing, Moore avers that he satisfied the diligence requirement of Section 2254(e)(2) simply by requesting discovery and an evidentiary hearing in his state post-conviction petition, and by raising the denial of discovery and an evidentiary hearing on appeal. As noted previously, in denying Moore an evidentiary hearing, the state courts found that Moore failed to present evidence de

hors the record in support of his post-conviction petition.  Thus, in effect, Moore asks this Court to disregard the latter finding of the state courts and to hold, based on evidence never presented to the state courts, that the state courts unreasonably denied his claims of ineffective assistance of trial counsel.

The Warden respectfully submits that Moore's arguments are unavailing.  Section 2254(e)(2) requires that a habeas corpus petitioner, *at a minimum*, seek an evidentiary hearing in state court.  Williams v. Taylor, 529 U.S. at 437.   In other words, the Supreme Court recognized that "diligence" normally includes a request for an evidentiary hearing in state court.  The Supreme Court did *not* hold that requesting a hearing is the *only* action that a petitioner is required to undertake in "diligently" pursuing his claims.  Moreover, this Court cannot disregard the finding by the state courts that Moore failed to present evidence outside the record sufficient to warrant a hearing.  The latter finding is an independent basis for the state courts' denial of relief that this Court must consider, in determining whether the state courts reasonably denied relief based on the record before them.  Holland v. Jackson, Slip Opinion at 4.

Moore's "bottom line" is that a habeas corpus petitioner may avoid the restrictions of Section 2254(e)(2) by the simple expedient of presenting the state courts with a "boilerplate" request for discovery and a hearing.  The Warden respectfully submits that Moore's argument is erroneous.   Moore has not shown that he diligently attempted to obtain in state court information from the witnesses that he now proposes to present in an evidentiary hearing before this Court.  And Moore does not argue that he can otherwise satisfy the requirements of Section 2254(e)(2).   Accordingly, an evidentiary hearing is precluded.

### B.    An evidentiary hearing is not necessary.

Whether the state courts unreasonably denied Moore relief "must be assessed in light of the record the court had before it." See Holland v. Jackson, supra, and the cases cited therein.   Although Moore generally refers to his Second Ground in requesting an evidentiary hearing, the factual "disputes" upon which he seeks to present evidence are limited to his allegations concerning trial counsel's handling of Dr. Chiappone's testimony.  Moore presented this claim on direct appeal to the Supreme Court of Ohio. Accordingly, this Court necessarily is limited to the trial record in adjudicating Moore claim in federal habeas corpus.  See also Yarborough v. Gentry, supra, 124 S.Ct. at 5-6, quoting Massaro v. United States, 538 U.S. __, 123 S.Ct. 1690, 1694 (2003). (presumption that trial counsel's actions were within the wide scope of professional judgment "has particular force where a petitioner bases his ineffective-assistance claim solely on the trial record, creating a situation in which a court 'may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive.'").

In any event, the discovery conducted by Moore in these proceedings revealed no clear and convincing evidence that undermines the Ohio Supreme Court's essential factual determination that trial counsel adequately prepared for the penalty phase of the trial.    According to his deposition testimony, Attorney James discussed with Dr. Chiappone, in a three-hour meeting before the penalty hearing, Dr. Chiapone's anticipated testimony.  James was absolutely certain that Dr. Chiappone did not inform him of the "devastating" statements by Moore revealed on cross-examination.  James Deposition of December 3, 2003, at pages 84-89.  Contrary to Moore's arguments, Dr.

Chiappone's recollection is not unequivocally contradictory. Dr. Chiappone could not specifically recall the substance of his discussions with James. Dr. Chiappone assumed that he told James the information contained in the "Defendant's account of the offense" section of his diagnostic report. That document contains no reference to Moore's admission that he shot the victim to escape detection. Deposition of Dr. Chiappone, pages 153, 156-157, attached excerpt from Clinic File.

Moore suggests, in the alternative, that even if James could not have anticipated Dr. Chiappone's testimony on cross-examination, he was professionally deficient in failing to prevent Dr. Chiappone from disclosing Moore's statements via supposedly improper "ex parte" discussions with the prosecutor. Moore's new "spin" on his claim is illusory. The documents cited by Moore indicate that Dr. Chiappone contacted Judge Ruehlman on November 14, 1994, and met with the prosecutor on November 17, 1994. But all of this occurred after James notified the prosecutor, on November 10, 1994, that Dr. Chiappone would be called as a defense witness. December 3, 2003, Deposition of James, at pages 77-78. Thus, there were no improper "ex parte" discussions by anyone with Dr. Chiappone. Further, Moore can point to no professional standard that authorizes let alone requires a defense attorney to instruct a witness not to speak with the prosecuting attorney prior to trial.

Insofar as Moore seeks to adduce evidence in support of his other allegations, this Court is bound to consider the holding of the state courts that Moore failed to present in post-conviction evidence outside the record sufficient to warrant a hearing on his claims. The state courts' holding is objectively reasonable. There is nothing inherently unfair about the state courts requiring Moore to present *some* evidence in support of his claims

before granting discovery and an evidentiary hearing.    Moreover, the Warden notes that Moore specifically requested the trial court to grant discovery and an evidentiary hearing only with respect to his claims that electrocution constituted cruel and unusual punishment, and that his sentence was the product of racial discrimination.  He made no such specific requests with respect to his claims of ineffective trial counsel.  Appendix, Pages 734-739, 767-770.

Finally, contrary to Moore's arguments, this Court need not order an evidentiary hearing on "cause and prejudice" or "appellate ineffectiveness."  Moore does not aver specifically the defaulted claims relative to his request.    Nor does he allege specific factual allegations that if proven would establish "cause" to excuse his defaults.    In proposing testimony by Ms. Agars and Ms. Sears, the attorneys who represented Moore on direct appeal before the Supreme Court of Ohio, Moore suggests that their allegedly ineffective assistance constitutes "cause and prejudice" as well as an independent ground for relief.   He is mistaken.   See Murray v. Carrier, 501 U.S. 722, 755 (1991) (counsel's ineffectiveness will constitute cause only if it is an independent constitutional violation); Ross v. Moffitt, 417 U.S. 600, 616 (1974) (no constitutional right to counsel beyond first direct appeal as of right).

## <u>CONCLUSION</u>

For the reasons stated herein, the Warden respectfully submits that an evidentiary hearing is neither appropriate nor necessary in this case.

Respectfully submitted,

JIM PETRO (0022096)
Attorney General


s/Charles L. Wille
CHARLES L. WILLE (0056444)
Senior Assistant Attorney General
Capital Crimes Section
30 East Broad Street, 23rd Floor
Columbus, Ohio 43215-3428
(614) 728-7055; (614) 728-8600 (Facsimile)

**COUNSEL FOR RESPONDENT**

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing *Respondent's Memorandum in Opposition* has been forwarded electronically and by first-class U.S. mail, postage pre-paid to: Laurence E. Komp, Esquire, 423 Madrina, Ballwin, Missouri, 63021; and Michael J. O'Hara, Esquire, 25 Crestview Hills Mall Road, Suite 201, P.O. Box 17411, Covington, Kentucky, 41017; Counsel for Petitioner, this 12th day of July, 2004.

s/Charles L. Wille
CHARLES L. WILLE (0056444)
Senior Assistant Attorney General
