**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| LEE MOORE, | : | |
| Petitioner, | : | CASE NO.: C-1:00-CV-00023 |
| v. | : | JUDGE DLOTT |
| BETTY MITCHELL, WARDEN | : | MAGISTRATE JUDGE MERZ |
| Respondent. | : | |

**THE WARDEN'S MEMORANDUM IN OPPOSITION TO MOORE'S "APPEAL FROM DECISION AND ORDER DENYING PETITIONER'S MOTION FOR EVIDENTIARY HEARING"**

Respectfully submitted,

JIM PETRO
Attorney General

s/Charles L. Wille
CHARLES L. WILLE (0056444)
Senior Assistant Attorney General
Capital Crimes Section
30 East Broad Street, 23rd Floor
Columbus, Ohio 43215-3428
(614) 728-7055; (614) 728-8600 (Facsimile)

**COUNSEL FOR RESPONDENT**

**STATEMENT OF THE CASE**

The Petitioner, Lee E. Moore (hereinafter "Moore"), is under a sentence of death. On January 18, 2000, Moore filed a petition for a writ of habeas corpus in which he alleged that his conviction and death sentence are in violation of federal law or the Constitution of the United States. On March 20, 2000, the Court referred the case to United States Magistrate Judge Merz. On June 1, 2000, per the order of the Magistrate Judge, Moore filed an amended petition for a writ of habeas corpus. On July 17, 2000, Respondent filed an answer to the amended petition. On June 23, 2003, the Magistrate Judge granted in part Moore's motion for discovery.

On June 30, 2004, in conformity with the scheduling order issued by the Magistrate Judge, Moore filed a motion for an evidentiary hearing. Moore requested an evidentiary hearing on his claim that trial counsel presented ineffective representation during the mitigation phase, and on unspecified "factual issues raised by the affirmative defenses asserted by the Warden, such as procedural default." Moore proposed to call as witnesses, among other persons, his trial and appellate attorneys, and the trial judge. The Respondent subsequently opposed Moore's motion, on the grounds that Moore did not diligently develop facts in support of his claims in state court, and because an evidentiary hearing was not necessary in any event to adjudicate Moore's claims.

On September 3, 2004, the Magistrate Judge denied Moore's motion. The Magistrate Judge found, in pertinent part, that Moore failed to present evidence outside the record in state post-conviction proceedings in support of his claim of ineffective assistance of counsel; that Moore presented no satisfactory explanation for his failure to present the latter evidence in state court; that Moore failed to set forth the expected

testimony of his appellate counsel and the trial judge or explain the relevance of any such testimony to the claims of constitutional error before the Court; and that Moore failed to adequately set forth the testimony or evidence he sought to present with respect to the "factual issues raised by the affirmative defenses asserted by the Warden." See Decision and Order Denying Petitioner's Motion for Evidentiary Hearing, pages 8-10. On September 17, 2004, Moore filed an appeal to the Court of the Magistrate Judge's order.

**STATEMENT OF THE FACTS**

In its opinion on direct appeal, the Supreme Court of Ohio described as follows the facts and circumstances surrounding Moore's indictment, trial, conviction and sentence:

> On the evening of January 14, 1994, defendant-appellant, Lee Edward Moore, Jr., and Jason Holmes abducted Melvin Olinger at gunpoint and forced him into the trunk of his blue Ford Taurus. Moore drove Olinger's car to Mt. Healthy, dropped Holmes off, and picked up Larry Kinley. The two drove Olinger's car to a factory area in Cincinnati, where Moore ordered Olinger out of the trunk, robbed him of his wallet, and shot him in the head, killing him. Moore later admitted committing the crimes but claimed that the shooting was accidental. Moore was subsequently convicted of aggravated murder, kidnapping, and aggravated robbery, and sentenced to death.
>
> On January 14, 1994, at approximately 7:20 p.m., Melvin Olinger, a suburban Chicago businessman, visited his parents in Fairfield. Olinger then went to a funeral home during calling hours for a friend who had passed away. Later, he went to Gina's, a bar, around 9:00 to 9:30 p.m., where he talked with Charlotte James. He told her that he was going to visit his mother that evening before returning to Chicago the next day. Olinger stayed in the bar for about fifteen minutes.
>
> That same evening, Moore and Jason Holmes drove to Fairfield, intending to steal a car. Moore waited outside Gina's and saw Olinger get out of his blue Ford Taurus and enter the bar. When Olinger returned to his car, Moore confronted him with a gun and told Olinger to get in. Moore drove the Taurus to the rear of the bar and forced Olinger to climb into the trunk. Moore drove the Taurus to Larry Kinley's house in Mt. Healthy while Holmes followed in Moore's Ford Fairmont.

