UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| LEE E. MOORE, | ) | CASE NO. C-1-00-023 |
| | ) | |
| Petitioner, | ) | JUDGE DLOTT |
| | ) | |
| vs. | ) | MAGISTRATE JUDGE MERZ |
| | ) | |
| BETTY MITCHELL, Warden | ) | |
| | ) | *DEATH PENALTY CASE –* |
| Respondent. | ) | *ORAL ARGUMENT REQUESTED* |

**PETITIONER'S REPLY MEMORANDUM IN SUPPORT OF APPEAL
FROM DECISION DENYING EVIDENTIARY HEARING**

**I.    INTRODUCTION**

Petitioner filed a timely appeal from the Decision and Order denying Petitioner's Motion for Evidentiary Hearing. (Doc. 105). Petitioner filed his timely appeal from that decision, requesting oral argument, on September 17, 2004. (Doc. 106). The Respondent has now filed their Memorandum in Opposition to Petitioner's Appeal. (Doc. 107). As demonstrated below, the Respondent supports the Magistrate's decision enhancing the burden on a Petitioner to establish his right to an evidentiary hearing in a federal habeas corpus proceeding beyond that which is required by the Supreme Court and the Sixth Circuit.

**II.    ARGUMENT**

    **A.    THE MAGISTRATE JUDGE ERRED IN DENYING PETITIONER'S REQUEST FOR AN EVIDENTIARY HEARING BY PLACING A HEAVIER BURDEN ON PETITIONER TO ESTABLISH ENTITLEMENT TO A HEARING THAN PERMITTEDF IT BY SUPREME COURT AND SIXTH CIRCUIT DECISIONS.**

Respondent fully supports the Magistrate's decision to enhance the burden on a Petitioner to demonstrate that he exercised due diligence in attempting to develop a factual basis for his claims in state court. Specifically, Respondent argues that Petitioner

1

should have interviewed witnesses and obtained affidavits. In defending the Magistrate Judge's decision, Respondent relies on the state court's finding that Petitioner failed to present evidence outside of the record. Respondent argues that "Moore points to nothing that precluded him from conducting factual investigations and obtaining affidavits before he filed his Petition." (Respondent's Memorandum, p. 14).

In fact, Petitioner, unlike Respondent, cites the record filed with this Court to confirm that Petitioner had no fair opportunity to investigate and obtain affidavits to support his request in state court. Respondent does not dispute that Petitioner specifically requested both discovery and an evidentiary hearing when he filed his petition for post-conviction relief in state court. That request was filed on September 20, 1996. (ROW APX, Ex. M, p. 712). The State of Ohio opposed the petition and the request for discovery and a hearing by filing a single pleading entitled a Motion for Judgment. That pleading was filed on November 6, 1996 and, for the first time, objected to discovery and an evidentiary hearing regarding the ineffective assistance of counsel claims at issue in this case. (ROW APX, Ex. N, p. 860). The Hamilton County Court of Common Pleas scheduled ***no hearing or arguments*** on Petitioner's request or the State's objections. A ***mere two weeks*** after the State filed its opposition to discovery and a hearing, and before a reply was filed by Petitioner, the Court of Common Pleas entered judgment for the State on the merits,. (ROW APX, Ex. O, p. 876). There was no scheduling order or other entry of the Court of Common Pleas which would indicate to Petitioner that he would have no opportunity to reply to the State of Ohio's opposition to the petition and discovery requests regarding his ineffective assistance of counsel claims. The record demonstrates conclusively, that neither the State of Ohio nor the Court of Common Pleas was interested in hearing Petitioner's response to the state's objections, much less receiving any evidence that Petitioner could scrape together in a mere two weeks.

There is a stark contrast between the expedited procedure forced on Petitioner in this case and the procedure afforded petitioner in *Byrd v. Collins,* 209 F.3d 486 (6th Cir.

