## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

LEE MOORE,                               :
    Petitioner,                          :        CASE NO.: C-1:00-CV-00023

    v.                                   :        JUDGE DLOTT

BETTY MITCHELL, WARDEN                   :         MAGISTRATE JUDGE MERZ
    Respondent.                          :

## THE WARDEN'S MERIT BRIEF

Respectfully submitted,

**JIM PETRO**
Ohio Attorney General

s/Charles L. Wille
**CHARLES L. WILLE**  (0056444)
Principal Assistant Attorney General
Capital Crimes Section
30 East Broad Street, 23rd Floor
Columbus, Ohio 43215
(614) 728-7055; (614) 728-8600 (facsimile)

**COUNSEL FOR RESPONDENT**

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ................................................................................................. ii

TABLE OF AUTHORITIES ........................................................................................... v

STATEMENT OF THE CASE ........................................................................................ 1

STATEMENT OF THE FACTS ..................................................................................... 2

ARGUMENT .................................................................................................................. 5

   I.     Introduction .......................................................................................................... 5

   II.    Moore's claims of ineffective counsel do not warrant relief ................................ 5

      A.  With one exception, Moore's claims are procedurally defaulted. ..................... 6

      B.  Moore's claims in any event do not warrant relief. ........................................... 7

         1.    There is no evidence that Moore's trial attorneys had a
constitutionally impermissible "conflict of interest." ..................................... 7

         2.    Moore cannot overcome the presumption that his trial counsel
performed in a professionally acceptable manner, nor can he
establish that any alleged errors or omissions by his counsel
were such as to result in fundamental prejudice, as defined by
clearly established federal law. ........................................................................ 8

   III.   Moore's "biased judge" claims do not warrant relief in federal
habeas corpus. ................................................................................................... 11

   IV.   Moore's erroneous instruction claims do not warrant relief in
federal habeas corpus. ...................................................................................... 12

A.  The trial judge's "acquittal first" instruction did not violate Moore's constitutional rights..............................................................................13

B.  The trial court's instructions did not otherwise violate the constitution. ...................................................................................................13

V.  Moore's prosecutorial misconduct claims do not warrant relief in federal habeas corpus...........................................................................16

A.  The Supreme Court of Ohio reasonably concluded that the prosecutor's allegedly erroneous arguments and other alleged misconduct did not deprive Moore of a fundamentally fair trial or violate his constitutional rights.........................................................17

B.  Moore's remaining allegations do not warrant relief.........................19

VI.  Moore's discrimination claims do not warrant relief in federal habeas corpus. ...................................................................................20

VII.  Moore's other trial error claims do not warrant relief in federal habeas corpus. ...................................................................................21

A.  Moore cites no evidence in the record to support his claim that the trial court failed to consider mitigating evidence. ......................................21

B.  There is no evidence that the trial court deprived Moore of his right to a public trial. .............................................................................22

VIII. Moore's involuntary confession claim does not warrant relief in federal habeas corpus..........................................................................23

IX.  Moore's ineffective assistance of appellate counsel claim does not warrant relief in federal habeas corpus. ............................................24

X.  Moore's constitutional claims do no warrant relief in federal habeas corpus. ...................................................................................25

A.  Ohio's statutory "catch-all" provision is constitutionally required. .................25

B.  The Eighth Amendment does not prohibit a capital specification from duplicating an element of a capital offense, nor did the "double-counting" of specifications in Moore's case violate his constitutional rights. ........................................................................26

C.  Moore's remaining constitutional challenges are foreclosed by well-established precedent. ...............................................................27

CONCLUSION...............................................................................................28

CERTIFICATE OF SERVICE ........................................................................29

## TABLE OF AUTHORITIES

**Cases**

Alley v. Bell,
    307 F.3d 380 (6th Cir. 2002) ..................................................................... 12

Batson v. Kentucky,
    476 U.S. 79 (1986).................................................................................... 18

Buell v. Mitchell,
    274 F.3d 337 (6th Cir. 2001) ..................................................................... 15

Coe v. Bell,
    161 F.3d 320 (6th Cir. 1998) ..................................................................... 14

Collins v. Byrd,
    510 .S. 1185 (1994)................................................................................... 12

Cuyler v. Sullivan,
    466 U.S. 335 (1980)................................................................................... 8

Davis v. Mitchell,
    318 F.3d 682 (6th Cir. 2003) ..................................................................... 13

Donnelly v. Dechristoforo, 416 U.S. 637 (1974).............................................. 17

Duren v. Missouri,
    439 U.S. 357 (1978)................................................................................... 21

Early v. Packer,
    537 U.S. 3, 123 S.Ct. 362 (2002)................................................................ 17

Early v. Packer, 537 U.S. 3, 123 S.Ct. 362 (2002) ........................................... 17

Greer v. Mitchell, 264 F.3d 663 (6th Cir. 2001)................................................ 12

Henderson v. Kibbee, 431 U.S. 145 (1977)...................................................... 14

Kirby v. Dutton, 794 F.2d 245 (6th Cir. 1986).................................................. 12

Liteky v. United States,
    510 U.S. 540 (1994)................................................................................... 12

Lockhart v. McCree,
        476 U.S. 162 (1986) ............................................................................. 18

Lockyer v. Andrade,
        __ U.S. __, 123 S.Ct. 1166 (2003) ..................................................... 18

Lott v. Coyle,
        261 F.3d 594 (6th Cir. 2001) ................................................................. 7

Lowenfield v. Phelps,
        484 U.S. 231, 244-46 (1988) ............................................................... 27

Madrigal v. Bagley,
        276 F.Supp.2d 744 (N.Dist. Ohio 2003) ............................................. 13

McKenzie v. McCormick,
        27 F.3d 1415 (9th Cir. 1994) ............................................................... 19

Mickens v. Taylor, 535 U.S. 162, 168, 122 S.Ct. 1237, 1246 (2002) ............... 8

Micro Chemical, Inc., v. Lextron, Inc.,
        318 F.3d 1119 (Fed. Cir. 2003) ........................................................... 12

Mills v. Maryland,
        486 U.S. 367 (1988) ............................................................................ 14

Morales v. United States,
        294 F.Supp.2d 174 (Dist. of Conn. 2003) ........................................... 23

Pennsylvania v. Finley,
        481 U.S. 551 (1987) ...................................................................... 12, 25

Ring v. Arizona,
        536 U.S. 584 (2002) ............................................................................ 15

Roe v. Mitchell,
        316F.3d 557 (6th Cir. 2002) ............................................................... 13

Ross v. Moffitt,
        417 U.S. 600 (1974) ............................................................................ 25

Schad v. Arizona,
        501 U.S. 624 (1991) ............................................................................ 14

