RE:  LEE EDWARD MOORE

invalidate the results.  This is not inconsistent with individuals who are involved with such serious charges and possible consequences.

### Summary of Mitigation Issues

Lee Moore, a nineteen year old, African American male explained that his actions relevant to the current offenses were a function of his feeling that his life was going nowhere and that he was abusing substances.  Developmental perspective reveals that Mr. Moore grew up receiving all that he needed, especially from his mother and being somewhat overprotected, while having a distant father and struggling with the divorce of his parents.  It appears that he did not receive guidance from his parent to give him a sense of direction in life and goals to work toward.  Consequently, both academic and vocational history are incomplete.  As a child, he was teased at times and felt he had to present a "tough guy" presentation.  He did so on one occasion and eventually obtained a Carrying a Concealed Weapon charge after fighting with a peer.  He has had short-term treatment regarding his acting out behavior as a juvenile, but he found it not helpful.  Mr. Moore started to "hang" with the wrong crowd and was abusing substances in his adolescent years.  In addition, prior to the allegations, Mr. Moore was himself accosted and soon thereafter he obtained a weapon. This young man who has not been able to utilize his potential (as noted by intelligence testing) and has struggled with his sense of identity, especially in terms of the loss of direction from a father figure.  He turned to using substances, and obtained a weapon, to make him feel more like a member of "his own group."

### Diagnosis:

Axis I:       304.90 Polysubstance Dependence, alcohol and marijuana

Axis II:      301.70 Antisocial Personality

Axis III:     None Relevant

### Treatment Recommendations:  Mitigation factors reveal substance abuse, anger at lack of parenting especially from father, sense of loss of direction in his life in spite of potential, and increasing episodes of acting out with violence.  He has little if any direction.

*David Chiappone*

David Chiappone, Ph.D.
Clinical Psychologist

DC/vle
11/1/94

- 5 -

CC 0021

CENTRAL PSYCHIATRIC CLINIC
COMMUNITY DIAGNOSTIC AND TREATMENT CENTER

909 Sycamore – Third and Fourth Floors
Cincinnati, Ohio 45202
(513) 651-9300

November 2, 1994

RE:  LEE EDWARD MOORE
DOC.#:  B94-00481

Mr. Lee Edward Moore was evaluated in reference to Mitigation of Death Penalty, pursuant to Ohio Revised Code 2929.03 and as defined in Ohio Revised Code 2947.06. Mr. Moore is charged with Aggravated Murder with Specification, Aggravated Robbery with Specification and Kidnapping. The defendant was evaluated by the undersigned, David Chiappone, Ph.D., Clinical Psychologist, on September 13, September 15, September 17, September 22 and October 20, 1994 for a total of approximately six hours at the Hamilton County Justice Center (HCJC). He was administered the Wechsler Adult Intelligence Scale-Revised (WAIS-R), the Wechsler Memory Scale, and the Bender Gestalt. Mr. Moore was also interviewed at the HCJC by Jenny O'Donnell, B.S., Psychology Trainee, on September 1, and September 12, 1994 for a total of approximately two hours and forty minutes. In addition, Ms. O'Donnell administered the Minnesota Multiphasic Personality Inventory (MMPI) on September 14, 1994 at the HCJC for approximately two hours and thirty minutes. The nonconfidential nature of the evaluation was explained to Mr. Moore prior to all sessions, and he acknowledged understanding such and signed a form to that effect. He also acknowledged his understanding that he was being evaluated for possible Mitigation of the Death Penalty. Collateral contact was made by the undersigned psychologist with the defense attorneys, Dan James and Tim Deardorff. Ms. O'Donnell made collateral contact with Dan James and Tim Deardorff, defense attorneys; Chuck Stiddham, mitigation specialist; Pamela King, juvenile probation officer; Mark Piepmeier, prosecuting attorney; Georgia Moore, the defendant's mother; Lee Moore Sr., the defendant's father; Ed Roberts, Fairfield Police; Dick Flagg, guidance counselor at Mt. Healthy High School; Westerfield, Mt. Healthy High School principal; Robin Thrasher, the defendant's sister; Beverly Parker, the defendant's sister; Shatunda Neal, the defendant's girlfriend; James Ray, father's friend; and Shirley McDaniel, a neighbor of the family. Records were obtained from the Hamilton County Justice Center (HCJC) Intake Assessment and medical chart, Children's Hospital, two letters from the defendant to his parents, employment records from McDonald's, Mt. Healthy High School records, the defendant's statement to the police, statements from the two alleged accomplices, Fairfield Police Department report of two alleged accomplices, coroner's report, medical records from a prior treating source Terry Schwartz, Psy.D., Juvenile Court contact records, Juvenile Detention Center in Butler and Hamilton County, Central Baptist School records, Orthopedic Diagnostic and Treatment Center, and Woodward High School. Records have not been received

