decisions. These constitutional guarantees require that the aggravating circumstances must more than merely "outweigh" the mitigating factors to result in imposition of the death penalty. The use of the terms "outweigh" preserves reliance on the lesser standard of proof by a preponderance of the evidence. The statute requires only that the sentencing body be convinced beyond a reasonable doubt that the aggravating circumstances were marginally greater than the mitigating factors. In that instance, any perceived marginal difference in weight between aggravating circumstances and mitigating factors would result in execution. Such a sentencing scheme is unconstitutional because it creates an unacceptable risk of arbitrary or capricious sentencing. As the Ohio provisions on the part of the trier of fact and the death penalty is mandatory once the criteria are established, it is particularly important that the scales not be more heavily skewed toward death.

Additional problems exist as the mitigating circumstances are vague. The jury must be given "specific and detailed guidance" and be provided with "clear and objective standards" of their sentencing discretion, to be adequately channeled according to Gregg and Godfrey vs. Georgia (1980), 446 U.S. 420. Without such guidance, a pattern of arbitrary and capricious sentencing like that found unconstitutional in Furman, supra, could occur. The mitigating circumstances stated in R.C. 2929.04(B) are so vague in

13

003471

terminology that there is a "substantial risk that sentencing authorities will inflict the death penalty in an arbitrary and diversified manner." State vs. White (Del. S. Ct. 1978), 395 A. 2d 1082, 1091.

    D.    R.C. 2929.022, 2929.03 AND 2929.04 AND CRIM. R. 11(C)(3) PLACE AN UNCONSTITUTIONAL BURDEN ON THE ACCUSED'S RIGHT TO A JURY TRIAL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNTIED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION AND HIS RIGHTS TO BE FREE FROM COMPULSORY SELF-INCRIMINATION UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION.

Under the Ohio death penalty statutory framework, an accused indicted under the statute has two initial choices; to go to trial or to plead guilty. This statute, however, needlessly and unconstitutionally encourages guilty pleas. If there is a close issue of whether an attempted murder was committed, or a killing was purposeful, an accused may choose to demand a trial by jury. If an accused pursues this defense at the trial and loses, i.e., is found guilty of the offense and specifications, he is put in a precarious position. At the sentencing hearing he may suffer a loss of credibility due to the posture taken at the trial, and furthermore he may face a hostile and biased jury, if the jury is also death-qualified. Against this backdrop the accused will have to submit mitigating facts in order to save his own life.

These choices are the result of an unconstitutional burden being placed by the Ohio death penalty statute on the defendant's

Federal and Ohio Constitutional right to trial by jury and his right against compelled self-incrimination. In United States vs. Jackson (1968), 390 U.S. 570, the United States Supreme Court declared unconstitutional a statute which, it held, unnecessarily and needlessly encouraged guilty pleas. In that case the pertinent statute provided that an accused indicted under the death penalty statute could be sentenced to death by a jury, but only to a mandatory life sentence by a judge if the accused pleaded guilty to the charge. The Court found that statute to be unconstitutional because it needlessly encouraged the accused to waive his right to trial by jury and his privilege against self-incrimination by pleading guilty in order to escape the risk of death.

Similarly, the Ohio death penalty statute operates in much the same manner, i.e., a guilty plea greatly increases the accused's chance to demonstrate mitigating facts and thus save his own life. The constitutional problem in the Jackson case is not confined to the situation where the accused can absolutely escape the possibility of death by waiving his Constitutional rights, contrary to the Ohio Supreme Court's attempt at distinction in State vs. Buell (1986), 22 Ohio St. 2d 124. The United States Supreme Court has expressly avoided the conclusion that the Jackson rationale is confined to such a situation. Corbitt vs. New Jersey (1973), 439 U.S. 212, 217. See, also, Lockett vs. Ohio (1978), 438 U.S. 586, 617-619 (Blackmun, J., concurring). Therefore, this Court's

003473

scrutiny of this problem should focus on the necessity in Ohio of placing the accused in a position that encourages him to waive his constitutional rights.

