(To be used where 2929.04(A)(7) charged:)

L. THE AGGRAVATING CIRCUMSTANCE THE ACCUSED IS CHARGED WITH COMMITTING, R.C. 2929.04(A)(7), IS CONSTITUTIONALLY INVALID WHEN USED TO AGGRAVATE R.C. 2903.01(B) AGGRAVATED MURDER.

1. Basing a death sentence on R.C. 2929.04(A)(7) and R.C. 2903.01(B) would deny the accused due process and would result in cruel and unusual punishment.

The United States Supreme Court warned that "to avoid (the) constitutional flaw of (vagueness and overbreadth under the Eighth Amendment), an aggravating circumstance must genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence of a defendant as compared to others found guilty of (aggravated) murder." Zant vs. Stephens (1983), 462 U.S. 862, 877.

Ohio's statutory scheme fails to meet this constitutional requirement because the aggravating circumstance under R.C. 2929.04(A)(7) fails to genuinely narrow the class of individuals eligible for the death penalty.

R.C. 2903.01(B) defines the category of felony-murderers as anyone who:

> *** purposely cause(s) the death of another while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit kidnapping, rape, aggravated arson or arson, aggravated robbery or robbery, aggravated burglary or burglary, or escape.

If any one of the aggravating factors listed in R.C. 2929.04(A) is specified in the indictment and proved beyond a

53

reasonable doubt, the accused becomes eligible for the death penalty. R.C. 2929.02(A) and 2929.03.

What makes this scheme unconstitutional is the fact that the R.C. 2929.04(A)(7) aggravating circumstance merely repeats as an aggravating circumstance the factors that distinguish aggravated felony-murder from murder. Proof of the R.C. 2929.04(A)(7) circumstance here fails to reasonably justify the imposition of a more severe sentence on LEE MOORE compared to others found guilty of aggravated murder. R.C. 2929.04(A((7) does not reasonably justify the imposition of a more severe sentence on felony-murderers as compared to other aggravated murderers. The aggravating circumstance must therefore fail. <u>Zant</u> at 877. The aggravating circumstance of R.C. 2929.04(A)(7) merely repeats the definition of felony-murder as alleged to have been committed which automatically qualifies the defendant for the death penalty. As a result, the prosecuting attorney and the sentencing body is given an unbounded discretion that maximizes the risk of arbitrary and capricious action and deprivation of a defendant's life without substantial justification.

As compared to other aggravated murderers, the felony-murderer is treated more severely. The person who purposely kills with prior calculation and design is not automatically subjected to the death penalty. He will receive a sentence of life imprisonment with parole eligibility after serving twenty years of imprisonment--if he is on good behavior in prison, he may be paroled after

approximately sixteen (16) years. R.C. 2903.01(A), R.C. 2967.19(B). This is the maximum sentence he can receive, unless the prosecution can find and prove some evidence of additional facts beyond the fact that he killed; facts of the type described in R.C. 2929.04(A). Each R.C. 2929.04(A) circumstance, when used in connection with R.C. 2903.01(A), adds an additional measure of culpability to this offender such that society at least arguably should be permitted to punish him more severely with death.

But the aggravated murder defendant who is alleged to have actually killed another during the course of an enumerated felony pursuant to R.C. 2903.01(B), is automatically eligible for the death penalty--not a single additional proof of fact is necessary. If both of these persons who kill are aggravated murderers, it makes no sense to accord one an ostensible opportunity for release after sixteen years, and to give the other death or imprisonment for at least twenty to thirty years, merely because one commits aggravated murder under R.C. 2903.01(B) rather than 2903.01(A).

To treat the killer who acts with prior calculation and design less severely is also nonsensical because his blameworthiness or moral guilt is clearly higher, and the argued ability to deter him lesser. From a retributive stance this is the most culpable of mental states, as shown by history, overall legislative action, and jury behavior (juries express reticence against the death penalty in felony-murder prosecutions even when the felon is the actual

003513

killer). Comment, The Constitutionality of Imposing the Death Penalty for Felony Murder (1978), 15 Hous. L. Rev. 356, 375.