Moore and Kinley drove to a store in the Taurus, leaving Holmes behind to babysit. Moore told Kinley how he had stolen the car and that he was going to get it painted and modified. Moore told Kinley that he was driving to the Cumminsville area of Cincinnati to show the car to a friend. Instead, Moore drove to a factory area at 3366 Llewellyn Street. On the way, Moore told Kinley that he was going to kill the man in the trunk. When Kinley asked Moore why he was going to kill the man, Moore responded, "This ain't nothing. * * * We're not going to get caught for it."

Upon driving into the factory area, Moore headed toward a dumpster. He stopped the car and let Olinger out of the trunk while Kinley remained in the car. Kinley testified that he didn't see what happened because the trunk lid was up, but that he heard Moore tell Olinger to empty his pockets. Kinley testified that Moore directed Olinger to the corner by the dumpster and that he heard Olinger beg and plead to Moore about Olinger's sick mother.

Kinley heard a gunshot, and then Moore jumped into the car. According to Kinley, Moore laughed and asked him, "Did you see his dome get shot off?" After leaving the scene, Moore directed Kinley to take the credit cards out of Olinger's wallet. Kinley said that Moore sounded upset because he had forgotten to ask Olinger for the personal identification number to his Jeanie card.

In a taped statement to police, Moore claimed that he asked Olinger for his wallet after directing him to the dumpster. When Olinger dropped the wallet and stepped forward, Moore said that he panicked and "accidentally pulled the trigger. But it was an accident. * * * I had a large amount of drinks an' * * * some marijuana. An' it truly truly was an accident."

Moore and Kinley returned to Kinley's house, where Moore told Holmes what had happened. Moore told Holmes that he planned to keep the Taurus and that Holmes could use his Fairmont any time he wanted. At Moore's request Kinley took the Michigan plates off Olinger's Taurus. Kinley then took one of the plates off Moore's Fairmont and put it on the Taurus.

The next day, Moore and Kinley went out to get "some stuff." Moore used Olinger's credit card to purchase over $1,000 worth of clothing and jewelry at two J.C. Penney stores in the Cincinnati area. A sales clerk became suspicious and contacted Penney's loss prevention officer. The officer observed two black males place their purchases in the trunk of a blue Ford Taurus with Ohio tags and drive away.

At approximately 5:30 p.m. on January 20, police apprehended Moore and Kinley as they waited for an order in the drive-through lane of a McDonald's restaurant. Moore was placed in a holding cell at the Mt. Healthy police station. Officers confiscated several items of clothing from Moore which were believed to have been purchased with Olinger's credit card. Shortly after midnight, Moore was advised of his Miranda rights and signed a waiver of rights form.

Moore was then taken to the downtown Cincinnati police station for questioning. Although the weather was cold and snowy, Moore was required to walk a short distance to and from the police car in his stocking feet, since his shoes had been confiscated as evidence. At approximately 6:30 a.m., while "crying a little bit" and sniffling, Moore admitted to police that he had robbed and kidnapped Olinger and that he had shot and killed Olinger. He claimed that the shooting was accidental.

Based on information supplied by Kinley, police located Olinger's body. The chief deputy coroner determined that Olinger had died of a single gunshot wound to the head fired from a distance of between six and twenty-four inches away.