2000), the case on which Respondent relies. In *Byrd*, the Court found that the petitioner had a fair opportunity to develop a record in the state post conviction proceedings. In so holding the Sixth Circuit explained:

> notwithstanding the lack of any statutory requirement to do so, Petitioner's post-conviction trial court ***provided Petitioner with other significant opportunities for discovery***. ***From August 5, 1988, until October 2, 1989,*** there was a court order of record permitting him to obtain any and all records from any organization or person, public or private, 'which concern John W. Byrd.'

(Emphasis added). *Id*. at 513. The Court of Appeals characterized the discovery order in *Byrd* as "broad" and noted that the state post conviction trial court refused the prosecutors request to revoke the order. It was based on the yearlong discovery opportunity afforded petitioner in *Byrd* that the Sixth Circuit based its finding that, "[d]espite the above-mentioned opportunities, Petitioner failed to produce any reliable evidence that would support his claim." *Id.* at 513. In this case, Mr. Moore was given ***no opportunity to conduct any discovery.*** Thus, *Byrd* clearly supports Petitioner's claim that he was denied any fair opportunity to develop the evidence.

It is important to note that the state post-conviction court's precipitous treatment of Mr. Moore's post conviction petition is entirely consistent with a predisposition to which the court admitted when he sentenced Petitioner at the close of mitigation. When sentencing Petitioner, the state trial judge candidly revealed his personal bias regarding Petitioner's right to pursue his post conviction relief:

> One last comment, Mr. Moore. You know, I'm required by law to set this execution date of – I put down May 16th, 1995, but you won't be executed then. In fact, I'll probably be retired – seriously – by the time you're ever executed, and you'll be a middle-aged person, because you're going to the safest place in the United States. And the safest place in the United States right now is Ohio's Death Row.

3

> The delays brought on by the Ohio Post-conviction Relief statute and the Federal Habeas Corpus procedure that we now have caused the citizens to really distrust our justice system, and hopefully, our newly elected federal legislators will pass laws that restrict the Federal Habeas Corpus procedure as a methods to unjustly delay these convictions.
>
> If we're going to volunteer the death penalty, we should use it. I believe in it. I believe it should be used and not delayed. ***And yours shouldn't be delayed. But now it probably will.***
>
> ***We took a big step in November when we passed the law that gets rid of intermediate appeals, but, still, we need to get rid of Ohio's Post-conviction Relief Statute and the federal habeas corpus delays which are part of that statute. It's wrong.*** It's causes people to really think this system is not a fair just system, when sentences are not carried out.

(Emphasis added). (ROW APX. pp. 1269-1271). This same Judge denied Petitioner's request for post conviction discovery and a hearing, and entered judgment against him just two weeks after the State's response to the petition was filed. This Judge clearly did not follow the Ohio Supreme Court's suggestion that further factual development was required on the ineffectiveness claim due to the speculative nature of the arguments as raised on direct appeal. *State v. Moore*, 689 N.E.2d 1, 14-15 (Ohio 1998).

    Petitioner has cited substantial and convincing evidence from the record before this court that he was not afforded a fair opportunity to develop and submit affidavits or other evidence in the state post-conviction process.

    As Respondent concedes, the adequacy of the diligence exercised by a petitioner is to be judged "in light of the information available at the time." *Williams v. Taylor*, 529 U.S. 420, 435. As the Supreme Court explained "the question is not whether facts could have been discovered but instead whether the prisoner was diligent in his efforts. Ultimately, this determination is not governed by "whether those efforts could have been successful." *Id*. This contradicts the Magistrate Judge's ruling denying an evidentiary hearing on the basis that affidavits could have been obtained and Respondent's suggestion of the same. Again, there is no factual basis in the record that such affidavits

4

could have been obtained even if this were a relevant inquiry, which it is not under *Williams*, at 435.