Scott v. Mitchell,
        209 F.3d 854 (6th Cir. 200) ................................................................ 13

State v. Hicks,
    43 Ohio St.3d 72 (1989) ......................................................................... 10

State v. Moore,
    81 Ohio St.3d 22 (1998) ....................................................................... 4, 6

State v. Moore,
    84 Ohio St.3d 1472 (1999) ...................................................................... 6

State v. Moore,
    93 Ohio St.3d 649 (2001) ........................................................................ 7

State v. Smith,
    71 Ohio St.3d 1208 (1994) .................................................................... 25

United States v. Smith,
    73 F.3d 1414 (6th Cir. 1996) ................................................................. 13

Wainwright v. Witt,
    469 U.S. 412 (1985) ............................................................................... 18

**Statutes**

O.R.C. 2929.04(A)(3) ............................................................................. 10

O.R.C. 2929.04(B)(7) ............................................................................. 32

## STATEMENT OF THE CASE

The Petitioner, Lee E. Moore (hereinafter "Moore"), is under a sentence of death. On January 18, 2000, Moore filed a petition for a writ of habeas corpus in which he alleged that his conviction and death sentence are in violation of federal law or the Constitution of the United States. (Doc. 14) On March 20, 2000, the District Judge referred the case to United States Magistrate Judge Merz. On June 1, 2000, per the order of the Magistrate Judge, Moore filed an amended petition for a writ of habeas corpus. (Doc. 29) On July 17, 2000, Respondent filed an answer (Return of Writ) to the amended petition. (Doc. 31) On November 12, 2002, Moore filed a reply (Traverse) to Respondent's Return. (Doc. 81)

On June 23, 2003, the Magistrate Judge granted in part Moore's motion for discovery. (Doc. 93) On June 30, 2004, in conformity with the scheduling order issued by the Magistrate Judge, Moore filed a motion for an evidentiary hearing. (Doc. 102) On July 12, 2004, the Warden filed a memorandum in opposition. (Doc. 103) On July 23, 2004, Moore filed a memorandum in reply. (Doc. 104) On September 3, 2004, the Magistrate Judge issued a decision and order denying Moore's motion. (Doc. 105) Moore subsequently appealed that decision to the District Judge. On November 1, 2004, the Magistrate Judge issued a supplemental memorandum regarding Moore's appeal. (Doc. 109) On November 24, 2004, the District Judge overruled Moore's appeal and adopted the Magistrate Judge's order. (Doc. 111)

On December 3, 2004, the Magistrate Judge issued a scheduling order for the filing of final briefs. (Doc. 112) Consistent with the scheduling order, on April 11, 2005, Moore filed his Merit Brief.

## STATEMENT OF THE FACTS

In its opinion on direct appeal, the Supreme Court of Ohio described as follows the facts and circumstances surrounding Moore's indictment, trial, conviction and sentence:

> On the evening of January 14, 1994, defendant-appellant, Lee Edward Moore, Jr., and Jason Holmes abducted Melvin Olinger at gunpoint and forced him into the trunk of his blue Ford Taurus. Moore drove Olinger's car to Mt. Healthy, dropped Holmes off, and picked up Larry Kinley. The two drove Olinger's car to a factory area in Cincinnati, where Moore ordered Olinger out of the trunk, robbed him of his wallet, and shot him in the head, killing him. Moore later admitted committing the crimes but claimed that the shooting was accidental. Moore was subsequently convicted of aggravated murder, kidnapping, and aggravated robbery, and sentenced to death.

> On January 14, 1994, at approximately 7:20 p.m., Melvin Olinger, a suburban Chicago businessman, visited his parents in Fairfield. Olinger then went to a funeral home during calling hours for a friend who had passed away. Later, he went to Gina's, a bar, around 9:00 to 9:30 p.m., where he talked with Charlotte James. He told her that he was going to visit his mother that evening before returning to Chicago the next day. Olinger stayed in the bar for about fifteen minutes.

> That same evening, Moore and Jason Holmes drove to Fairfield, intending to steal a car. Moore waited outside Gina's and saw Olinger get out of his blue Ford Taurus and enter the bar. When Olinger returned to his car, Moore confronted him with a gun and told Olinger to get in. Moore drove the Taurus to the rear of the bar and forced Olinger to climb into the trunk. Moore drove the Taurus to Larry Kinley's house in Mt. Healthy while Holmes followed in Moore's Ford Fairmont.

> Moore and Kinley drove to a store in the Taurus, leaving Holmes behind to baby-sit. Moore told Kinley how he had stolen the car and that he was going to get it painted and modified. Moore told Kinley that he was driving to the Cumminsville area of Cincinnati to show the car to a friend. Instead, Moore drove to a factory area at 3366 Llewellyn Street. On the way, Moore told Kinley that he was going to kill the man in the trunk. When Kinley asked Moore why he was going to kill the man, Moore responded, "This ain't nothing. * * * We're not going to get caught for it."

> Upon driving into the factory area, Moore headed toward a dumpster. He stopped the car and let Olinger out of the trunk while Kinley remained in the car. Kinley testified that he didn't see what happened

because the trunk lid was up, but that he heard Moore tell Olinger to empty his pockets. Kinley testified that Moore directed Olinger to the corner by the dumpster and that he heard Olinger beg and plead to Moore about Olinger's sick mother.

Kinley heard a gunshot, and then Moore jumped into the car. According to Kinley, Moore laughed and asked him, "Did you see his dome get shot off?" After leaving the scene, Moore directed Kinley to take the credit cards out of Olinger's wallet. Kinley said that Moore sounded upset because he had forgotten to ask Olinger for the personal identification number to his Jeanie card.

In a taped statement to police, Moore claimed that he asked Olinger for his wallet after directing him to the dumpster. When Olinger dropped the wallet and stepped forward, Moore said that he panicked and "accidentally pulled the trigger. But it was an accident. * * * I had a large amount of drinks an' * * * some marijuana. An' it truly truly was an accident."

Moore and Kinley returned to Kinley's house, where Moore told Holmes what had happened. Moore told Holmes that he planned to keep the Taurus and that Holmes could use his Fairmont any time he wanted. At Moore's request Kinley took the Michigan plates off Olinger's Taurus. Kinley then took one of the plates off Moore's Fairmont and put it on the Taurus.

The next day, Moore and Kinley went out to get "some stuff." Moore used Olinger's credit card to purchase over $1,000 worth of clothing and jewelry at two J.C. Penney stores in the Cincinnati area. A sales clerk became suspicious and contacted Penney's loss prevention officer. The officer observed two black males place their purchases in the trunk of a blue Ford Taurus with Ohio tags and drive away.