CC 0022

_

RE:  LEE EDWARD MOORE

from the Talbert House for Young Men.  What follows are my findings and information regarding mitigation.

In the interview, Mr. Moore presented as a large, stocky built, African American male appearing older than his nineteen years.  He had short cropped hair, full beard and long fingernails. He was oriented in all spheres and was relevant and coherent.  He did not appear to be suffering from any hallucinations, delusions or other symptoms of a major mood or thought disorder.  He was somewhat downcast about being incarcerated.  He could attend and concentrate as needed.  His emotional expression throughout several interviews did not vary.  His thoughts were logical, coherent and goal-directed.  Memory was intact.  He was able to complete all tasks presented to him and participated in psychological testing without any difficulty.  Regarding the current allegations, Mr. Moore was able to provide a relevant and coherent story, explaining his acts relevant to the allegations and added that he was using marijuana and alcohol on the day of the offense.

Mr. Moore reported having juvenile charges of Carrying a Concealed Weapon, Receiving Stolen Property, Grand Theft Auto and Drug Abuse.  Collateral contact with Pamela King, Juvenile Probation Officer, reported that Mr. Moore was cooperative in reporting weekly and would discuss his activities with her. Ms. King also said that his mother was involved with his court hearings and enforced his cooperation.

Mr. Moore was born and raised in the Cincinnati area, one of eight children in two families, and the only child from the union of his parents.  When the defendant was approximately six years old, his parents divorced.  He was raised by his mother and had regular visitation with his father.  When Mr. Moore reached his late teens and started having difficulties at school and legal problems, Mrs. Moore had the defendant live with his father.  The defendant remembers his parents arguing but did not recall any violence between them.  He described his mother as strict.  Both parents have always worked.  He remembers going to live with father at times, and father being variably present.  It appears that Mr. Moore had difficulty with the divorce and felt the absence of a father figure.  Robing Thrasher, the defendant's sister, indicated that Mr. Moore did miss father and was hoping that his parents would get back together.  Robin Thrasher added that Mr. Moore was basically a "golden child" and that he received everything he needed in the home and was overprotected.  He was a nonproblematic child until adolescent years and was teased in school and bullied by one particular young man.  A friend of the family and neighbor, Shirley McDaniel, corroborated that Mr. Moore was teased as a youngster and had an altercation with a classmate.  It appears that sometime after this, Mr. Moore started getting into trouble and was more willing to act out.  In retaliation, Mr. Moore used brass knuckles in fighting with the youth.  Mr. Moore received a Carrying a Concealed Weapon charge from that incident.

- 2 -

CC 0023

RE:  LEE EDWARD MOORE

Mr. Moore has generally intact physical health.  He had no major head injuries, illnesses or surgeries as a child.  Mr. Moore did not suffer any developmental delays.  He did sustain two head injuries and a sprained ankle but medical records show those events as unrelated and not problematic.  Collateral contact from the Hamilton County Justice Center reveals that Mr. Moore was seen in intake and had three sick calls regarding physical conditions.