Needless pressure is also placed on the accused to plead guilty as a result of Crim. R. 11(C)(3). R.C. 2929.02 was amended in 1978 to provide that whoever "pleads guilty to, or pleads no contest and is found guilty of aggravated murder" shall be sentenced in accordance with the new law, as are those convicted after trial. This was apparently an attempt to answer the concerns expressed by Justice Blackmun, concurring in <u>Lockett vs. Ohio, supra,</u> at 619, regarding the "disparity" between a defendant's sentencing prospects when pleading guilty or when proceeding to trial. See Note, The Death Penalty and Guilty Pleas Ohio Rule 11(C)(3)--A Constitutional Dilemma (1978), 5 Ohio North. L. Rev. 687. However, the disparity Justice Blackmun spoke of was occasioned by Crim. R. 11(C)(3), which is still in effect, and still needlessly encourages guilty pleas.

Under Crim. R. 11(C)(3), "if the (aggravated murder) indictment contains one or more specifications, and a plea of guilty or no contest to the charge is accepted, the court may dismiss the specifications and impose sentence accordingly, "<u>in the interests of justice</u>." (Emphasis added.)

Although Ohio's present sentencing statute is not quite as harsh as the previous law (in that greater consideration is given

16

003474

to mitigating factors), after a trial the sentencing judge or judges are not given unbridled discretion to simply disregard the aggravating factors "in the interest of justice." On its face, R.C. 2929.04(D)(2) compels the jury and judges to consider aggravating circumstances, and to balance them when imposing a sentence. They are required to impose the death sentence if the aggravating factors outweigh those presented in mitigation. Thus if an accused has doubtful or no mitigating circumstances, he is strongly encouraged to plead guilty and to waive all of his constitutional rights at the trial with the hope of evading death through an injected discretionary capital sentencing decision.

The issue of whether this provision creates an impermissible burden on the accused's exercise of his right to plead not guilty was not addressed by the Court majority in Lockett since the death sentence was reversed on other grounds. Lockett, supra, at 608, fn. 16. Justice Blackmun, however, would have reversed the sentence because, "*** a defendant can plead not guilty only by enduring a semi-mandatory, rather than a purely discretionary, capital sentencing provision." Id. at 619. The Ohio Supreme Court has rejected the alleged constitutional violation. See State vs. Weind (1977), 50 Ohio St. 2d 224; State vs Jackson (1977), 50 Ohio St. 2d 253; and State vs. Nabozny (1978), 54 Ohio St. 2d 195.

In State vs. Zuern (1987), 32 Ohio St. 3d 56, 65, the court returned to this precedent and again failed to provide any guidance

17

to lower courts which would limit the discretion under Rule 11(C)(3) and correct this encouragement to plead guilty. Further, the Ohio Supreme Court's present practice of considering only other death-sentence imposed cases in its proportionality review means that instances of dismissals of the specifications will not be reviewed or considered in the future. This maintains the totally unchecked discretion of the trial courts under Crim. R. 11 (C)(3).

Further, the Ohio Supreme Court's view in Buell and Zuern that the issue is not raised unless a "plea is offered or accepted" is improperly narrow, as a corollary impact of Rule 11(C)(3) is to create an unchecked arbitrariness in the State's death penalty statutory scheme.

This practice has not yet been addressed by the federal courts, and has not been rectified by Ohio decisions.

As the present statutes and rules create an unnecessary encouragement to waive State and Federal Constitutional rights, this renders the Ohio capital sentencing scheme unconstitutional.

    E.    R.C. 2929.03 FAILS TO PROVIDE A MEANINGFUL BASIS FOR DISTINGUISHING BETWEEN LIFE AND DEATH SENTENCES, AS IT DOES NOT EXPLICITLY REQUIRE THE JURY, WHEN IT RECOMMENDS LIFE IMPRISONMENT, TO SPECIFY THE MITIGATING FACTORS FOUND, OR TO IDENTIFY ITS REASONS FOR SUCH SENTENCE. THIS DENIES THE ACCUSED HIS RIGHTS UNDER R.C. 2929.03(A), THE OHIO CONSTITUTION AND THE FEDERAL CONSTITUTION.

The Courts of Appeal and the Ohio Supreme Court are constitutionally and statutorily required, pursuant to Section 9

003476

and 16, Article I, Ohio Constitution, and to R.C. 2929.05(A), to determine whether a particular sentence of death is excessive or disproportionate to that imposed in similar cases. Although the United States Supreme Court has declined to require proportionality review in all case, Pulley vs. Harris (1984), 456 U.S. 37, it continues to recognize that proportionality review "serves as a check against the random or arbitrary imposition of the death penalty." Gregg vs. Georgia (1976), 428 U.S. 153.