To treat the prior calculation and design killer to an easier punishment is an irrational exercise of legislative authority. The classification created by R.C. 2929.01(A)(7) must fail.

> 2. R.C. 2929.04(A)(7) is unconstitutional as it delegates harsher punishment to the felony murderer that the punishment imposed on a premeditation murderer who kills.

Equal protection of the law requires that legislative classifications be supported by, at least, a reasonable relationship to legitimate State interest. Skinner vs. Oklahoma (1941), 316 U.S. 535. Given that the State is attempting to take life, the most precious right of all, compelling State interest is necessary to sustain legislative classifications in capital sentencing statutes. The State has arbitrarily selected one class of murderers who may be subjected to the death penalty. This statutory scheme is inconsistent with the purported State interests. The most brutal, cold-blooded and premeditated murderers do not fall within the types of murder that are eligible for the death penalty. Surely, if deterrence is a State objective, then this type of killing would be a prime target for the imposition of the death penalty. Yet, this type of aggravated murderer is excluded from the group that is subject to the death penalty. There is no rational basis or any State interest for this distinction, and its application is arbitrary and capricious.

003514

    M.    R.C. 2929.03, 2929.04 AND 2929.05 VIOLATE THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 9 AND 16, ARTICLE I OF THE OHIO CONSTITUTION BY FAILING TO PROPERLY ALLOCATE THE BURDEN OF PROOF DURING MITIGATION PHASE OF TRIAL.

### 1. OHIO BURDEN OF PROOF ON MITIGATION

R.C. 2929.03(D)(1) of the Ohio Revised Code provides that the accused has the burden of going forward with the evidence in mitigation. The statute fails to allocate the burden of proof as to the existence of mitigating factors. This leaves the jury with no guidance. Arbitrary decisions will result from the vague scheme that now exists.

### 2. BEYOND A REASONABLE DOUBT STANDARD

The State of Ohio should have the burden of proving the absence of mitigating factors beyond a reasonable doubt because it will prevent arbitrary decisions in close cases. The accused cannot be obliged to bear the burden of proving the existence of mitigating factors. If the defense is so obligated, then in all close cases, where aggravation and mitigation ar equally balanced, the jury would be required to recommend death. This statute must not be interpreted in a manner which allows the State to "win ties." This would be contrary to the requirements of the Constitution insofar as it mandates respect for humanity and the greater need for reliability as to the appropriateness of the death penalty. See *Woodson vs. North Carolina, supra* at 305; *Lockett, supra,* at 604; and *Mullaney vs. Wilbur* (1975), 421 U.S. 684, 697-701, 703-704.

57

003515

Placing the burden of proving the absence of mitigating factors on the prosecution will also prevent what has been called "state-administered suicide," Godfrey, supra, at 439.

The Supreme Court of Ohio held in State vs. Jenkins, supra, that the defense has the burden by a preponderance at mitigation. If this is an obligation of the defense, it follows logically that this right, being in the nature of an affirmative defense, is one which the client may waive. Thus under the present statutory scheme, the State may participate in aiding a capitally-charged defendant's suicide, where such defendants want to be executed despite the existence of mitigating factors.

There are at least two reasons why an accused may want to die. The most obvious is that death may understandably be preferable to a long prison term. Another reason is that the murderer may truly feel that death is what he deserves for the crime he committed. Death is not necessarily the proper penalty in either case, however. If death is preferable to the conviction murderer, then clearly the death penalty fails as a deterrent. If the defendant feels he deserves to die for what he has done, then hie is repenting and could probably be rehabilitated. IN any case, society's decision to issue its most extreme sanction is not a decision to be based in any part upon a criminal defendant's desires. If it is to exist at all, then the penalty must be based upon external, objectively assessable factors.