The grand jury indicted Moore on three counts of aggravated murder, one count of aggravated robbery, and one count of kidnapping. All counts carried a firearm specification. All three aggravated murder counts carried three death-penalty specifications: (1) aggravated murder to escape detection for kidnapping and/or aggravated robbery [*R.C. 2929.04(A)(3)*]; (2) aggravated murder committed in connection with kidnapping where Moore either was the principal offender or committed the aggravated murder with prior calculation and design [*R.C. 2929.04(A)(7)*]; and (3) aggravated murder committed in connection with aggravated robbery where Moore either was the principal offender or committed the aggravated murder with prior calculation and design [*R.C. 2929.04(A)(7)*].

The defense essentially admitted Moore's involvement in the crimes. It argued that Moore had not formed the specific intent to kill Olinger. After deliberation, the jury found Moore guilty as charged.

Prior to the mitigation hearing, the trial court merged the three death specifications of Count I (aggravated murder committed with prior calculation and design) into one specification: murder to escape detection for kidnapping and/or aggravated robbery. The court also merged the two felony murder counts into one count and merged the three specifications attached to these counts into two: murder during kidnapping and murder during aggravated robbery.

> During the mitigation hearing, several witnesses testified on Moore's behalf, and Moore gave a remorseful unsworn statement admitting the wrongfulness of his actions.
>
> The jury recommended death, and the court imposed the death penalty. The court also imposed consecutive prison sentences for Moore's other convictions. Upon appeal, the court of appeals affirmed the convictions and sentence of death.
>
> The cause is now before this court upon an appeal as of right.

State v. Moore, 81 Ohio St.3d 22 (1998).

On direct appeal before the Supreme Court of Ohio, Moore claimed, in support of his Thirteenth Proposition of Law, that his trial counsels were constitutionally ineffective in their preparation and presentation of mitigating evidence. Moore alleged specifically that counsel's deficient preparation of Dr. Chiappone's precipitated "devastating" testimony on cross-examination to the effect that Moore admitted killing Mr. Olinger to avoid apprehension and that he lied to the police when he claimed that the killing was accidental, thereby depriving him of a fundamentally fair sentencing hearing. The Supreme Court of Ohio denied relief, essentially finding that the record did not substantiate Moore's allegations. State v. Moore, 81 Ohio St.3d at 34-37.

In his subsequent petition for post-conviction relief, Moore alleged, in support of his Third and Fourth Claims, that trial counsel were ineffective in failing to prepare for mitigation properly and in failing to present a theory of mitigation. The trial court denied relief. In affirming the trial court's judgment, the Ohio Court of Appeals found specifically that Moore did not present any evidence outside the record in support of his allegations, and that Moore did not suggest, let alone offer, other mitigating evidence that counsel could have presented. State v. Moore, 1998 WL 638353 (Ohio App. 1 Dist.

1998). The Supreme Court of Ohio denied without opinion Moore's discretionary appeal. State v. Moore, 84 Ohio St.3d 1472 (1999).

## ARGUMENT

### THE MAGISTRATE JUDGE CORRECTLY DENIED MOORE'S REQUESTS FOR AN EVIDENTIARY HEARING.

Title 28 U.S.C. Section 2254(e) contains significant limitations on the authority of the district court to order an evidentiary hearing in federal habeas corpus:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that --
>
> (A) the claim relies on--
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was presently unavailable; or,
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and,
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

In Williams v. Taylor, 529 U.S. 420, 120 S.Ct. 1479 (2000), the Supreme Court of the United States held that Section 2254(e) presupposes a lack of due diligence on the part of the habeas corpus petitioner in failing to develop the factual basis of a claim in state court. Id., at 432. "Diligence" for the purposes of Section 2254(e)(2) depends upon "whether the prisoner made a reasonable attempt, in light of the available information available at the time, to investigate and pursue claims in state court," and, "will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." Id., at 435, 437.