The Court further explained that "only a prisoner who has **neglected his rights** in state court need satisfy these conditions [of Section 2254(a)(2)(A) and (B)]." *Id*. Accordingly, the Court held that "diligence will require in the usual case that a prisoner, a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Id.* 529 U.S. at 437. The record cited above confirms beyond any fair dispute that Petitioner did not "neglect his rights," rather, he was afforded no "rights" in state court to develop the record.

> If there has been no lack of diligence at the relevant stages at the state proceedings, the prisoner has not `failed to develop' the facts under Section 2254(e)(2)'s opening clause, and he will be excused from showing compliance with the balance of the subsection's requirements.

*Id.* 529 U.S. 437.

In *Williams v. Taylor*, the Court concluded that the Petitioner met his burden of showing diligence in efforts to develop facts supporting his juror bias and prosecutorial misconduct claims in state court. The Supreme Court affirmed the District Court's conclusion that the "factual basis of the [juror bias and prosecutorial misconduct] claims ***was not reasonably available to Petitioner's counsel during state habeas proceedings.***" *Id*. 529 U.S. at 442. The Supreme Court rejected the Court of Appeal's finding that the state habeas counsel should have discovered the juror bias during the state proceedings. *Id*. The Supreme Court's explanation of its decision undercuts Respondent's argument and confirms that the Magistrate Judge committed error in denying the evidentiary hearing in this case.

> State habeas counsel did attempt to investigate Petitioner's jury . . . ***counsel filed a motion for expert services . . .*** alleging `irregularities, improprieties and omissions exist[ed] with respect to impaneling . . . the jury.' [Citation omitted]. Based on these suspicions, ***counsel requested funding for an investigator*** `to

5

>examine all circumstances relating to the impanelment of the jury
>and jury's consideration of the case.'

(Emphasis added). *Williams v. Taylor*, 529 U.S. at 442.

In short, the Supreme Court found that the Petitioner's request for expert services and funding for an investigator, although never specifically identify the jury bias issue which was the focus of the federal habeas claim, was sufficient to constitute due diligence. *Id*. 529 U.S. at 442-443. The Court explained that "we do not suggest that the state has an obligation to pay for investigation of as yet undeveloped claims; but ***if the prisoner has made a reasonable effort to discover the claims to commence or continue state proceedings,*** Section 2254(e)(2) will not bar him from developing them in federal court." (Emphasis added). *Id*. 529 U.S. at 443.

Although public records that existed prior to the state post-conviction proceedings confirmed the basis of the jury bias argument in *Williams*, the Court rejected the argument that state post-conviction counsel had an obligation to check public records regarding personal information pertaining to the jurors involved in that case. In this case, Petitioner specifically requested discovery at an evidentiary hearing and detailed the ineffective assistance of counsel claims with respect to which the request was made in his post-conviction petition. In short, the request in this case was decidedly more direct and specific than the general request in *Williams v. Taylor* for expert services and funding for an investigator. With only two months elapsing between the time the post-conviction relief petition was filed and the time the Court entered judgment, and only two weeks elapsing between the time the state objected to a request for discovery in an evidentiary hearing in the state post-conviction relief proceedings, the only fair conclusion is that Petitioner had no reasonably opportunity to obtain affidavits on the factually detailed matters that were required to support an ineffective assistance of counsel at mitigation claim. Neither Respondent nor the Magistrate Judge have cited any portion of the record which would indicate that the newly appointed state conviction relief counsel would have

6

an opportunity to review all transcripts, pleadings and briefs developed in the original proceedings and subsequent appeals, much less investigate each of the claims and develop affidavits. *Williams v. Taylor* controls. Under that case, Plaintiff's request for discovery in an evidentiary on his ineffective assistance of counsel claims is sufficient to constitute diligence within the meaning of Section 2254(e)(2).