At approximately 5:30 p.m. on January 20, police apprehended Moore and Kinley as they waited for an order in the drive-through lane of a McDonald's restaurant. Moore was placed in a holding cell at the Mt. Healthy police station. Officers confiscated several items of clothing from Moore which were believed to have been purchased with Olinger's credit card. Shortly after midnight, Moore was advised of his Miranda rights and signed a waiver of rights form.

Moore was then taken to the downtown Cincinnati police station for questioning. Although the weather was cold and snowy, Moore was required to walk a short distance to and from the police car in his stocking feet, since his shoes had been confiscated as evidence. At approximately 6:30 a.m., while "crying a little bit" and sniffling, Moore admitted to police that he had robbed and kidnapped Olinger and that he had shot and killed Olinger. He claimed that the shooting was accidental.

3

Based on information supplied by Kinley, police located Olinger's body. The chief deputy coroner determined that Olinger had died of a single gunshot wound to the head fired from a distance of between six and twenty-four inches away.

The grand jury indicted Moore on three counts of aggravated murder, one count of aggravated robbery, and one count of kidnapping. All counts carried a firearm specification. All three aggravated murder counts carried three death-penalty specifications: (1) aggravated murder to escape detection for kidnapping and/or aggravated robbery [*R.C. 2929.04(A)(3)*]; (2) aggravated murder committed in connection with kidnapping where Moore either was the principal offender or committed the aggravated murder with prior calculation and design [*R.C. 2929.04(A)(7)*]; and (3) aggravated murder committed in connection with aggravated robbery where Moore either was the principal offender or committed the aggravated murder with prior calculation and design [*R.C. 2929.04(A)(7)*].

The defense essentially admitted Moore's involvement in the crimes. It argued that Moore had not formed the specific intent to kill Olinger. After deliberation, the jury found Moore guilty as charged.

Prior to the mitigation hearing, the trial court merged the three death specifications of Count I (aggravated murder committed with prior calculation and design) into one specification: murder to escape detection for kidnapping and/or aggravated robbery. The court also merged the two felony murder counts into one count and merged the three specifications attached to these counts into two: murder during kidnapping and murder during aggravated robbery.

During the mitigation hearing, several witnesses testified on Moore's behalf, and Moore gave a remorseful unsworn statement admitting the wrongfulness of his actions.

The jury recommended death, and the court imposed the death penalty. The court also imposed consecutive prison sentences for Moore's other convictions. Upon appeal, the court of appeals affirmed the convictions and sentence of death.

The cause is now before this court upon an appeal as of right.

State v. Moore, 81 Ohio St.3d 22 (1998)

## ARGUMENT

### I.    Introduction

In his amended petition for a writ of habeas corpus, Moore presented twenty-five grounds for relief.  In her Return of Writ, Respondent answered Moore's allegations, setting forth, for each ground, Respondent's reasons for asking that the Court deny Moore's petition.   Moore was provided an opportunity to reply to Respondent's arguments, and, in fact, filed a reply.  In his Merit Brief, Moore addresses all grounds set forth in his amended petition, reiterating a number of arguments advanced in his amended petition.   Accordingly, Respondent respectfully incorporates herein by reference her previous arguments, as set forth in her Return of Writ.  Moreover, for the additional reasons set forth below, Moore cannot establish a basis for habeas corpus relief.  Thus, Respondent respectfully requests that the Magistrate Judge issue a final opinion and order which recommends dismissal with prejudice of Moore's amended petition.

### II.    Moore's claims of ineffective counsel do not warrant relief.

In his First, Second, Third and Fourth Grounds, Moore alleged for various reasons that his trial counsel rendered constitutionally ineffective assistance.  For the most part Moore failed to fairly present in timely fashion his allegations to the Ohio courts.  Thus, his claims are procedurally defaulted, absent a showing of "cause and prejudice" or actual innocence.  In any event, as explained below, Moore's claims do not warrant relief in federal habeas corpus.

**A.    With one exception, Moore's claims are procedurally defaulted.**

On direct appeal before the Supreme Court of Ohio, Moore claimed, in support of his Thirteenth Proposition of Law, that his trial counsel was constitutionally ineffective in their preparation and presentation of mitigating evidence. Moore alleged specifically that counsel's deficient preparation of Dr. Chiappone's precipitated "devastating" testimony on cross-examination to the effect that Moore admitted killing Mr. Olinger to avoid apprehension and that he lied to the police when he claimed that the killing was accidental, thereby depriving him of a fundamentally fair sentencing hearing. The Supreme Court of Ohio denied relief, essentially finding that the record did not substantiate Moore's allegations. State v. Moore, 81 Ohio St.3d at 34-37.

In his subsequent petition for post-conviction relief, Moore alleged, in support of his Third and Fourth Claims, that trial counsel were ineffective in failing to prepare for mitigation properly and in failing to present a theory of mitigation. The trial court denied relief. In affirming the trial court's judgment, the Ohio Court of Appeals found specifically that Moore did not present any evidence outside the record in support of his allegations, and that Moore did not suggest, let alone offer, other mitigating evidence that counsel could have presented. State v. Moore, 1998 WL 638353 (Ohio App. 1 Dist. 1998). The Supreme Court of Ohio denied without opinion Moore's discretionary appeal. State v. Moore, 84 Ohio St.3d 1472 (1999).

Consistent with the above, Respondent argued that Moore's claims are defaulted, with the exception of sub-part B of the Second Ground, due to Moore's failure to present them on direct appeal to the Supreme Court of Ohio. In his Merit Brief, Moore argues that the claims are not defaulted. He contends specifically that he actually presented his

claims, to the extent that they were included as instances of ineffective appellate counsel set forth in his application to reopen his direct appeal.  See State v. Moore, 93 Ohio St.3d 649 (2001).  Moore's argument is mistaken.  Lott v. Coyle, 261 F.3d 594, 612 (6th Cir. 2001) ("[T]hat  a court, in reviewing a claim of ineffective assistance of counsel, looks to the merits of the alleged error for purposes of determining the existence of Strickland prejudice is not dispositive of the question whether a procedurally defaulted claim has been resurrected.").  As noted therein by the Sixth Circuit, to hold otherwise would eviscerate the procedural default rule.

In sum, with the exception of the specific allegation presented by Moore on direct appeal, Moore's claims of ineffective assistance of trial counsel are procedurally defaulted.

**B.     Moore's claims in any event do not warrant relief.**

Assuming for the sake of argument that all of Moore's claims may be reviewed on "the merits," Moore cannot establish the requisites for relief.  There is no evidence that Moore's attorneys actively represented conflicting interests.  Moore cannot overcome the presumption that his trial counsel performed in a professionally acceptable manner, nor can he establish that any alleged errors or omissions by his counsel were such as to result in fundamental prejudice, as defined by clearly established federal law.  Accordingly, as more fully explained below, Moore is not entitled to relief in federal habeas corpus.