Academically, Mr. Moore obtained eleven grades of formal education and eventually a GED in June, 1994.  He was held back in the fourth grade and ninth grade.  He made below average marks in school.  He was in regular classes.  His grades deteriorated when he started "hanging with the wrong crowd" and using marijuana and alcohol.  In later years he was truant from school and dropped out.  He was suspended for fighting.  He did not engage in extracurricular activities.  He made friends adequately.  Collateral contact with Dick Flagg, guidance counselor of Mt. Healthy High School, revealed that Mr. Moore had discipline problems and decreased motivation.  Yet, Mr. Moore was always polite in interactions with Mr. Flagg.  What success Mr. Moore did have in school, however, appeared to be at mother's insistence and supervision.  Mr. Flagg remembers Mr. Moore "trying to change his ways" on several occasions but his efforts were short-lived.

Vocationally, Mr. Moore last worked in 1992 as an usher for a few months but was fired for absenteeism.  He worked at a fast food restaurant for several months but quit that job.  He was fired from a grocery store for absenteeism.  He said he would rather be "hanging with the boys."  His longest period of employment was approximately five months.  He admitted that bosses were critical of him for his irresponsibility, tardiness and absenteeism and that co-workers would be upset with him because they had to fill in for him.  He stated that recently he felt his life was going nowhere and that he needed to get a job and this was at the insistence of his parents.

Prior to the current allegations, Mr. Moore was living with his father but felt he was living by himself.  That is he liked living with his father.  His father would not "nag him" like his mother did.  He was able to do what he wanted to do.  Mr. Moore was receiving some Social Security funds as father was retired.  Mr. Moore had to pay rent to father but was able to retain some of the money from Social Security.

Mr. Moore has never been married and has no children.  He had one serious relationship with Shatunda Neal, meeting her when he was sixteen, and this relationship lasted for about four years until he was arrested.  He admitted that they argued periodically.  She complained about his alcohol use.

Mr. Moore has never been psychiatrically hospitalized.  He has never received psychiatric medications.  He has never experienced

- 3 -

CC 0024

RE:   LEE EDWARD MOORE

any psychotic symptomatology.   He denied suicide ideation or attempts.  As an adolescent, after difficulties in school and in an incident that raised questions in Mrs. Moore's mind about her son's substance abuse, Mr. Moore did receive treatment for a short duration with Terry Schwartz, Psy.D., Psychologist. Mr. Moore felt it was not helpful.  Mr. Moore has not received any psychiatric treatment while at the HCJC.

Regarding substance use, Mr. Moore started using alcohol and marijuana by age fifteen.  Last use of both substances was on the day of his arrest.  He reported that he would use both substances several times during the week and spend as much as $350.00 a week on marijuana.  His drug of choice was marijuana.  He has never had periods of sobriety.  His mother and girlfriend complained about his drug use.  On one occasion he came home and mother had to help him to bed, but he denied or would not talk about his substance use.  Shatunda Neal, the defendant's girlfriend, reported that Mr. Moore has a problem with alcohol and marijuana.  The defendant's father and sister, Beverly Parker, were aware of Mr. Moore's substance use, but were not aware to what extent. Mr. Moore claimed he started using alcohol and marijuana to get his mind off his problems.  When using substances he experienced and reported personality change, use in the morning, financial difficulties, blackouts and loss of control.  He has never received substance abuse treatment.

Regarding the use of weapons, Mr. Moore has had a juvenile charge of Carrying a Concealed Weapon, involving brass knuckles in which he fought with a peer.  Also, several weeks prior to the current allegations, Mr. Moore was robbed at gunpoint.  Lee Moore, Sr., the defendant's father, and James Ray, father's friend, were told of this incident by Mr. Moore and related it to Ms. O'Donnell. It was after this incident that Mr. Moore reportedly obtained a weapon from his father's home, unbeknown to father.  Lee Moore, Sr. counseled his son not to take the law into his own hands and told his son to report the assault to the police.