While Ohio's capital sentencing provisions require collection of certain data relating to capital cases to facilitate this review, i.e., the entire records of cases in which the death penalty is imposed, R.C. 2929.03(G); and information as to each capital indictment, disposition (by plea, dismissal, or trial) and sentence imposed, R.C. 2929.021, there is a fundamental omission in the collection scheme. This flaw arises from the failure to require the jury when recommending life imprisonment to identify the mitigating factors found to exist, and why these outweigh the aggravating factors.

Information as to cases in which life imprisonment was imposed after a capital sentencing hearing is essential for the reviewing courts to carry out their responsibility of assuring that excessive, disproportionate sentences of death are not imposed. Baldus, Pulaski, Woodworth, and Kyle, Identifying Comparatively Excessive Sentences of Death: A Quantitative Approach (1980), 33

003477

Stan. L. Rev. 1, 7, fn. 15; Woodson, supra, at 316 (Rehnquist, J., dissenting); McCaskill vs. State (Fla. 1977), 344 So. 2d 1276, 1280. The majority of states follow the practice of comparing cases in which life sentences were imposed. Van Duizend, Comparative Proportionality Review in Death Sentence Cases. What Why?, State Court Journal (1984), Vol. 8, No. 3, at fn. 26 (pub. draft).

However, as the jury's recommendation of life is binding, and no opinion is required to be prepared by the jurors setting forth the mitigating factors found and the reasons why one outweighed the other, there is no means in Ohio to accurately compare a case in which a binding jury's life recommendation was made to that in which a death sentence was imposed.

While a finding of aggravation is necessarily made and specified by the jury in the guilt phase, this finding cannot substitute for the life recommendation of the jury as it cannot serve to distinguish among death-eligible defendants or explain why some of them are sentenced to death while others are not.

In Eddings vs. Oklahoma (182), 455 U.S. 104, 111, 112, the Court stated that the Constitution mandated both "measured, consistent application (of the death penalty) and fairness to the Accused," and again that "capital punishment (must) be imposed fairly, and with reasonable consistency, or not at all." (Emphasis added.) These aims of consistency and fairness cannot be achieved

within the present Ohio capital sentencing scheme. Without requiring the jury to identify and specify its reasons, arbitrary and capricious decisions are masked by jury secrecy and the general verdict of a binding life recommendation.

F.   R.C. 2929.021, 2929.03 AND 2929.05 FAIL TO ASSURE ADEQUATE APPELLATE ANALYSIS OF ARBITRARINESS, EXCESSIVENESS AND DISPROPORTIONALITY OF DEATH SENTENCES AND THE OHIO SUPREME COURT FAILS TO ENGAGE IN A LEVEL OF ANALYSIS THAT ENSURES AGAINST ARBITRARY DEATH SENTENCING.

    1.   R.C. 2929.021, 2929.03 and 2929.05 are Inadequate to Ensure Non-Arbitrary and Non-Excessive Sentences.

R.C. 2929.021, 2929.03 and 2929.05 require the reporting of some data to the courts of appeals and the Ohio Supreme Court, although, as discussed above, there is the critical omission of a written life recommendation report from the jury. There is substantial doubt about the adequacy of the information received on guilty pleas to lesser offenses or after charge reductions at trial under the statute. R.C. 2929.021 requires the reporting of only minimal information on these case, and the defense respectfully contends that additional data is necessary to make an adequate comparison in these cases.

R.C. 2929.021 in incomplete in the required tracking aspects because:

    (1)   The statute does not explicitly require the employment of resources (personnel, data collection and retrieval systems) to adequately compile and summarize the requisite data for this comparative evaluation, and use it.
See <u>State vs. White</u> (Del., 1978), 395 A. 2d 1082, 1094-1095.

21

003479

> (2) There is no statutory requirement that the courts identify the types of cases considered the particular cases considered, or submit written findings comparing the cases.

"Adequate" or "meaningful" appellate review is a precondition to a finding that a state death penalty system is constitutional. Zant vs. Stephens (1933), 462 U.S. 862, 890; Pulley vs Harris (1984), 465 U.S. 37. The standard for review is one of careful scrutiny. Barclay vs. Florida (1983), 463 U.S. 939, 960. Review must be based on a comparison of similar cases and ultimately must focus on the character of the individual and the circumstances of the crime. Id. death sentences will be reversed where there is a significant risk of arbitrary sentencing. Zant, supra.

The statutes are unclear as to whether this information will be used by the courts, how the expected comparative evaluation is to be carried out and what documentation there will be of such evaluation, if performed.