003516

R.C. 2929.03(D)(1) puts the burden of going forward with evidence of mitigating factors on the accused. A particular defendant may have many items of mitigation in his favor. But if he declines to raise them, the death penalty is mandatory. The sentencing authority has no choice: it must weigh the aggravating circumstance(s) (already established) against the absence of mitigation. Thus, two men with the same background can commit the same murder and be sentenced to grossly different penalties, merely because one has the will to live and the other does not. A sentencing scheme which allows this result operates arbitrarily and capriciously in violation of the Equal Protection and Due Process Clauses. See Greenberg, Capital Punishment As A System (1982), 91 Yale L. J. 908. In *Lenhard vs. Wolff* (1974), 444 U.S. 807, the defendant was allowed to stand mute in mitigation despite the readiness of standby counsel to go forward. Justice Marshall (dissenting) pointed out that:

> We can have no assurance that the death sentence would have been imposed if the sentencing tribunal had engaged in the careful weighing process that was held to be constitutionally required in *Gregg vs. Georgia* and its progeny. This Court's toleration of the death penalty has depended on its assumption that the penalty will be imposed only after painstaking review of aggravating and mitigating factors. In this case, that assumption has proved demonstrably false. Instead, the Court has permitted the state's mechanism of execution to be triggered by an entirely arbitrary factor: the defendant's decision to acquiesce in his own death. In my view, the procedure the Court approves today amounts to nothing less than state-administered suicide ***. (Emphasis added.)

59

003517

Lenhard, supra, at 815.  See, also, Gilmore vs. Utah (1976), 429 U.S. 1012.

Justice Stevens, in his concurring opinion in Barclay vs. Florida, 462, U.S. at 961, fn. 2, maintained that both Lockett vs Ohio and Eddings vs. Oklahoma condemn any procedure in which evidence of mitigation has no weight at all. Yet, this is the effect of the Ohio statute under the suicide fact pattern. The statutory procedure does not compel introduction of mitigating evidence. Making mitigation mandatory and properly allocating the burden of proof would address these concerns. In the absence of this requirement, the statutory system is unconstitutional.

## CONCLUSION

For the foregoing reasons, Defendant, by and through counsel, respectfully moves this Court for an order dismissing that portion of the aggravate murder indictment which elevates the potential penalty from life imprisonment to death. In its present form, the Ohio statutory death penalty system violates the Defendant's rights to due process, fair trial, equal protection, fair and impartial jury, effective assistance of counsel, and against cruel and unusual punishment.

While the Ohio Supreme Court has ruled on the constitutionality of the Ohio Death Penalty Statutes, the statutory scheme has yet to be reviewed by any federal court and based upon federal

003518

precedent. Further, independent State constitutional grounds are raised herein that have never been passed upon by any State Court.

_____
Daniel J. James  #0008067
30 E. Central Parkway
1300 American Building
Cincinnati, Ohio  45202
(513) 721-1995

and

_____
Timothy J. Deardorff  #0006308
2368 Victory Parkway
Suite 300
Cincinnati, Ohio  45206
(513) 872-7900

Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion To Dismiss Indictment was hand delivered to the Office of the Hamilton County Prosecutor, 4th floor of the Hamilton County Courthouse, this 27th day of May, 1994.

_____
Daniel J. James  #0008067
Attorney for Defendant

61

## MEMORANDUM

The procedure which is the subject of this motion has previously been followed in a number of cases in Hamilton County, to-wit: <u>State vs. Lawhorn</u>, B851343; <u>State vs. Coleman</u>, B840550; and <u>State vs. Mughni</u>, B843643.

This procedure insures that questions asked of prospective jurors and answers given will not prejudice or influence other members of the panel. It is submitted that a prospective juror would feel much more comfortable answering a number of somewhat personal questions if the other members of the panel were not present.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion was delivered to the office of the Hamilton County Prosecutor, 4th floor of the Hamilton County Courthouse, this 27th day of May, 1994.

_____
Daniel J. James  #0008067
Attorney for Defendant

and

_____
Timothy J. Deardorff  #0006308
Attorney for Defendant

003520