Even if the petitioner can satisfy Section 2254(e)(2), the petitioner still is not necessarily entitled to an evidentiary hearing. Rather, the petitioner must nevertheless demonstrate some deficiency in the state court's fact finding procedures, or that an evidentiary hearing is necessary to resolve factual disputes relevant to adjudicating a cognizable claim for relief. McAdoo v. Elo, 365 F.3d 487, 500 (6th Cir. 2004) (regardless of the applicability of Section 2254(e)(2), evidentiary hearing not warranted where record fully supported denial of relief); Cardwell v. Greene, 152 F.3d 331, 337 (4th Cir. 1998); Baja v. Ducharme, 187 F.3d 1075, 1078 (9th Cir. 1999); Murphy v. Johnson, 205 F.3d 809, 815 (5th Cir. 2000); Fisher v. Lee, 215 F.3d 438, 455 (4th Cir. 2000).

Finally, in the context of the standard of deference required by Section 2254(d)(1), the Supreme Court has "made clear that whether a state court's decision was unreasonable must be assessed in light of the record the court had before it." Holland v. Jackson, 542 U.S. __ (2004), 2004 LEXIS 4758, citing Yarborough v. Gentry, __ U.S. __, 124 S.Ct. 1 (2004). Thus, Section 22254(e)(2)'s restrictions apply when a petitioner seeks relief based on new evidence, regardless of whether or not the petitioner is given an evidentiary hearing. Holland v. Jackson, Slip Opinion at 4. Moreover, where the state court has rejected relief based on a finding that the petitioner failed to timely present the new evidence, a federal habeas court errs by granting relief in disregard of the state court's finding. Id.

In this case, Moore requested an evidentiary hearing with respect to his second ground, in which he alleges that his trial counsel were ineffective in the preparation and presentation of mitigating evidence; and with respect to "factual issues raised by the

affirmative defenses asserted by the Warden, such as procedural default." Moore also argued that it is appropriate for the Court to receive the testimony of the attorneys who represented him before the Supreme Court of Ohio, in relation to his claims of ineffective assistance of appellate counsel. Moore's Motion at 4. As explained below, the Magistrate Judge correctly found that Moore was not diligent in developing in state court a factual basis for his claims, and that Moore in any event has failed to demonstrate that an evidentiary hearing in this case is necessary or appropriate.

**A. An evidentiary hearing is precluded by Section 2254(e)(2).**

Moore proposed as witnesses Daniel James and Timothy Deardorf, the attorneys who represented him at trial; Dr. Chiappone, the psychologist who testified for Moore at trial; Chuck Stidham, an attorney employed by Moore's trial attorneys as a mitigation specialist; Steve Vonderhaar, Stidham's assistant; Dr. Janice Ort, whom Moore describes as a "consulting expert regarding prejudice; and Robert Ruehlman, the trial judge. With the possible exception of Dr. Ort, Moore knew all of the proposed witnesses at the time Moore filed his petition for post-conviction relief. As found by the Ohio Court of Appeals, Moore offered no evidence outside the record in support of his post-conviction claims of ineffective counsel. Accordingly, whatever relevant information these witnesses may have had, it was not provided to the state courts.

Before the Court may consider information not presented to the state courts in adjudicating Moore's claims, *and regardless of Moore's requests for an evidentiary hearing*, Moore must show that he made "a reasonable attempt, in light of the available information available at the time," to obtain such information and present it in state court. Williams v. Taylor, supra at 435; Holland v. Jackson, supra, Slip Opinion at 4. Moore

did not even attempt to make such a showing. For example, Moore did not aver that he attempted to interview the witnesses and obtain their affidavits, and that the witnesses refused to cooperate. And there is no evidence that the witnesses would have declined to provide affidavits or other relevant information. Indeed, according to their deposition testimony, Attorneys James and Deardorff voluntarily provided their files to the Office of the Ohio Public Defender upon request, in anticipation of Moore's federal proceedings. James Deposition of December 3, 2003, at 66; Deardorff Deposition at 116.