Respondent attempts to distinguish *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), and *McFarland v. Yukins*, 356 F.3d 688 (6th Cir. 2004), by saying the Sixth Circuit did not address the issue of a prisoner's obligation to submit evidence outside the record in state court in order to qualify for an evidentiary hearing in federal court. However, it is clear from both *Mason* and *McFarland* that the Sixth Circuit, while possessing the opportunity to add such a requirement, chose not to. Instead (as did the United States Supreme Court in *Williams*), the Sixth Circuit based its decision on the request to develop the record via proper state evidentiary procedures -- not on whether such attempts were ultimately successful.

Respondent cites the Sixth Circuit's decision in *McAdoo v. Elo*, 365 F.3d 487, 500 (6th Cir. 2004) to support their argument that Petitioner must demonstrate a deficiency in the state court's fact finding procedures. (Respondent's Memorandum, p. 8). What Respondent ignores is the Sixth Circuit holding in that case that

> When a defendant diligently seeks an evidentiary hearing in state courts in the manner prescribed, but the state court's deny him that opportunity, he can avoid Sections 2254(e)(2)'s barriers to obtaining a hearing in federal court.

*Id*. at 500, citing *Williams v. Taylor*, 429 U.S. at 437. In this case, it is unrefuted that Plaintiff did precisely that which is required by *McAdoo*. He asked for an evidentiary hearing state court but was specifically denied that opportunity by the Court of Common Pleas and the reviewing courts.[1] Moreover, Petitioner has conclusively demonstrated that

---

[1] The Court in *McAdoo* actually never reached the issue of whether an evidentiary hearing was necessary since the Court found that the records was complete and showed no basis for relief. *Id*. at 500.

the state court's "fact finding procedures" denied him a reasonable opportunity to investigate and develop facts in that form. Neither the Magistrate nor Respondent can refute the record in his regard.

### B. PETITIONER HAS DEMONSTRATED THE NEED FOR AN EVIDENTIARY HEARING.

Respondent argues pursuant to *Holland v. Jackson*, 124 S.Ct. 2736 (2004) that this Court can **never** consider evidence, even if discovery and or an evidentiary hearing is granted, when a claim is addressed under AEDPA. *See* Respondent's Memorandum, p. 8. Respondent is wrong. The United States Supreme Court did not commingle (e)(2) with the requirements of 2254(d)(1) and (2) or (e)(1). It simply strains credibility to think that both the discovery and evidentiary hearing procedures Congress kept in tact under AEDPA are simply eliminated by *Holland's* per curiam interpretation of another provision of AEDPA. Indeed, *Williams*, 529 U.S. at 441-44, rebuts this assertion when the United States Supreme Court remanded for an evidentiary hearing pursuant to (e)(2) on the basis of evidence never presented to the state courts.

Petitioner is not misled as to where he should raise a claim. *See* Respondent's Memorandum, p. 15. Under Ohio law and the authority of the United States Supreme Court, once the claim had been raised in direct appeal – Petitioner had exhausted the claim and did not have to raise the claim again. The fact that he did does not impact the fact that he raised and received merits review of the claim. Again, Respondent makes no attempt to distinguish let alone address the Sixth Circuit authority of *Clinkscale v. Carter*, 375 F. 430 (6th Cir. 2004). As Petitioner previously argued, the Sixth Circuit ruled that a Petitioner only needs to exhaust a claim through one round of state procedures, not multiple state procedures for the same claim. *Clinkscale*, at 437.

8

Respondent continues to affirmatively misrepresent the testimony of Dr. Chiappone. *See* Respondent's Memorandum, p. 16.  This is not without purpose – it is an attempt to downplay the impact of the conflict between trial counsel's sworn testimony and Dr. Chiappone's sworn testimony.  During Petitioner's trial, Dr. Chiappone testified that Petitioner confessed his guilt by admitting to lying to the police and everyone, that it was not an accident.  During federal depositions, trial counsel indicated that they were surprised by this testimony – Dr. Chiappone had never informed them of the purported admissions. Deardorff Depo. p. 48; James Depo. p. 60.  Dr. Chiappone testified that he did inform defense counsel of Petitioner's alleged statements prior to taking the stand. Chiappone Depo. p. 153.  Needless to say and as indicated by defense counsel, this devastated the mitigation presentation and ensured a death sentence. *See* Deardorff Depo. pp. 88-89 ("…he was going to get the death penalty based on what Chiappone said. He was cooked…").