**1.     There is no evidence that Moore's trial attorneys had a constitutionally impermissible "conflict of interest."**

Moore alleges in his First Ground that his constitutional rights were violated because Attorney Chuck Stidham, the "mitigation specialist" used by his trial defense

counsel "had an undisclosed, actual conflict of interest," e.g., that Attorney Stidham represented co-defendant Jason Holmes on appeal.  Amended Petition (Doc. 29), pages 4-5).  In her Return of Writ, Respondent argued that Moore's allegations concerning Stidham were not cognizable in federal habeas corpus, as Moore has no constitutional right to a mitigation specialist in the first instance.  Return of Writ (Doc. 31), page 36.

In his Merit Brief, Moore relies on Cuyler v. Sullivan, 466 U.S. 335 (1980) in support of his allegation that Stidham was under an "actual conflict of interest that adversely affected *counsel's* performance."  Merit Brief at page 7 (emphasis added).  Of course, Stidham did *not* act as counsel for Moore.  Moore does not cite any decision of the Supreme Court of the United States that extends Cuyler to alleged conflicts of interest by investigators or other members of the defense team that are not acting as legal counsel.  Nor is the Supreme Court likely to extend Cuyler in such a manner.  See Mickens v. Taylor, 535 U.S. 162, 168, 122 S.Ct. 1237, 1246 (2002) (noting that Cuyler has never been extended to successive representation of co-defendant or witness).  Accordingly, Moore has presented no evidence that his trial attorneys were subject to a constitutionally impermissible conflict of interest.

> **2.    Moore cannot overcome the presumption that his trial counsel performed in a professionally acceptable manner, nor can he establish that any alleged errors or omissions by his counsel were such as to result in fundamental prejudice, as defined by clearly established federal law.**

In his Second Ground, Moore alleges that his trial counsel's preparation and presentation of mitigating evidence was constitutionally ineffective.  Moore points to no evidence that undermines the Supreme Court of Ohio's essential factual determination that trial counsel adequately prepared for the penalty phase of the trial.   According to his

deposition testimony, Attorney James discussed with Dr. Chiappone, in a three-hour meeting before the penalty hearing, Dr. Chiapone's anticipated testimony. James was absolutely certain that Dr. Chiappone did not inform him of the "devastating" statements by Moore revealed on cross-examination. James Deposition of December 3, 2003, at pages 84-89. Contrary to Moore's arguments, Dr. Chiappone's recollection is not unequivocally contradictory. Dr. Chiappone could not specifically recall the substance of his discussions with James. Dr. Chiappone assumed that he told James the information contained in the "Defendant's account of the offense" section of his diagnostic report. That document contains no reference to Moore's admission that he shot the victim to escape detection. Deposition of Dr. Chiappone, pages 153, 156-157, attached excerpt from Clinic File.

Moore suggests, in the alternative, that even if James could not have anticipated Dr. Chiappone's testimony on cross-examination, he was professionally deficient in failing to prevent Dr. Chiappone from disclosing Moore's statements via supposedly improper "ex parte" discussions with the prosecutor. Moore's new "spin" on his claim is illusory. The documents cited by Moore indicate that Dr. Chiappone contacted Judge Ruehlman on November 14, 1994, and met with the prosecutor on November 17, 1994. But all of this occurred after James notified the prosecutor, on November 10, 1994, that Dr. Chiappone would be called as a defense witness. December 3, 2003, Deposition of James, at pages 77-78. Thus, there were no improper "ex parte" discussions by anyone with Dr. Chiappone. Further, Moore can point to no professional standard that authorizes let alone requires a defense attorney to instruct a witness not to speak with the prosecuting attorney prior to trial.

Insofar as Moore seeks to adduce evidence in support of his other allegations, this Court is bound to consider the holding of the state courts that Moore failed to present in post-conviction evidence outside the record sufficient to warrant a hearing on his claims. The state courts' holding is objectively reasonable.  There is nothing inherently unfair about the state courts requiring Moore to present *some* evidence in support of his claims before granting discovery and an evidentiary hearing.   Moreover, the Warden notes that Moore specifically requested the trial court to grant discovery and an evidentiary hearing only with respect to his claims that electrocution constituted cruel and unusual punishment, and that his sentence was the product of racial discrimination.  He made no such specific requests with respect to his claims of ineffective trial counsel.  Appendix, Pages 734-739, 767-770.

In his Third Ground, Moore alleges that trial counsel were ineffective during the guilt phase in "failing" to request an instruction on intoxication and in "failing" to secure the assistance of a "forensic expert" to challenge the state's theory of the case.  Merit Brief at page 43.  Moore points to no evidence that Moore was intoxicated to such a degree as to preclude him from having a purpose to kill.  See State v. Hicks, 43 Ohio St.3d 72 (1989) (evidence of intoxication alone is insufficient to require an instruction on voluntary intoxication).  Here the record is replete with evidence that Moore acted purposefully.  And, Moore points to no evidence that a forensic expert could or should have discovered that would have aided the defense.  Hence, Moore can show neither unprofessional performance by counsel or any resulting prejudice.

Finally, in his Fourth Ground, Moore alleges that his trial counsel rendered ineffective assistance by continuing to represent him on direct appeal before the Ohio

Court of Appeals.  Merit Brief at page 48.    Moore's counsel was not required to present on direct appeal a claim that he rendered ineffective assistance of counsel at trial.  Thus, counsel's continuous representation did not result in waiver of such claims, and, indeed, on direct appeal before the Supreme Court of Ohio, Moore presented a claim of ineffective assistance of counsel at trial.  As for counsel's representation before the court of appeals, Moore does not point to any issues that were demonstrative stronger than the issues actually raised.

In sum, Moore's claims of ineffective counsel do not warrant relief in federal habeas corpus.

### III.    Moore's "biased judge" claims do not warrant relief in federal habeas corpus.

Moore alleges, in his Fifth and Twelfth Grounds, that the trial judge was not impartial and therefore his constitutional rights to a fair trial and an "adequate post-conviction" process were violated.   As "evidence" of this alleged impartiality, Moore cites comments by the judge during sentencing concerning delays in the post-conviction review process; allegedly erroneous rulings by the judge during trial that according to Moore were motivated by bias against him; alleged ex parte contacts with the defense's expert "to discuss the doctor's position and duties;" the trial judge's alleged failure to recuse himself in post-conviction proceedings; and the judge's alleged bias against a convicted murderer who sought to practice law after his release on parole.  Merit Brief at pages 48-62.