The Wechsler Adult Intelligence Scale-Revised (WAIS-R) revealed Mr. Moore obtained a Verbal IQ of 110, a Performance IQ of 97, a Full Scale IQ of 100, placing him in the average range of intellectual ability, and at the 50th percentile of the general population.  There is no significant verbal versus performance differential.  Mr. Moore displayed the intellectual capability to appreciate his and other's actions and the ability to handle high school studies.  He has above average skill in learning a simple coding task involving active memory.  It appears with structure he works fairly well.  The Wechsler Memory Scale resulted in a memory quotient of 100 which is commensurate with the obtained IQ and suggests that he has intact memory abilities.  There are no pathomonic signs on the Bender Gestalt test.  Results of the Minnesota Multiphasic Personality Inventory suggest that Mr. Moore answered in such a fashion as to overendorse pathology and

- 4 -

CC 0025

RE:  LEE EDWARD MOORE

invalidate the results.  This is not inconsistent with individuals who are involved with such serious charges and possible consequences.

<u>Summary of Mitigation Issues</u>

Lee Moore, a nineteen year old, African American male explained that his actions relevant to the current offenses were a function of his feeling that his life was going nowhere and that he was abusing substances.  Developmental perspective reveals that Mr. Moore grew up receiving all that he needed, especially from his mother and being somewhat overprotected, while having a distant father and struggling with the divorce of his parents.  It appears that he did not receive guidance from his parent to give him a sense of direction in life and goals to work toward.  Consequently, both academic and vocational history are incomplete.  As a child, he was teased at times and felt he had to present a "tough guy" presentation.  He did so on one occasion and eventually obtained a Carrying a Concealed Weapon charge after fighting with a peer.  He has had short-term treatment regarding his acting out behavior as a juvenile, but he found it not helpful.  Mr. Moore started to "hang" with the wrong crowd and was abusing substances in his adolescent years.  In addition, prior to the allegations, Mr. Moore was himself accosted and soon thereafter he obtained a weapon. This young man who has not been able to utilize his potential (as noted by intelligence testing) and has struggled with his sense of identity, especially in terms of the loss of direction from a father figure.   He turned to using substances, and obtained a weapon, to make him feel more like a member of "his own group."

David Chiappone, Ph.D.
Clinical Psychologist

DC/vle
11/1/94

- 5 -

CC 0026

## INTAKE DIAGNOSTIC ASSESSMENT

**DEFENDANT:** _Lee Moore_                    **CHART NO.:** _07183_

**DATE:** _9-1-94, 9-12-94_

**I.    COURT REPORT INFORMATION:**

Date/Place/Duration of Interview(s) (If location has changed, please note that on the face sheet): _____

_HCJC - 9-1-94, 9-12-94_

Charge: _"Agg Murder, Agg Robbery, & Kidnapping"_

Forensic Question(s): _Mitigation of Death Penalty_

Collateral Contacts:
_Michael & Shirley McDaniel - family neighbor  931-5621 (call AM)_
_Wayne Neal - 742-8392_
_Catrice Tillman - g.f. @ one time_
_751-3309 Robt Hayden - friend since Elementary School_
_Shatunda Neal - ex-girlfriend  742-8392_
_Robin Thrasher - Sister  351-9331_
_Beverly Parker - Sister  729-1760_

Authorizations for Release of Information Obtained: _____
_Elem, Jr & Sr High @ Mt Healthy, Woodward, Talbert House,_
_Dr. Schwartz @ Bethesda, HJC Intake Records,_
_Central Baptist School_

**II.    IDENTIFYING INFORMATION:**

Age: _19_    Sex: _M_    Race: _AA_

Marital Status: _NM_

**III.    ABBREVIATED MENTAL STATUS:**

Appearance: _____
_young aa male, tall w/ heavy build._
_clean & neat. Appropriately dressed._
_Polite & respectful_
_Nails were clean & polished_
_volume ave, pace ave_

_(left margin, vertical): Law P.O. Pamela King 852-8747_

1

CC 0027

He said he didn't really like school.
Went bc he had to go. Got along
well w/ friends from his neighborhood.
He said there was one little clique from
Skyline Acres who were always
fighting w/ him. He said no one
ever intervened to stop the fighting.
He said they "used to just always
walk up on me & my boys cause we
was from a different neighborhood."