Meaningful appellate review is undercut by the failure of the Ohio statutes to require the jury recommending life imprisonment, or the judge who gives a life sentence upon such a recommendation, to identify the mitigating factors found to exist and to state why these outweigh the aggravating circumstances: Without this information, no comparison of cases is possible since no written findings of fact exist t serve as a basis for comparison. Without this essential basis for comparison of cases, the defendant respectfully asserts that there can be no meaningful appellate review.

Ohio's death penalty statutory scheme is unconstitutional without the certainty of meaningful appellate review. A substantial risk exists that sentences of death will thus be arbitrarily and capriciously imposed. In fact, this is precisely what is occurring under this statute.

2. The Ohio Supreme Court Has Wholly Failed To Assure Against Arbitrary Death Sentences.

While the Ohio Supreme Court claims to perform an excessiveness, proportionality and arbitrariness review of the death penalty imposed in capital cases, this review is in fact quite illusory. The Court has stated that the review mandated by R.C. 2929.05 of "similar cases" is to be limited to capital convictions in the district in which the defendant is tried. This process cannot ensure against non-arbitrary sentences.

A short chronology of the court's approach to its review reveals these inadequacies. The court presently purports to consider only other death-sentence imposed cases. The court's sorting process of looking at only death-sentenced cases wholly abdicates the responsibility which the legislature entrusted to it pursuant to R.C. 2929.05. The previously discussed statutes explicitly require notice to the Ohio Supreme Court and the courts of appeals of the filing of capital indictments, the case number and the courts of appeals of the filing of capital indictments, the case number and the disposition thereof. R.C. 2929.021. The statutes further require that an opinion be filed identifying the aggravating circumstances and mitigating factors and the reasons

23

why the mitigating factors outweighed the aggravating circumstances in all cases that proceed to a sentencing hearing, at the very least those before a three-judge panel which result in the imposition of a life sentence. R.C. 2929.03(F). In fact, a judgment cannot be deemed final until this opinion is filed with the Court of Appeals and the Ohio Supreme Court. Jenkins, supra. The reasons for the legislature's mandates in these instances is patently obvious: these are the minimal tools for the reviewing courts to carry out their R.C. 2929.05 responsibilities. Indeed, the Ohio Supreme Court recognized this purpose in the first death penalty case it reviewed and then proceeded to rely on these provisions to stave off claims that Ohio's capital sentencing scheme failed to assure against arbitrary sentencing.

In its first death penalty decision, Jenkins, the Ohio Supreme Court rejected the arguments that the Ohio sentencing scheme violated the Eighth Amendment as it failed to specifically require "a jury, when recommending a sentence of life imprisonment over the imposition of the death penalty, to identify the existence of mitigating factors and why those factors outweigh the aggravating circumstances." Jenkins at 177. The Jenkins court acknowledged that "state courts traditionally compare the overall course of conduct for which a capital crime has been charged with similar courses of conduct and the penalties inflicted in comparable cases. See Gregg at 204-206, and Proffitt, at 259-260." The Jenkins court

then found that " The system currently in place in Ohio enables this court to obtain a vast quantity of information with which to effectuate proportionality review, beginning with data pertinent to all capital indictments and concluding with the sentence imposed on the defendant, whether or not a plea is entered, the indictment dismissed or a verdict is imposed by the sentencing authority. See R.C. 2929.021." Id. at 177. Due to this other information available to it, the Ohio Supreme Court rejected the claim that the statutes were inadequate: "Although appellant would have this court require juries returning a life sentence to specify which mitigating factors were found to exist and why they outweigh aggravating circumstances, we conclude that such information is not an indispensable ingredient in assisting us to determine whether the imposition of a death sentence is disproportionate to sentences imposed for similarly prescribed courses of conduct." Id. at 178.

The Court therefore relies on the information it is receiving pursuant to R.C. 2929.021 to validate the statute, to demonstrate it adequately checks arbitrariness.

It is absolutely clear from cases following Jenkins that this avowed necessary check has been totally ignored.

In Jenkins the Ohio Supreme Court stated that nothing could be discovered in the cases cited by appellant which would establish that his sentence was "arbitrary". Id. at 210. Jenkins also stands for the proposition that R.C. 2929.05 does not require a

comparison of death sentences with sentences imposed in non-capital murder cases. Id. at 209. A review of the subsequent cases revels that the court also does not compare death sentences with life sentences handed down in capital murder cases, or even the life sentences imposed on co-=defendants in separate jury trials.