In his requests for an evidentiary hearing, Moore averred simply that he satisfied the diligence requirement of Section 2254(e)(2) by requesting discovery and an evidentiary hearing in his state post-conviction petition, and by raising the denial of discovery and an evidentiary hearing on appeal. As noted previously, in denying Moore an evidentiary hearing, the state courts found that Moore failed to present evidence de hors the record in support of his post-conviction petition. Thus, in effect, Moore asked the Magistrate Judge to disregard the latter factual findings of the state courts; to find, contrary to Ohio law, that Moore was entitled to an evidentiary hearing in state court simply because he requested one; and to hold that the state courts were unreasonable in denying Moore's requests for discovery and an evidentiary hearing, *based on evidence never presented to them, and even though Moore offered no explanation for failing to present it.*

The Warden respectfully submits, as correctly recognized by the Magistrate Judge, that the rules governing the availability of evidentiary hearings in habeas corpus do not allow for such anomalous results. Section 2254(e)(2) requires that a habeas corpus petitioner, *at a minimum*, seek an evidentiary hearing in state court. Williams v.

Taylor, 529 U.S. at 437. In other words, the Supreme Court recognized that "diligence" normally includes a request for an evidentiary hearing in state court. The Supreme Court did *not* hold that requesting a hearing is the *only* action that a petitioner is required to undertake in "diligently" pursuing his claims. Moreover, the Magistrate Judge was *required* to respect the factual findings by the state courts that Moore failed to present evidence outside the record sufficient to warrant a hearing. See Byrd v. Collins, 209 F. 3d 486, 515, 516 (6th Cir. 2000) (Because petitioner failed to rebut the statutory presumption of correctness that the federal habeas court must award to the factual findings of the state courts, including specific factual finding that petitioner failed to present sufficient evidence to warrant an evidentiary hearing, district court was required to defer to such findings).

Moore's "bottom line" to the Magistrate Judge was that his "boilerplate" requests for discovery and a hearing in state court were sufficient to overcome the restrictions of Section 2254(e)(2). The Warden respectfully submits the Magistrate Judge correctly rejected Moore's argument. Moore did not show that he diligently attempted to obtain in state court information from the witnesses that he now proposes to present in an evidentiary hearing before this Court. And Moore did not argue that he can otherwise satisfy the requirements of Section 2254(e)(2). Accordingly, the Magistrate Judge correctly found that an evidentiary hearing is precluded, based on Moore's failure to act diligently.

In his appeal of the Magistrate Judge's order, Moore again asserts that his requests for discovery and an evidentiary hearing in state post-conviction are sufficient to satisfy Section 2254(e)(2). According to Moore, this is a "circuit" rule. He also

supplements his argument with an attempt to articulate some "cause" for his failure to present in support of his state post-conviction petition evidence de hors the record in support of his claims. He contends, for example, that the state courts did not afford him sufficient time to obtain affidavits from potential witnesses, that "[t]here is little reasonable possibility that three attorneys involved in the trial and mitigation defense would agree to offer affidavits that concede their own ineffectiveness and, thus, raise serious ethical questions regarding their performance in this case," and that he was unable to obtain an affidavit from Dr. Chiappone, the defense's expert at trial, due to Dr. Chiappone's request to be paid for his services. He also offers a somewhat confusing argument (at least to Respondent) that "inconsistent and confusing" rulings by the state courts prevented him from developing the facts. Appeal Memorandum at pages 7, 10.

Contrary to Moore's arguments, the Magistrate Judge's ruling is perfectly consistent with Sixth Circuit precedent. As noted by the Magistrate Judge, the Sixth Circuit in Mason v. Mitchell, 320 F.3d 604 (6th Cir. 2003), did not address the question presented here, i.e., whether an Ohio prisoner who failed to support his state post-conviction with evidence de hors the record was nevertheless diligent because he requested discovery and an evidentiary hearing. Decision and Order at page 9. Similarly, in McFarland v. Yukins, 356 F.3d 688 (6th Cir. 2004), the Sixth Circuit simply held that under the facts presented in that case, the prisoner's request for an evidentiary hearing was sufficient to warrant a finding that he did not fail to diligently develop the facts in state court. See 356 F. 3d at 712, citing Greer v. Mitchell, 264 F.3d 663,681 (6th Cir. 2001). The Sixth Circuit did *not* hold that a "prisoner in this circuit need *only* pursue his request for discovery and an evidentiary hearing in the state court proceedings

at the appropriate time" in order to satisfy Section 2254(e)(2)'s diligence standard. Appeal Memorandum at page 6 (emphasis added).