This conflict fueled Petitioner's request for an evidentiary hearing.  In response to a direct question, Dr. Chiappone testified that he was certain he informed defense counsel of the horribly damaging Petitioner allegedly gave Dr. Chiappone. Chiappone Depo. p. 153("Yeah, I'm sure I did.").  The fact that he may have also mentioned to defense counsel the information in his report (as asserted by Respondent), that excluded a mentioning of Petitioner's statement, does nothing to refute the fact that Dr. Chiappone affirmatively testified he informed defense counsel of Petitioner's alleged statement.  Therefore, this Court should look past Respondent's mischaracterizations of Dr. Chiappone's federal deposition testimony.

Respondent forgives Dr. Chiappone's ex parte contact with Judge Ruehlman and

the trial prosecutor because he was defense witness.  See Warden's Resp. p. 18.  This is illusory.  *Assuming arguendo* that any defense counsel would allow an expert to be quizzed by the trial prosecutor outside of their presence prior to a trail, it simply astounds to believe that a trial court judge can interview a defense expert in an extrajudicial fashion.  Not only extrajudicially but without the knowledge of defense counsel – and presumably the trial prosecutor.  This is a clear violation of *Gardner v. Florida*, 430 U.S. 349 (1977).

Respondent asserts there is no relevance regarding the testimony of the appellate counsel. *See* Respondent's Memorandum, p. 19.  There can be no more relevant witness than the attorneys who had their conduct challenged as deficient to determine whether there was a reasonable strategic decision made during the appeal. *See Mapes v. Coyle*, 171 F.3d 408 (6th Cir. 1999).

Respondent closes by saying Petitioner's arguments regarding cause and prejudice are "disingenuous, to say the least." *See* Respondent's Memorandum, p. 19.  Disingenuous can safely be defined as not sincere or candid, or deceitful.  Petitioner's arguments are sincere, candid and honest.  Cause and prejudice only becomes a relevant inquiry once a federal court determines the existence of a procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977).  The Magistrate Judge has not determined the procedural default issues, therefore, undersigned counsel, who despite their best efforts are not sooth-sayers, cannot be required to aver cause arguments to as of yet non-existent procedural defaults.  Requiring such wastes judicial resources and time.  This is not disingenuous – it is the practical reality of United States Supreme Court authority and the procedural history of this case.

### C. PETITIONER'S RENEWED REQUEST FOR AND STATEMENT IN SUPPORT OF ORAL ARGUMENT.

Petitioner again requests the opportunity to orally argue this appeal to the Court. The application of (e)(2) in the context of Petitioner's death penalty habeas proceeding, after numerous deposition and numerous filings, is a difficult question in and of itself, especially without oral argument. Oral argument will assist this Court in addressing the complex and intertwined, legal and factual questions presented by the appeal.

Respectfully Submitted,

/s/ Laurence E. Komp
LAURENCE E. KOMP - 0060142
Attorney at Law
423 Madrina
Ballwin, MO 63021
Phone (636) 207 – 7330
Fax (636) 207 – 7351

-and-

MICHAEL J. O'HARA – 0014966
O'Hara, Ruberg, Taylor, Sloan &
    Sergent
25 Crestview Hills Mall Rd, Ste 201
P.O. Box 17411
Covington, KY 41017
Phone: (859) 331-2000
Fax: (859) 578-3365

COUNSEL FOR PETITIONER

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was filed with and will be made available to Respondent via this Court's electronic filing system and pursuant to Loc. R. 5.2 this constitutes service.

/s/ Laurence E. Komp
LAURENCE E. KOMP - 0060142