For the reasons stated in the Return of Writ, Moore's claim is procedurally defaulted, due to his failure to properly present it to the Ohio courts.   In any event,

Moore's claim is utterly without merit. The trial judge's views concerning delay in capital cases are not evidence of bias. See Collins v. Byrd, 510 .S. 1185, (1994) (Scalia, J., Dissenting from denial of motion to vacate stay) ("Only one bent on frustrating the death penalty could think [lower court's granting of eleventh-hour stay] right."). As the Supreme Court of the United States also has noted, judicial rulings almost never constitute evidence of bias sufficient to warrant a judge's recusal. Liteky v. United States, 510 U.S. 540, 555 (1994); Alley v. Bell, supra, 307 F.3d at 388. There is no evidence that the trial judge engaged in ex parte discussions with Dr. Chiappone concerning the substance of his testimony. And the trial judge's position concerning the propriety of a convicted murder practicing law obviously has nothing to do with Moore's case.

Moore's "biased judge" claims do not warrant relief in federal habeas corpus.[1]

## IV.    Moore's erroneous instruction claims do not warrant relief in federal habeas corpus.

Moore alleges, in his Sixth, Sixteenth, Twentieth, and Twenty-first Grounds that erroneous instructions violated his constitutional rights. With one exception (sub-part A of the Sixteenth Ground) Moore failed to properly present his claims to the Ohio courts. Accordingly, as fully explained in Respondent's Return of Writ, Moore's allegations in the latter regard are procedurally defaulted. In any event, for the reasons set forth below, Moore's claims are without merit.

---

[1] Moore also alleges generally that Ohio's post-conviction process is not "adequate." Moore's allegation on its face is not a cognizable basis for relief in federal habeas corpus. States have no federal constitutional obligation to provide post-conviction remedies, Pennsylvania v. Finley, 481 U.S. 551, 557, 95 L. Ed.2d 539, 107 S. Ct. 1990, 1994 (1987), and the Sixth Circuit has held on numerous occasions that habeas corpus cannot be used to challenge errors or deficiencies in state post-conviction proceedings. Alley v. Bell, 307 F.3d 380, 386-87 (6th Cir. 2002); Kirby v. Dutton, 794 F.2d 245, 247-48 (6th Cir. 1986); see also Greer v. Mitchell, 264 F.3d 663, 681 (6th Cir. 2001).

**A.     The trial judge's "acquittal first" instruction did not violate Moore's constitutional rights.**

Moore alleges, in his Sixth Ground, that the trial court's instructions at pages 1243-1244 of the transcript were constitutionally erroneous.   Moore argues that the instructions erroneously required that the jury "acquit" Moore of death before considering a life sentence.   Moore relies primarily on <u>Davis v. Mitchell,</u> 318 F.3d 682 (6th Cir. 2003).   Merit Brief at pages 70-71.   Moore's arguments notwithstanding, the Sixth Circuit has in several cases upheld the constitutionality of virtually identical instructions.   <u>See</u> <u>Scott v. Mitchell</u>, 209 F.3d 854, 873-877 (6th Cir. 200); <u>Roe v. Mitchell,</u> 316F.3d 557, 564 (6th Cir. 2002).   As has been recognized by the district courts, <u>Davis v. Mitchell</u> conflicts with <u>Scott</u> and <u>Roe</u>, which are binding, prior precedent.   <u>See</u> <u>Madrigal v. Bagley</u>, 276 F.Supp.2d 744, 785 (N.Dist. Ohio 2003); <u>Taylor v. Mitchell</u>, 296 F.Supp.2d 784 (N.Dist. Ohio 2003), citing <u>United States v. Smith,</u> 73 F.3d 1414 (6th Cir. 1996).

Accordingly, had it been properly presented to the Ohio courts, Moore's "acquittal first" claim could not sustain habeas corpus relief.

**B.     The trial court's instructions did not otherwise violate the constitution.**

In his Sixteenth Ground, Moore alleges, among other things, that the trial court violated his constitutional rights by refusing to give instructions requested by the defense; and by failing to instruct, during the guilt phase, that the jury was required to find unanimously that Moore was the "principal offender," or to find unanimously that Moore committed the murder with prior calculation and design.   According to Moore, the

13

additional instructions were necessary to preclude the prosecutor from making improper arguments and to ensure that the jury did not mistakenly interpret the "acquittal first" instruction as mandating unanimous agreement on the existence of mitigating factors, in violation of <u>Mills v. Maryland</u>, 486 U.S. 367 (1988).    Merit Brief at pages 123-124.

Moore's arguments are without merit.  Moore's burden to show prejudice is "especially heavy," because "an omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law."  <u>Henderson v. Kibbee</u>, 431 U.S. 145, 155 (1977).  The Supreme Court of the United States has never held that the constitution requires "preventative" instructions in anticipation of improper arguments by the prosecutor.  Moore's argument that additional arguments were necessary to prevent a violation of <u>Mills</u> is foreclosed by <u>Coe v. Bell</u>, 161 F.3d 320 (6th Cir. 1998), as well as <u>Scott</u> and <u>Roe</u>, <u>supra</u>, and is inconsistent with his argument under the Sixth Ground that he is not asserting a <u>Mills</u> violation.  In the latter regard, Moore conceded that an instruction to the jury that their sentencing verdict was required to be unanimous could not be interpreted necessarily that unanimous agreement was required on the existence of each mitigating factor.  Merit Brief at page 70.

There is no constitutional requirement that the jury unanimously agree on whether Moore was the principal offender or committed the murder with prior calculation and design.  In <u>Schad v. Arizona</u>, 501 U.S. 624, 633 (1991), the case relied upon by Moore, the Supreme Court held explicitly that conviction of first degree murder under instructions that did not require the jury to agree on one of alternative theories of premeditated and felony-murder did not deny the defendant due process.  In any event, the jury also convicted Moore on the murder count that alleged the purposeful killing of

Mr. Olinger with prior calculation and design.  Therefore, it is not possible that some jurors believed that Moore did not have a design to kill but nevertheless sentenced him to death.

In his Twentieth Ground, Moore alleges that the trial court's instructional definition of reasonable doubt violated his constitutional rights.  Moore concedes that Ohio's instruction has been upheld by the Supreme Court of Ohio and the Sixth Circuit. Merit Brief at pages 143-144.  See Buell v. Mitchell, 274 F.3d 337, 366 (6th Cir. 2001), citing Thomas v. Arn, 704 F.2d 865, 867-69 (6th Cir. 1983).  He asks nevertheless that the Court ignore binding precedent and rule to the contrary, because the Supreme Court of the United States has not addressed the constitutionality of Ohio's instruction.  Were the Court inclined to do, the Court must also find that the Supreme Court of Ohio's approval of the instruction is an unreasonable application of federal law as clearly established by the Supreme Court of the United States.  The Sixth Circuit's precedent, and the Supreme Court of the United State's disinclination to review the question, are compelling indications that the Supreme Court of Ohio's view is reasonable.