CC 0028

Orientation X4: *Knew date, time, place, and person*
*Knew charges, Judges name*

Behavior(s): *proper eye contact, somewhat gaurded, appeared to consider his answers in a thoughtful manner. Became*

Affect and Mood: *more open as interview progressed. Affect was mildly blunted. Mood was sedate*

Suicidal/Homicidal Ideations: *denied suicidal & homicidal ideations*

Thought Processes (i.e. Circumstantial, tangential, loose, disorganized): *logical, coherent, none observed out of ordinary*

Thought Content (hallucinations, delusions, obsessions): *none reported none observed*

Memory: *ave.*

Intelligence: *ave as to vocabulary & ability to understand questions, instructions, etc.*

Clinical Signs of Mental Illness: *denies ever experiencing hallucinations*

2

Clinical Signs of Depression: _____

*denies loss of appetite, denies prob w/ weight loss or gain. No prob sleeping.*
*Has been participating in rec & classes while in jail.*

_____

Clinical Signs of Retardation: *none observed*

_____

_____

MMPI Administered to Defendant:  Yes ✓    No _____

IV.  **LEGAL HISTORY**:

Age of First Contact with Legal System/Type of Contact: _____

*First Offense @ 16 yrs. — CCW & DC (Brass Knuckles) fighting on school bus*

Traffic Violations: *Said only 1 ticket, got license @ 18. Was speeding.*

_____

Juvenile Court Contact: *CCW & DC — payout*
*GRAND THEFT & Receiving VAN - 20/20 Probation Went AUTO to JDC in Butler County for 1½ yr*

Sentence: _____

_____

Adult Court Contact: _____

*No other charges - (other than current)*

_____

_____

_____

3

CC 0030

Sentence: _____ 20/20 _____

_____

_____

Prison: _____

No. of Times: _____ 0 _____ Duration: _____

Job Skills Used While in Prison: No jobs while @ HCJC
however has successfully completed
GED 6-94

Adjustment to Imprisonment: _____
Says "doin' pretty good."
No lock ins, no prob w/ sleep or eat.

v.    **CLIENT'S ACCOUNT OF PRESENT OFFENSE:**  See typed sheets
Had been staying at his own apt. that he
shared w/ Sol Profit. Sol is 18, they'd been
living there for 2 mo. It was only 34⁸/mo
on Section 8 housing. Woke up, showered,
dressed, went got beers @ Drive Thru in
his Fairmount. Ret'd to apt & he & Sol were
listening to music. Some girls came over
& they were drinking & smoking weed.
Only drank a 40 by then & had 2 Blunts.
He left & went to Jason & Larry's house in
Mt Healthy. After a few minutes went to
Angel's house & smoked 2 more blunts w/ her.
He said the transmission was going out
in his car & Jason had been talking
about car jacking. He said Jason was into
this & even though he hadn't thought of
it before he thought now, "what did I

Lee Edw. Moore, Jr.                                    9/12/94

Defendant's account of the offense:

Lee said that he had been staying at his own apartment that he shared with a guy named Sol Profit. He only said that he and Profit got this apt 3 months before, and that they were paying $24.00 per month because it was section 8 housing. He recalled that he woke up around noon, showered, dressed, and went to get beers at the drive thru in Fairmount. He said that he returned to the apartment and he and Sol were listening to music. Some girls came over and they were drinking and smoking marijuana. He said that with them he thinks that he drank 1-40 oz. and had 2 blunts.