In State vs. Maurer (1984), 15 Ohio St. 3d 239, 246-247, no comparison of cases was undertaken at all. Further, the trial court wholly neglected to justify the imposition of the death sentence. The Supreme Court allowed the appellate court to provide the rationale for the death sentence even though R.C. 2929.05 expressly requires the trial court to explain the death sentence.

Later cases reveal what Jenkins foreshadowed; that when a review of proportionality is conducted, it will only be conducted among cases in which the death sentence was imposed. Life sentences handed down in death cases are excluded. See State vs. Rogers (1985), 17 Ohio St. 3d 174, 187, and State vs. Mapes (1985), 19 Ohio St. 3d 108, 118-119. Rogers also held that the appellate courts need only consider death verdicts within their own geographical boundaries. 17 Ohio St. 3d at 186.

In State vs. Martin (1985), 19 Ohio St. 3d 122, the Court developed an expedited procedure for the proportionality review in certain cases holding that, "In view of the lack of mitigating factors in this case, the death sentence imposed in this case is not disproportionate to similar sentences imposed ***", 19 Ohio St.

3d at 133. Thus, in a case where no mitigation is presented, the sentence is automatically proportionate because death sentences have been affirmed in cases with mitigation. There is thus no consideration of the significance of the aggravating circumstances or their worthiness to call for a death sentence. See <u>Barclay vs. Florida, supra,</u> at 964 (Stevens, J., with Powell, J., concurring in judgment); <u>Smith vs. North Carolina</u> (1982), 459 U.S. 1056 (Stevens, J., dissenting from denial of certiorari).

In <u>State vs. Williams</u> (1986), 23 Ohio St. 3d 16, the court developed an interesting counterpoint to <u>Martin</u>. The Court engaged in no independent proportionality review. Rather, it dealt with appellant's argument that his sentence was disproportionate because other capitally-charged defendants with only one aggravating circumstance had received life. The court dismissed the argument noting that the United States Supreme Court has not held that, "*** the number of aggravating circumstances is the only factor permitted to be considered in a decision of whether to impose a death sentence." <u>Id.</u> at 25. Of course, little guidance is provided by the court as to what is to be considered.

<u>State vs. Buell</u> appears to be a standard approach:

> Additionally, we find the sentence of death to be appropriate as it is neither excessive nor disproportionate to the penalty imposed in similar cases.

22 Ohio St. 3d at 144. No mention is made of which "similar cases" were used in the comparison, nor is there exposition as to why this particular case warrants similar treatment. Moreover, in <u>State vs.</u>

27

Brooks (1986), 25 Ohio St. 3d 144, the court held the death sentence was appropriate "*** when compared to the other cases in Ohio where the death penalty has been imposed."

In the latest Ohio Supreme Court decisions, a similar pattern is followed: only other death sentences will be considered. State vs. Zuern (1987), 32 Ohio St. 3d 56, 64-65; State vs. Steffen (1987), 31 Ohio St. 3d 111, syllabus one; State vs. Stumpf (1987), 32 Ohio St. 3d 95, 107. The court now disavows any ability to ensure equal treatment of all capital defendants, Zuern at 64. While it acknowledges "The purpose of a proportionality review is therefore to insure that the death penalty is not imposed in a random, freakish, arbitrary, or capricious manner" id., the court's present review provides no means of achieving this.

The court claims "Ohio's system well documents why particular murderers receive the death sentence, which has removed the vestiges of arbitrariness." Zuern at 65. However, that documentation, provided by collection of life sentence opinions and dispositions, is never consulted by the court. The court refuses to consider life sentence cases, even when these are presented to them by the capital defendant/appellant. See Stumpf, supra, at 106-107. The court simply states that they need not consider these, then doesn't. Id.

In fact, the Ohio Supreme Court has proven itself unwilling to undertake meaningful review of any issues in capital cases. In _

28

State vs. Poindexter (1988), 36 Ohio St. 3d 1, the court determined that it need not give any consideration to errors raised by a capital appellant. The court held that when issues of law in capital cases have been considered and decided by the court and are raised again in a subsequent capital case, the court will summarily dispose of the issues in all following cases.

In State vs. Spisak (1988), 36 Ohio St. 3d 80, the court demonstrated the extent to which it applies the Poindexter ban on review. Upon being presented with a brief containing sixty-four (64) propositions of law and exceeding four hundred ninety-four (494) pages, the court refused to review practically all of these errors and filed a four and one-half page opinion. Instead the court chastised appellant for vigorously exercising his rights to raise error on appeal. 36 Ohio St. 3d at 82, fn. 1.