Moreover, Greer and McFarland are consistent with the common-sense holdings of other circuits that the diligence standard requires an examination of the petitioner's conduct in light of the particular facts, and, therefore, that the mere request for an evidentiary hearing in state court does not necessarily demonstrate diligence in every case. See Cannon v. Mullin, 2004 U.S. App. Lexis 19224 (10th Cir. 2004) (federal district court should not be required to conduct an evidentiary hearing on a claim when the applicant for relief has not presented evidence to the state court that would be readily available if the claim were true); Dowthitt v. Johnson, 230 F.3d 733, 758 (5th Cir. 2000) (mere requests for evidentiary hearings will not suffice to demonstrate diligence). The Tenth Circuit's recent observations are particularly relevant here:

> In prior cases in which the issue was raised, we have said that requesting an evidentiary hearing was sufficient to constitute diligence. See, e.g., Boyd v. Ward, 179 F.3d 904, 925 & n.10 (10th Cir. 1999); Miller v. Champion, 161 F.3d 1249, 1253 (10th Cir. 1998). *But we have never stated a categorical rule that requesting an evidentiary hearing in state court ipso facto satisfies the diligence requirement*. Indeed, the Supreme Court said in Williams, "Diligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." 529 U.S. at 437 (emphasis added). AEDPA speaks of failure "to develop the factual basis of a claim." An evidentiary hearing is not the only means to accomplish that task.

Cannon v. Mullin, supra (emphasis added).

Moore now attempts to offer "cause" for his failure to present evidence in support of his state post-conviction petition, in the form of vague allegations that he was impeded by circumstances beyond his control from obtaining affidavits and other evidence. The record refutes Moore's allegations. Moore complains of the short time it took the trial

judge to dismiss his post-conviction petition. Yet Moore points to nothing that precluded him from conducting factual investigations and obtaining affidavits before he filed his petition. Indeed, Moore filed with his petition affidavits from Dale Baich and Michael Radelet. And, as found by the Magistrate Judge, in appealing the trial court's denial of an evidentiary hearing, Moore did not point to any actual or potential evidence that he would have presented at an evidentiary hearing, or might have obtained via discovery. Decision and Order at page 5.

The record also refutes Moore's suggestion that his lack of diligence may be excused by the alleged unwillingness of his trial and appellate lawyers and Doctor Chiappone to provide him with information relevant to his post-conviction claims for relief. Moore alleged on direct appeal that trial counsel were constitutionally ineffective. Yet Mr. James stated during his deposition that he would "happily" have assisted Moore's appellate attorneys. Also, Attorney James voluntarily provided his complete file to the Office of the Ohio Public Defender years ago. James Deposition, Vol. II, pages 66, 82. According to the deposition of Attorney Elizabeth Agar, both trial attorneys were willing to discuss the case with her. She also cooperated with state post-conviction counsel. Agar Deposition, pages 70-71. Further, according to Dr. Chiappone's testimony, he voluntarily provided to counsel from the Ohio Public Defender a complete copy of Moore's file. Chiappone Deposition at page 115. In short, the record is replete with evidence that Moore's trial and appellate attorneys, and Doctor Chiappone, were willing to provide information post-trial.

In any event, there is no evidence whatsoever to support Moore's complaints that the lack of cooperation by potential witnesses, or other circumstances beyond his control,

impeded his ability to develop the factual record. Contrary to Moore's suggestion, the Warden is not required to show that potential witnesses were able and willing to cooperate, or that the state courts made sufficient funds available for Moore to conduct a general investigation into any aspect of the case that he deemed pertinent to his post-conviction claims. Rather, it is Moore who must overcome the findings of the state courts that he failed to present evidence sufficient to warrant a hearing. In fact, Moore has not presented any evidence whatsoever that he even asked his trial attorneys or Doctor Chiappone to provide affidavits, or that he made any efforts whatsoever to contact or interview the witnesses that he proposes to present during an evidentiary hearing before this Court.