Finally, in his Twenty-first Ground, Moore alleges that the alternative principal offender / prior calculation and design instruction violated Ring v. Arizona, 536 U.S. 584 (2002), and was erroneous a matter of state law.    Merit Brief at pages 144-145.  It is obvious that the jury found Moore guilty of the facts necessary to render him eligible for a death sentence.  As noted above, Moore was unanimously convicted on the first count of murdering Mr. Olinger with prior calculation and design.  Moore argues that the Supreme Court of Ohio recognized that the trial court's instructions were erroneous, but further erred by relying on the jury's finding of guilty on the first count in holding that

15

the error was harmless. According to Moore, the Supreme Court of Ohio thereby substituted its finding of "death eligibility" for a required finding by the jury. Moore's argument is nonsense; obviously, in citing the jury's verdict on the first count, the Supreme Court of Ohio did not usurp the jury's function.

Moore further contends that the instructions on causation lessened the state's burden of proof and violated his constitutional rights. Merit Brief at pages 145-149. Moore's argument is meritless. For the reasons stated by Respondent in her Return of Writ, the causation instruction cannot be reasonably construed, in the context of the instructions as a whole, as requiring a conclusive presumption that lessened the state's burden to prove guilt beyond a reasonable doubt. See Buell v. Mitchell, supra, 274 F.3d at 366 (rejecting identical claim, where the trial court's other instructions fully explained the specific intent requirement). As noted in the Return of Writ, the trial court here specifically instructed that to convict it must find beyond a reasonable doubt that Moore had a specific intention to cause Mr. Olinger's death. Trial Transcript at page 967.

In sum, Moore's erroneous instruction claims do not warrant relief in federal habeas corpus.

### V. Moore's prosecutorial misconduct claims do not warrant relief in federal habeas corpus.

Moore alleges, in his Seventh, Thirteenth, and Eighteenth Grounds, that prosecutorial misconduct at trial violated his constitutional rights. For the reasons stated in Respondent's Return of Writ, Moore failed to properly present to the state courts most of his allegations. In any event, as more fully discussed below, none of Moore's claims warrant relief.

A.    **The Supreme Court of Ohio reasonably concluded that the prosecutor's allegedly erroneous arguments and other alleged misconduct did not deprive Moore of a fundamentally fair trial or violate his constitutional rights.**

In his Seventh Ground, Moore alleges, among other things, that erroneous arguments by the prosecutor at trial violated his constitutional rights. Moore argues specifically that the prosecutor improperly argued that the jury should consider the personal feelings of the victim; that the jury had a duty to impose death; that the jury should consider non-statutory aggravating circumstances in imposing a death sentence; and that the jury should consider that Moore's statement to the jury in sentencing was unsworn. According to Moore, "The Ohio Supreme Court addressed the merits of each of the above finding them to be improper arguments." Merit Brief at page 75.

For the reasons stated in the Return of Writ, the Supreme Court of Ohio's holding that the complained of arguments did not deprive Moore of his substantial rights, did not contravene nor unreasonably apply federal law as clearly established by the Supreme Court of the United States. See State v. Moore, supra, 81 Ohio St.3d at 28-35. Moore argues that this Court need not apply the appropriate standard of deference, "Because the Ohio Supreme Court did not consider, rely on or even analyze Moore's claim under Donnelly [v. Dechristoforo, 416 U.S. 637 (1974)], AEDPA does not constrain this Court's review of the claim." He also suggests that the Court must apply the harmlessness test applicable to constitutional error. Moore's arguments are mistaken. Early v. Packer, 537 U.S. 3, 123 S.Ct. 362, 365 (2002) (emphasis in original) (AEDPA "does not require citation of our cases -- indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."); Darden v. Wainwright, 477 U.S. 168, 183, n.15 (1986) ("We do not

decide the claim of prosecutorial misconduct on the ground that it was harmless error. In our view, that issue is not presented. Rather, we agree with the holding of every court that has addressed the issue, that the prosecutorial misconduct, inn the context of the facts and circumstances of the case, did not render petitioner's trial unfair -- i.e., that it was not constitutional error.").

In his Thirteenth Ground, Moore alleges, among other things, that the prosecution improperly challenged an African-American woman because of her race, and erroneously "organiz[ed] a jury to return a sentence of death." Merit Brief at pages 108-109, 111-112. As noted in the Return of Writ, the Supreme Court of Ohio, in denying relief, applied the correct controlling precedents of the Supreme Court of the United States. See State v. Moore, supra, 81 Ohio St.3d at 26-29, citing Lockhart v. McCree, 476 U.S. 162 (1986), Wainwright v. Witt, 469 U.S. 412 (1985), and Batson v. Kentucky, 476 U.S. 79 (1986). Moreover, the Supreme Court of Ohio's application of this clearly established law is reasonable, in light of the facts. There is no evidence in the record the trial court excluded any prospective jurors for cause based on an improper standard, and, the record fully supports the prosecutor's statements of neutral reasons for his peremptory challenge of the juror in question.

In his brief before this Court, Moore does not cite any objective grounds for finding an unreasonable application of the law by the Supreme Court of Ohio. Rather, he argues only that the Supreme Court of Ohio was unreasonable simply because it rendered a decision contrary to his arguments. Merit Brief at page 112. Moore's arguments are therefore patently without merit. Lockyer v. Andrade, __ U.S. __, 123 S.Ct. 1166, 1175 (2003) "objectively unreasonable" is not the same thing as "clear error," nor may the

federal court grant relief because it has a "firm conviction" that the state court's decision is erroneous.).

**B.    Moore's remaining allegations do not warrant relief.**

Finally, in his Eighteenth Ground, Moore alleges that the prosecutor had "ex parte" discussions with the trial judge and improperly "met with the defense expert;" and that the prosecution "presented testimony from the victim's father in order to elicit sympathy from the jury, denigrated petitioner's Moore's counsel, encouraged the jury to perform its own experiment and commented on trial counsel's failure to present expert witnesses." Moore also alleges, as he did in furtherance of the Seventh and Thirteenth Grounds, that the prosecutor unfairly organized a "death jury" and improperly urged the jury to sympathize with the victim. Merit Brief, pages 126-133.

Contact between the prosecutor and the trial judge is not necessarily improper, much less constitutional error. McKenzie v. McCormick, 27 F.3d 1415, 1420 (9th Cir. 1994) ("Proof that there was contact between the judge and the prosecutor does not satisfy petitioner's burden nor does it overcome the presumption of constitutional correctness accorded final state court judgments; only proof of an *improper* contact does.") (emphasis in original). There is no proof here of any impropriety; it is obvious that if the prosecutor had any ex parte discussions with the trial judge, they concerned the availability of the judge to conduct the trial. The prosecutor's contact with Dr. Chiappone occurred after Dr. Chiappone was listed as a defense witness. See December 3, 2003, Deposition of James, at pages 77-78. Thus, Moore's allegations of improper ex parte communications by the prosecutor are baseless.