He left the apartment and went to Jason and Larry's house in Mt. Healthy. After a few minutes the 3 left and went to Angel's house (or apartment) and smoked 2 more blunts with her. He said the transmission in his car was going out and Jason had been talking about car jacking. He described discussing car jacking with Jason, and thinking about doing it for a couple of hours. He said Jason was into this, and even though Lee hadn't thought of it before he now thought, "what did I have to lose? My life wasn't going anywhere." Then he and Jason decided to go ahead and do it. They drove to Hamilton looking for somebody to car jack. "I picked it because I seen the man getting out, and I seen it had out of state plates, and I was like this is the one." The 2 waited for about half an hour, and smoked some more weed.

Moore said that he approached the victim himself, and Jason stayed in the car. The defendant walked over to the victim and told the victim to get into the victim's car (on the driver's side.) Jason drove away in Moore's car after he saw the victim and Moore get into the victim's car. Moore said vaguely that the two had decided to return to Jason's house after they got the car. Then Moore slid in next to the victim, into the driver's seat. Moore drove the car around the bar building and told the man to get into the trunk. When the man got into the trunk Moore drove the victim's car (with the victim in the trunk) to Jason's house. When Moore arrived Jason was already in the house.

*J.O'Donnell, BS*

CC 0032

Either Larry came out of the house or Moore went in, but Moore told Larry that he had someone in the trunk of the car. Larry said that he wanted to go with the defendant. The 2 drove down to the Fay Apts., in Cumminsville, trying to decide what to do with the victim in the trunk of the car. Eventually they saw a side street off of Beekman in Cumminsville. He said that they saw an alley way with a dumpster at the end. They decided to pull the car down that alley and tell the victim to get out of the car. Moore got out of the car and left Larry in the passenger seat. Moore said that he told the man to get out of the trunk. He said that he told the man to leave his wallet in the trunk. The man gave him the money in his pocket.

"It's like I was...I could see it all kinds of things were going through my head."

He said that he shot the victim.

He said that when he got back in the car "Larry said, 'you shot him,' then Larry said, 'Fuck him let's go.'" Moore said that Larry was hyper.

At this point the two left the scene, and went to a store to get some drinks (3-40 oz.). He said that they returned to the Jason/Larry house, and that Moore went inside the house. He said that while in the house, Larry took the license plates off of the victim's car and replaced them with the license plates off of Moore's car. He said that it was Moore's idea to change the plates, but not to use his own plates. In the meantime, Moore and Jason were in Angel's house with some girls. By now it was about 12 am.

Eventually they returned to Jason and Larry's apt to sleep, however he described having a lot of trouble sleeping. He said that he was pretty drunk, but because he couldn't get to sleep he got up and drank some more. Eventually he went to sleep.

He said that he got up the next morning, and "Larry was like let's go to the shopping mall." "I went along with it." He said that they went to Jc Penney in Northgate, bought a gold necklace and bracelet for Shatunda. Larry didn't buy anything.

I didn't ask for any further information about the next day.

Moore said that he got the gun from his father's house. He said that he had taken it a couple of weeks before the shooting. He said that he took it out into the woods to shoot at bottles and stuff. He denied taking it out to use on people. Then he said he took it originally to protect himself because he had been robbed out in Bond Hill.

have to lose? My life wasn't going anywhere."
Then he & Jason decided to go ahead & do it.
They drove to Hamilton looking for somebody
to car jack." I picked it because I seen the man
getting out, and I seen it had out of
state plates, & I was like this is the one."
The 2 waited for 1/2 hr smoked some more
weed." D approached victim by himself

## VIII. DEFENDANT'S PHYSICAL HEALTH HISTORY:

Childhood: Repeated Accidents: broke hand – while playing @13 or 14, fell & broke fingers
broke ankle – playing football on street, broke thumb fighting w/same age 16