In Ohio the right to meaningful appellate review has been reduced to the right of having no review at all under Poindexter and Spisak. The constitutional requirement of meaningful appellate review recognized by Zant vs. Stephens, Pulley vs. Harris and Barclay vs. Florida, supra, is flagrantly violated by the Ohio courts. Under present Ohio "review" standards, capital appellants may raise errors, but by doing so they open themselves to criticism for seeking review. The only "guarantee" under present review standards is that Ohio court can ignore the appellate errors raised. This situation is constitutionally intolerable.

003487

The Court's statement that the system "well documents" why a death sentence is imposed could not be more wrong. So far as one can discern, all these collected documents reflecting why many persons who received life sentences are lying in totally ignored files in the clerk's office. The Ohio Supreme Court has no notion of whether the death case before them represents a departure from a common practice of life sentencing on the same facts since they refuse to consider their "collected documents". The Accused agrees that the appellate courts' responsibility of arbitrariness be obliterated. But, as the Supreme Court of the United States recently stated, the Eighth Amendment is offended if there is "a significant risk of arbitrary sentencing" that is unchecked. McCleskey vs. Kemp (1987), 48 U.S. ____, 95 L. Ed. 2d 262. In McCleskey, the Court required "rationality in the system" and approved Georgia's practice of reviewing the proportionality of sentences as achieving "a reasonable level of proportionality" among the class of eligible defendant. Id. 95 L. Ed. 2d at 292, fn. 36. Georgia reviews life sentences, and actively compares life and death sentences. Zant, supra, at 879, fn. 19.

Common sense demonstrates that the Ohio Supreme Court's approach cannot adequately check arbitrariness. If the frequency of jury leniency (i.e., life sentences in a particular kind of capital case) is high, then the occasional death sentence in that kind of case, even if justified by the evidence, is aberrant and

comparatively excessive. See Baldus, Pulaski, Woodworth and Kyle, Identifying Comparatively Excessive Sentences of Death: A Quantitative Approach (1980), 33 Stan. L. Rev. 1, 16. But the Ohio Supreme Court cannot identify the aberrant death sentence, because it does not consider whether life sentences are generally imposed in this type of case. The oft-quoted saying that "justice is blind" has been turned on its head by the Ohio Supreme Court. This type of blind justice, with claims of documentation while maintaining a willful blindness and conscious ignorance as to why persons receive life or death sentences in this state, creates a constitutionally intolerable risk of arbitrary sentencing.

Even when the Ohio Supreme Court does undertake some actual comparison of other death sentence cases, it is a totally one-sided analysis. The court's discussion in Stumpf is its best effort at comparative review, but even so, it is almost exclusively an evaluation of the aggravating circumstances, or at most, the nature and circumstances of the offense. Stump, supra, at 107-108. The Court simply ignores the mitigation side of the equation. When the Supreme Court of Ohio conducts a proportionality review, the automatic response is, "we have previously upheld the death penalty in a case where the same aggravating factor or type of offense had occurred." Id. and see Zuern at 65; State vs. Morales (1987), 33 Ohio St. 3d 252, 262; State vs. Poindexter, supra, at 8; State vs. Spisak, supra, at 84. The court doesn't inquire whether in other

003489

cases mitigation of a similar type has resulted in a life sentence. Those life and death sentence opinions could conceivably reflect that more than ninety-five percent of the cases with those aggravating circumstances and mitigating factors result in life sentences, but the Ohio Supreme Court's failure and refusal to consider this information and its consideration of only one half of the equation always arbitrarily leads to an affirmation of the death sentence.

Blind reliance on the presence of an aggravating circumstance cannot adequately assure against arbitrariness. Aggravating circumstances only make one capitally eligible. It is up to the court to ensure that the sentencing among those who are capitally eligible is done without a significant risk of arbitrary results. That requires examination of both sides of the equation, aggravation and mitigation.

It is not unreasonable to expect some consideration of life sentences. This check against arbitrariness is regularly followed in other states. See, e.g., Herzog vs. State (Fla. 1983), 439 So. 2d 1372; State vs. Williams (N.C. 1983), 301 S.E. 2d 335; Zant, supra.

In short, no rationale supports the Ohio Supreme Court's present approach. It is contrary to the legislative intent. The statutes read as a whole in pari materia make it very clear that the courts are at least to consider life sentence cases. Why else

003490