Finally, Moore does not explain in what manner the state court's supposedly confusing and inconsistent rulings impeded his ability to develop facts in support of his post-conviction petition. Moore seems to argue that since he presented his claim of ineffective trial counsel on direct appeal, he should not have been required to support his reprise of the claim in state post-conviction with evidence outside the record. Respondent submits that Moore's argument makes no legal or practical sense. As conceded by Moore, Ohio law permits a post-conviction petitioner to present, via a post-conviction petition, claims of ineffective assistance of trial counsel based on evidence outside the record. It is inconceivable that a petitioner could be "misled" into thinking that by raising such a claim on direct appeal, he is under no obligation to present evidence outside the record, should he present the same claim via a post-conviction petition.

For all the foregoing reasons, the Magistrate Judge correctly concluded that an evidentiary hearing is precluded by Section 2254(e)(2).

**B. An evidentiary hearing in this case is neither necessary nor appropriate.**

In addition to finding that Moore failed to exercise due diligence in state court, the Magistrate Judge found that Moore failed to adequately specify the need for the testimony of his appellate attorneys and the trial judge, or to articulate with sufficient specificity the witnesses and evidence he intended to present on the issues of "cause and prejudice." Decision and Order at page 9. In essence, the Magistrate Judge concluded that in the latter regard Moore had failed to set forth the basic prerequisite for an evidentiary hearing, i.e., the existence of genuine factual disputes the resolution of which requires invocation of the court's fact finding power, regardless of whether an evidentiary hearing is precluded by application of Section 2254(e)(2)'s due diligence standard. For the reasons outlined below, and consistent with the Magistrate Judge's additional findings, Moore has failed to demonstrate that an evidentiary hearing in his case is appropriate or necessary.

Whether the state courts unreasonably denied Moore relief "must be assessed in light of the record the court had before it." See Holland v. Jackson, supra, and the cases cited therein. Although Moore generally referred to his Second Ground in requesting an evidentiary hearing, the factual "disputes" upon which he sought to present evidence are limited to his allegations concerning trial counsel's handling of Dr. Chiappone's testimony. Moore presented this claim on direct appeal to the Supreme Court of Ohio. Accordingly, this Court necessarily is limited to the trial record in adjudicating Moore claim in federal habeas corpus. See also Yarborough v. Gentry, supra, 124 S.Ct. at 5-6,

quoting Massaro v. United States, 538 U.S. __, 123 S.Ct. 1690, 1694 (2003). (presumption that trial counsel's actions were within the wide scope of professional judgment "has particular force where a petitioner bases his ineffective-assistance claim solely on the trial record, creating a situation in which a court 'may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive.'").

In any event, the discovery conducted by Moore in these proceedings revealed no clear and convincing evidence that undermines the Ohio Supreme Court's essential factual determination that trial counsel adequately prepared for the penalty phase of the trial. According to his deposition testimony, Attorney James discussed with Dr. Chiappone, in a three-hour meeting before the penalty hearing, Dr. Chiapone's anticipated testimony. James was absolutely certain that Dr. Chiappone did not inform him of the "devastating" statements by Moore revealed on cross-examination. James Deposition of December 3, 2003, at pages 84-89. Contrary to Moore's arguments, Dr. Chiappone's recollection is not unequivocally contradictory. Dr. Chiappone could not specifically recall the substance of his discussions with James. Dr. Chiappone assumed that he told James the information contained in the "Defendant's account of the offense" section of his diagnostic report. That document contains no reference to Moore's admission that he shot the victim to escape detection. Deposition of Dr. Chiappone, pages 153, 156-157, attached excerpt from Clinic File.

Moore suggested, in the alternative, that even if James could not have anticipated Dr. Chiappone's testimony on cross-examination, he was professionally deficient in failing to prevent Dr. Chiappone from disclosing Moore's statements via supposedly

improper "ex parte" discussions with the prosecutor. Moore's new "spin" on his claim is illusory. The documents cited by Moore indicate that Dr. Chiappone contacted Judge Ruehlman on November 14, 1994, and met with the prosecutor on November 17, 1994. But all of this occurred after James notified the prosecutor, on November 10, 1994, that Dr. Chiappone would be called as a defense witness. December 3, 2003, Deposition of James, at pages 77-78. Thus, there were no improper "ex parte" discussions by anyone with Dr. Chiappone. Further, Moore can point to no professional standard that authorizes let alone requires a defense attorney to instruct a witness not to speak with the prosecuting attorney prior to trial.