Moore's remaining allegations of misconduct are similarly insubstantial. The

prosecutor's arguments concerning the position of the victim are fair comment on the evidence, and cannot be reasonably equated with "experiments" or "investigations" by jurors outside the courtroom. The testimony from the victim's father was innocuous and cannot reasonably be construed as inflammatory. For the reasons stated previously, the prosecutor's voir dire of the jury was proper, and his other allegedly improper arguments cannot reasonably be deemed as fundamentally prejudicial.

For all the above reasons, Moore's prosecutorial misconduct claims do not warrant relief in federal habeas corpus.

**VI.    Moore's discrimination claims do not warrant relief in federal habeas corpus.**

Moore alleges, in his Ninth and Tenth Grounds, that the discriminatory selection of grand jury forepersons and grand and trial jurors violated his constitutional rights. Merit Brief at pages 93-100. As noted in Respondent's Return of Writ, Moore failed to present his grand jury discrimination claim to the state courts and, accordingly, its is procedurally defaulted. In his Traverse, Moore argued that he presented his Tenth Ground on direct appeal as the fifth proposition of law. Respondent concedes that to the extent Moore based his challenge to the selection of trial jurors based the allegedly improper use of voter registration roles, he has preserved his Tenth Ground for habeas corpus review. See State v. Moore, supra, 31 Ohio St.3d at 27-28.

In any event, Moore's claims are without merit. For the reasons stated in the Return of Writ, Moore has failed to present evidence sufficient to support his claims. Moore has not established that he was prejudiced by the allegedly discriminatory selection of the grand jury foreperson in his case, given the insignificant role of the foreperson under Ohio law. Nor has Moore shown that the number of African American

jurors in the trial venire from which his jurors were selected was an unreasonable representation of African-Americans, or that the African-Americans are systematically excluded in the selection process.  See Duren v. Missouri, 439 U.S. 357 (1978).  In his brief before this Court, Moore cites no evidence in support of the requisite showings.

For all the above reasons, Moore's discrimination claims do not warrant relief in federal habeas corpus.

## VII.    Moore's other trial error claims do not warrant relief in federal habeas corpus.

Moore alleges, in his Fifteenth and Seventeenth Grounds, that the trial court deprived him of his constitutional rights by failing to consider mitigating evidence and by "locking the courthouse doors."  Merit Brief at pages 118-123, 124-126.  Moore did not present to the Ohio courts the claims of constitutional error set forth in his Fifteenth and Seventeenth Grounds.  Accordingly, they are procedurally defaulted.  In any event, as explained below, Moore's allegations do not warrant relief in federal habeas corpus.

### A.    Moore cites no evidence in the record to support his claim that the trial court failed to consider mitigating evidence.

In support of his Fifteenth Ground, Moore alleges, in conclusory terms, that the trial court "failed to consider relevant mitigation presented by Moore."  In his Merit Brief, Moore cites nothing in the record to support his allegations.  Merit Brief at pages 118-123.   In his Amended Petition, Moore argues that the trial judge's finding of a lack of mitigating factors, apart from Moore's age, is indicative of the trial court's failure to consider "uncontradicted evidence" regarding the divorce of Moore's parents, his difficulties with his "peers' in childhood, his substance abuse, and some of his "good'

character traits, including his potential for rehabilitation and remorse.  Amended Petition, (Doc. 29), pages 55-56.

Moore's arguments in the latter regard are largely beside the point.  The trial judge did not state that he refused to consider Moore's evidence, or that there was insufficient evidence to prove the mitigating factors posited by Moore.  Rather, the trial court found that these facts were not significant mitigating considerations.  There of course is no constitutional requirement that trial courts "recognize," "find" or "determine" that a particular fact or circumstance is mitigating per se.  That type of requirement would be virtually unenforceable.  And, a mandatory constitutional consideration of all "mitigating factors" apart from the evidence presented to prove them logically would require the reciprocal rule defining factors that per se are never mitigating, which would directly conflict with the requirement that all potentially mitigating evidence be considered.

Moore's Fifteen Ground is meritless.

**B.      There is no evidence that the trial court deprived Moore of his right to a public trial.**

In his Seventeenth Ground, Moore alleges that the trial court "closed the doors to the courthouse" and thereby deprived him of his constitutional right to a public trial. Merit Brief at page 125.  Moore's sole support for this claim is the trial judge's statement, before giving final instructions that he intended to close the courtroom to preclude interruptions.  The trial judge did not bar any particular person from the trial or exclude the public generally from the proceedings, and his actions here were well within his inherent authority to keep order in the courtroom.  See Morales v. United States, 294

F.Supp.2d 174 (Dist. of Conn. 2003) (trial court did not deprive defendant of public trial by reserving seats in the courtroom for jurors to ensure orderly selection of jury). Moore's claim is frivolous.

In sum, Moore's other trial error claims do not require relief in federal habeas corpus.

### VIII.   Moore's involuntary confession claim does not warrant relief in federal habeas corpus.

In his Nineteenth Ground, Moore alleges that his statements to the police were involuntary and therefore their admission into evidence violated his constitutional rights. Merit Brief at pages 133-139.  On direct appeal, the Supreme Court of Ohio accepted the finding of the trial court that Moore had been advised of his constitutional rights, and determined, under the totality of the circumstances, that Moore's statements were voluntary.   In so holding, the Supreme Court of Ohio specifically related Moore's testimony during the suppression hearing before the trial court, which was in conflict with the testimony of the interrogating officers.  The Supreme Court of Ohio explicitly deferred to the trial court's resolution of the evidentiary conflict in favor of the testifying officers.  State v. Moore, supra, 81 Ohio St.3d at 29-32.

In his brief before this Court, Moore argues that the Supreme Court of Ohio failed to consider circumstances indicative of coercion and that therefore its decision is objectively unreasonable.    Merit Brief at pages 136-137, 138.  Moore's arguments are not supported by the record.  As Moore (in somewhat contradictory fashion) concedes, the Supreme Court of Ohio considered, as established fact, that Moore was not provided food or water while in the holding cell, that he was required to walk in the snow in his

23

stocking feet, and that he was handcuffed for three hours. The additional circumstances that Moore now argues were overlooked by the Ohio Supreme Court -- Moore's alleged smoking of marijuana, and the officers' alleged failure to advise him of the charges and otherwise provide him with adequate warnings -- were based mainly on Moore's testimony, which the trial court rejected.