Childhood: Illness(es) and/or Hospitalizations: no
Providence

Childhood: Trauma/Head Injuries: @14 hit head on telephone pole, knocked him out
once while in kindergarten – busted head went to
Children's Hosp. (fell off the swing)

Childhood: Medication(s): none

Adulthood Chronic Illness(es), Hospitalizations, Surgeries: none

Adulthood: Trauma/Head Injuries: none

Adulthood: Medication(s): penicillin – VD for Chlamidia 3x
Dr Paul Huff on Gilbert Ave

5

CC 0035

**IX.** <u>DEFENDANT'S INPATIENT PSYCHIATRIC HISTORY:</u>

When?  Where?  Length of Hospitalization?  Effect?

_none_

**X.** <u>DEFENDANT'S OUTPATIENT PSYCHIATRIC HISTORY:</u>

Reason?  When?  Where?  Who (Psychiatrist, Psychologist, Social Worker, Case Manager)?  Length?  Followup?

Dr Schwartz  Once/wk for a mo. @ age 16
Went because Mom was concerned about him
getting in trouble. Didn't feel he needed to go,
didn't benefit  said Dr Schwartz was "OK (+)"

**XI.** <u>FAMILY HISTORY:</u>

No. of Children: 8 in 2 families  Birth Order: Youngest

From Mo only has 3 sisters           } He's the only child
From Fa only has 2 bros & 2 sisters } from the union of pa.
His parents were married & got divorced in 1980

Birth Parents Present in the Home: 68
Divorced in 1980, stayed w/Mo until 93. Then went to Fa.

Caregiver's Relationship with One Another (Marital Relationship):
"they argued a lot" Doesn't recall physical violence.
They get along OK since divorce. Only speak to
eachother about him.

Material Needs Met: plenty to eat, etc. Lower middle
class.

Father's Occupation: Construction Worker, steady employed
Mother's Occupation: Now she's a secretary, she used to
work @ GM before they closed.

CC 0036

Mental Illness of Family Members: _doesn't think so._

Substance Abuse of Family Members: _Some members do    other w/_
_drink, but no real problems. Has 1 brother drug_
_problem._

Physical Health Problems of Family Members: _____
_Gmom in a nursing home now. In & out of_
_hospital this year._

Legal Problems/Troubles of Family Members: _1 Brother - Child support_
                                                      _non pmt of_
_Sister for drug trafficking_     _& speeding tickets_

Unusual Stressors of Family Members: _____
_Fa wouldn't be home when Δ went to Fa's house_
_for visitation._

**Childhood Experiences:**

Sexual Abuse: _No_

Physical Abuse: _denies_
_Mo did discipline w/a belt, but not_
_abusive. Mo did slap but he didn't_
_feel it was inappropriate._

Emotional Abuse (Name Calling, Threats, Etc.: _____
_"You stupid" "You ain't going to be shit"_
_Mother - whenever she was mad_
_Stopped when she was 17 or 18 "cause she_
_was going back to church."_

7

CC 0037

Significant/Influential OTHERS: _He would spend time w/ △_

_Uncle James Robertson (aunt's husband from mo's side)_
_died in '85, they just found him under a_
_bridge frozen to death. Maybe got jumped._

Developmental Delays: _____

_held back in 4th grade, changed schools_
_held back in 9th grade    No special classes_

## XII. SOCIAL HISTORY:

Significant Relationships (Duration of Relationship(s) and Age of
   Participants): _____

_Only one serious relationship was w/ Shatunda_
_Neal. Met her @ 16, she was 15. It lasted_
_until Jan of 94. He said they broke up because_
_he came to jail & just let it go._

Quality of Relationships (Physical Violence, Emotional Abuse--by
   Defendant or Significant Others):

_No physical abuse. Admits that they argued_
_periodically. He said when he moved to_
_Bond Hill (fa's) she said he drank too much &_
Number of Children: _∅    didn't see eachother enough_