Insofar as Moore sought to adduce evidence in support of his other allegations, as noted by Respondent above, the Magistrate Judge was bound to consider the holding of the state courts that Moore failed to present in post-conviction evidence outside the record sufficient to warrant a hearing on his claims. The state courts' holding is objectively reasonable. There is nothing inherently unfair about the state courts requiring Moore to present *some* evidence in support of his claims before granting discovery and an evidentiary hearing. Moreover, the Warden notes that Moore specifically requested the trial court to grant discovery and an evidentiary hearing only with respect to his claims that electrocution constituted cruel and unusual punishment, and that his sentence was the product of racial discrimination. He made no such specific requests with respect to his claims of ineffective trial counsel. Appendix, Pages 734-739, 767-770.

Finally, contrary to Moore's arguments, the Magistrate Judge was not required to order an evidentiary hearing on "cause and prejudice" or "appellate ineffectiveness." Moore did not aver specifically the defaulted claims relative to his request. Nor did he

allege specific factual allegations that if proven would establish "cause" to excuse his defaults. In proposing testimony by Ms. Agars and Ms. Sears, the attorneys who represented Moore on direct appeal before the Supreme Court of Ohio, Moore suggested that their allegedly ineffective assistance constitutes "cause and prejudice" as well as an independent ground for relief. It is well established that counsel's ineffectiveness will constitute cause only if it is an independent constitutional violation. See Murray v. Carrier, 501 U.S. 722, 755 (1991); Ross v. Moffitt, 417 U.S. 600, 616 (1974) (no constitutional right to counsel beyond first direct appeal as of right). Thus, the Magistrate Judge correctly found that Moore failed to adequately explain the relevance of the proposed testimony of Ms. Agars and Ms. Sears.

In his appeal of the Magistrate Judge's ruling, Moore complains that he does not know as yet what factual issues should be addressed relevant to "cause and prejudice," and that the Magistrate Judge otherwise prematurely denied him a opportunity to present evidence on the issue. Appeal Memorandum at pages 11-12. Respondent respectfully submits that Moore's arguments are disingenuous, to say the least. Establishing "cause and prejudice" by definition requires proof of facts and circumstances external to the petitioner that precluded the petitioner from presenting his claims to the state courts. See Coleman v. Thompson, 501 U.S. 722, 754 (1991), citing Murray v. Carrier, 477 U.S. 478, 488 (1986) (existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule). The Magistrate Judge certainly was not unreasonable in requiring Moore to aver the existence of such circumstances before granting an evidentiary hearing on "cause." Further, as noted

above, the testimony of Ms. Agars and Ms. Sears -- the only proposed "appellate ineffectiveness witnesses -- could not possibly be relevant to appellate ineffectiveness as "cause and prejudice."

## CONCLUSION

For the reasons stated herein, the Court should deny Moore's appeal.

Respectfully submitted,

JIM PETRO (0022096)
Attorney General

s/Charles L. Wille
CHARLES L. WILLE (0056444)
Senior Assistant Attorney General
Capital Crimes Section
30 East Broad Street, 23rd Floor
Columbus, Ohio 43215-3428
(614) 728-7055; (614) 728-8600 (Facsimile)

**COUNSEL FOR RESPONDENT**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing *Respondent's Memorandum in Opposition to Appeal* has been forwarded electronically and by first-class U.S. mail, postage pre-paid to: Laurence E. Komp, Esquire, 423 Madrina, Ballwin, Missouri, 63021; and Michael J. O'Hara, Esquire, 25 Crestview Hills Mall Road, Suite 201, P.O. Box 17411, Covington, Kentucky, 41017; Counsel for Petitioner, this 24th day of September, 2004.

s/Charles L. Wille
Senior Assistant Attorney General