Moore also contends that "contrary' to federal law, the Supreme Court of Ohio held that the warnings given to Moore were sufficient to overcome the effects of subsequent coercion. Merit Brief at page 138. Again, Moore's arguments are not supported by the record. The Supreme Court of Ohio noted specifically the testimony of interrogating officers that Moore was not handcuffed during questioning; that Moore was asked if he wanted anything to eat or drink; that at the beginning of the interview, Moore was informed that the questioning concerned the death of Mr. Olinger; that Moore was shown the rights form he had signed earlier; and that Moore answered yes when asked if he understood his rights. State v. Moore, supra, 81 Ohio St.3d at 30-31. Moore cites no decision of the Supreme Court of the United States holding a defendant's statements to be involuntary under materially indistinguishable facts.

For all the above reasons, Moore's involuntary confession claim does not warrant relief in federal habeas corpus.

## IX.     Moore's ineffective assistance of appellate counsel claim does not warrant relief in federal habeas corpus.

In his Eight Ground, Moore alleges that he received "ineffective assistance of counsel in his direct appeal of right to the Ohio Supreme Court in violation of the Sixth, Eighth and Fourteenth Amendments." Merit Brief at page 86. Moore's claim fails to

allege a cognizable basis for habeas corpus relief.  Under Pennsylvania v. Finley, 481 U.S. 551 (1987), the defendant's right to counsel extends only to his first direct appeal as of right.  The Supreme Court in Finley relied on Ross v. Moffitt, 417 U.S. 600 (1974), in which the Supreme Court observed, "The fact that an appeal has been provided does not automatically mean that a State then acts unfairly by refusing to provide counsel to indigent defendants at every stage of the way."  Pennsylvania v. Finley, 481 U.S. at 556, quoting Ross v. Moffitt, 417 U.S. at 611.  See also State v. Smith, 71 Ohio St.3d 1208 (1994) (capitally sentenced defendant's appeal to the Supreme Court of Ohio, following appeal to the court of appeals, not a first appeal as of right, and, therefore, defendant had no constitutional right to counsel).

Moore's Eighth Ground therefore does not warrant relief in federal habeas corpus.


**X.     Moore's constitutional claims do no warrant relief in federal habeas corpus.**

Moore alleges, in his Fourteenth, Twenty-second and Twenty-fifth Grounds, that for various reasons Ohio's death penalty statutes are unconstitutional on their face or as applied in his case.  For the reasons stated in Respondent's Return of Writ, Moore's claims are procedurally defaulted, to the extent that he did not present them properly to the Ohio courts.  In any event, as explained below, Moore's arguments are foreclosed by well-established precedent.

**A.     Ohio's statutory "catch-all" provision is constitutionally required.**

O.R.C. 2929.04(B)(7) requires that the sentencing jury or court "consider, and weight against the aggravating circumstances ... [a]ny other factors that are relevant to the issue of whether the offender should be sentenced to death."  In furtherance of his

Fourteenth and Twenty-fifth Grounds, Moore argues that O.R.C. 2929.04(B)(7) is unconstitutional because it could be construed by a jury to require or permit the imposition of a death sentence based on "non-statutory" aggravating circumstances. Merit Brief at pages 114-118.

Moore's argument is frivolous. In <u>Lockett v. Ohio,</u> 438 U.S. 586 (1978), the Supreme Court of the United States held that Ohio's death penalty violated the Eighth Amendment because it unconstitutionally limited the range of mitigating circumstances that could be considered by the jury or the court. In response, the Ohio legislature enacted O.R.C. 2929.04(B)(7). <u>See</u> Note, "The Death Penalty and Federalism: Eighth Amendment Constraints on the Allocation of State Decision-making Power," 35 Stan. L. Rev. 787, fn. 16 (1983). Quite obviously, the wide discretion afforded sentencing juries or courts by this statutory provision is constitutionally *required.* Moreover, Moore's construction of the statute -- that it permits consideration of "non-statutory" reasons in favor of a death sentence -- is inconsistent with the plain language of the statute. O.R.C. 2929.04(B) requires the sentencing jury or court to consider and weigh the listed mitigating factors, including those falling within the "catch-all" provision, *against* the proven aggravating circumstances.

> **B.     The Eighth Amendment does not prohibit a capital specification from duplicating an element of a capital offense, nor did the "double-counting" of specifications in Moore's case violate his constitutional rights.**

In his Twenty-second Ground, Moore alleges that his Eight Amendment rights were violated because the "same operative facts" established the basis for the capital specification and an element of the charged aggravated murder; and because each

aggravated murder count set forth the same aggravating specifications.  Merit Brief at pages 149-150.  Moore's arguments are mistaken.  See Scott v. Mitchell, supra, 209 F.3d at 884 ("Even if Scott were right that the same act was the basis of his conviction and aggravating circumstance, this alone would not justify habeas relief."), citing Lowenfield v. Phelps, 484 U.S. 231, 244-46 (1988);  State v. Moore, supra, 81 Ohio St.3d at 23 (finding that prior to the mitigation hearing, the trial court merged the specifications under each count and merged the felony-murder counts).

> **C.    Moore's remaining constitutional challenges are foreclosed by well-established precedent.**

In his Twenty-fifth Ground, Moore alleges for other various reasons that Ohio's death penalty is unconstitutional.  For the reasons set forth in Respondent's Return of Writ, Moore's challenges are foreclosed by the controlling decisions of the Supreme Court of the United States, as interpreted and applied by the United States Court of Appeals for the Sixth Circuit.

For all the foregoing reasons, Moore's constitutional claims do not warrant relief in federal habeas corpus.

## CONCLUSION

For the reasons stated herein, the Warden respectfully submits that Moore's petition for a writ of habeas corpus should be denied.

Respectfully submitted,

JIM PETRO (0022096)
Attorney General


s/Charles L. Wille
**CHARLES L. WILLE (0056444)**
Principal Assistant Attorney General
Capital Crimes Section
30 East Broad Street, 23rd Floor
Columbus, Ohio 43215
(614) 728-7055; (614) 728-8600 (Facsimile)

**COUNSEL FOR RESPONDENT**

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing *Respondent's Merit Brief* has been sent electronically and by first-class U.S. mail, postage pre-paid to: Laurence E. Komp, Esquire, 423 Madrina, Ballwin, Missouri, 63021; **and** Michael J. O'Hara, Esquire, 25 Crestview Hills Mall Road, Suite 201, P. O. Box 17411, Covington, Kentucky, 41017; Counsel for Petitioner, this day, May 11, 2005.

s/Charles L. Wille
**CHARLES L. WILLE (0056444)**
Principal Assistant Attorney General

29