Children Creating Stress (Substance Abuse, School Problems, Etc.):

_____

Number of Abortions: _∅_

Number of Miscarriages: _∅_

Sexual Dysfunction: _____

_____

_____

## XIII. MILITARY HISTORY:

Drafted vs. Enlisted: _none_

Discharge Status: _____

_____

8

CC 0038

Combat Duty (Description of Experience): _____

*none*

_____

_____

Disciplinary Problems (Busted in Rank, Locked Up, AWOL, Reason):

*none — Not in Service*

## XIV. SCHOOL HISTORY:

Highest Grade Obtained: *11th/GED*       Held Back: *4th & 9th*

Grade Average: *H.S. D's & F's*       Special Classes: *no*
(Why/When?) *In Elem & Jr H got C's*
*Started drinking & hanging w/wrong crowd.*

If Dropped Out Before Graduation, Reason: _____
*Would go & leave Woodward, kept getting caught*
*truant. Dropped out unofficially.*

Parents' Reactions to Quitting School: _____
*Upset, but didn't say anything.*
*They said he was 18 & had to be responsible*
*for self.*

Medications Used to Assist Learning: _____
*no.*

_____

Attendance: *didn't miss until H.S. Then*
*rarely attended.*

School Year/Age Defendant Began Skipping School: *Started in 9th-*
*10th. First time 9th w/a girl. Skipped more*
*often in 10th.*

Discipline Problem in School? *Suspended for fighting w/boys from neigh*
*Expelled in 10th grade & 11th.*
*School Bus w/brass knuckles / 2nd time for too*
*much trouble.*
*3rd time didn't get expelled - w/drew.*

CC 0039

Defendant's History of Substance Use and Abuse:

Age of First Use: _in '89_          Substance Used: _Weed & Beer_

With Whom: _Because "the ppl I was hanging w"_

Substance/Drug of Choice: _____

Other's Expressed Concern(s)/Complaint(s): _____

_Mom, Shatunda in 93 said he "drunk too much"_

_"Not till maybe 91, mother told me not to drink."_

Longest Period of Sobriety: _never tried to quit_ When: _____

Number of Attempts at Sobriety: _____

Any Use of the Following:     _drug of choice MJ_

| Substance | Since When | How Often | Last Use |
|---|---|---|---|
| Hallucinogens | Ø | | |
| Marijuana | '89 | 3x/wk $350/wk on MJ | Jan 94 _day of arrest & day of crime_ |
| Cocaine | Ø | | |
| Heroin | Ø | | |
| Inhalants | Ø | | |
| Cough Medicines | Ø | | |
| Uppers | Ø | | |
| Downers | Ø | | |
| Painkillers | Ø | | |
| Alcohol | '89 | 3x/wk w/MJ | _drinking day of crimes_ |
| Other (Specify) | Ø | | |

Symptomatology (Check any Symptoms That Have Occurred):   _just a few blackout_

+ = yes      O = no

| | |
|---|---|
| O Withdrawal History | |
| O Hallucinations | |
| Use as Medication | |
| + Personality Change | ↑ |
| + A.M. Use | |
| + Financial Problems | |
| O Hide Use  + from Mom | |
| O Injection/Freebase | |
| O Injury Related to Use | |

| + Anxiety/Depression |
| + Job/School Problems |
| + Loss of Control |
| + Increase Tolerance |
| + Solitary Use _rarely_ |
| O Switch Substances |
| O Family History |
| + Attempts at Control |
| O Medical Contraindication |

| O Suicide Attempts |
| O Drop in Tolerance |
| + Blackouts 1st in 92,93 |
| O Guilt About Use |
| + Binge Use |
| O Change in Libido |
| O Preoccupation |
| + Marital Problems |

_as time went on he said he started drinking & smoking to get his mind off his problems_

_tried to quit/cut back on both in 93 because he was trying to get into Job Corps._

CC 0040