## VERDICT

If you find that the State proved beyond a reasonable doubt all the essential elements of the lesser included offense of involuntary manslaughter while committing a felony in Count No. Two, your verdict must be guilty.

If you find that the State failed to prove beyond a reasonable doubt any one of the essential elements of the lesser included offense of involuntary manslaughter while committing a felony in Count No. Two, then your verdict must be not guilty.

## LESSER OFFENSE

If the evidence warrants it, you may find the defendant guilty of a crime lesser than that charged in the indictment; however notwithstanding this right - - it is your duty to accept the law as given to you by the Court, and if the facts and the law warrant a conviction of the crime charged in the indictment, then it is your duty to make such finding uninfluenced by your power to find a lesser offense.

## SPECIFICATIONS OF AGGRAVATING CIRCUMSTANCES

If you find the defendant guilty of Aggravated Murder in Count No. Two, you will continue your deliberations and determine whether the State proved beyond a reasonable doubt that the defendant was guilty of any specifications of Aggravated Circumstances.

-23-

If you find the defendant not guilty of Aggravated Murder in Count No. Two, you will not consider or decide any additional questions.

The specifications of aggravating circumstances set forth in Count No. Two of the indictment constitute a separate and distinct matter.

You must consider each specification and the evidence applicable to each specification separately and must state your finding as to each specification uninfluenced by your decisions as to any other specification. The defendant may be found guilty or not guilty of any one or all of the specifications.

Your decision on each specification will be expressed by a finding of guilty or not guilty as to that separate specification. Guilt on these additional questions must be proved beyond a reasonable doubt.

### SPECIFICATION NO. ONE TO COUNT NO. TWO

(For the purpose of escaping detection or apprehension or trial or punishment for another crime committed by the defendant).

The defendant, Lee Moore, is charged in Specification No. One to Count No. Two with committing the offense of Aggravated Murder in Count No. Two for the purpose of escaping detection or apprehension or trial or punishment for another crime committed by him, to wit: Kidnapping.

I have previously defined Aggravated Murder, Kidnapping and Purpose.

If you find that the State proved beyond a reasonable doubt all the

-24-

008176

essential elements of the aggravated circumstance contained in Specification No. One to Count No. Two, your finding must be guilty as to Specification No. One to Count No. Two.

However, if you find that the State failed to prove any one of the essential elements of the aggravating circumstance contained in Specification No. One to Count No. Two, your finding must be not guilty as to Specification No. One to Count No. Two.

### SPECIFICATION NO. TWO TO COUNT NO. TWO

(Aggravated Murder During Specific Felony)

The defendant, Lee Moore, is charged in Specification No. Two to Count No. Two with committing the Aggravated Murder of Melvin Olinger in Count No. Two, while the said Lee Moore was committing, attempting to commit, or fleeing immediately after committing or attempting to commit the offense of Kidnapping, and the defendant, Lee Moore, was the principal offender in the commission of the Aggravated Murder or if not the principal offender, committed the Aggravated Murder with prior calculation and design.

I have previously defined Aggravated Murder, Kidnapping, Principal Offender and Prior Calculation and Design.

If you find that the State proved beyond a reasonable doubt all the essential elements of the aggravated circumstance contained in Specification No.

-25-

003177

Two to Count No. Two, your finding must be guilty as to Specification No. Two to Count No. Two.

However, if you find that the State failed to prove any one of the essential elements of the aggravating circumstance contained in Specification No. Two to Count No. Two, your finding must be not guilty as to Specification No. Two to Count No. Two.

### SPECIFICATION NO. THREE TO COUNT NO. TWO

(Aggravated Murder During Specific Felony)

The defendant, Lee Moore, is charged in Specification No. Three to Count No. Two with committing the Aggravated Murder of Melvin Olinger in Count No. Two, while the said Lee Moore was committing, attempting to commit, or fleeing immediately after committing or attempting to commit the offense of Aggravated Robbery, and the defendant, Lee Moore, was the principal offender in the commission of the Aggravated Murder or if not the principal offender, committed the Aggravated Murder with prior calculation and design.

I have previously defined Aggravated Murder, Aggravated Robbery, Principal Offender and Prior Calculation and Design.

If you find that the State proved beyond a reasonable doubt all the essential elements of the aggravated circumstance contained in Specification No. Three to Count No. Two, your finding must be guilty as to Specification No.

-26-

Three to Count No. Two.

However, if you find that the State failed to prove any one of the essential elements of the aggravating circumstance contained in Specification No. Three to Count No. Two, your finding must be not guilty as to Specification No. Three to Count No. Two.

## SPECIFICATION NO. FOUR TO COUNT TWO

## GUN SPECIFICATION

If you find the defendant guilty of Aggravated Murder or Involuntary Manslaughter while committing a felony in Count Two, you will also be asked to consider whether the defendant had on or about his person, or under his control, a firearm while committing the offense of Aggravated Murder or Involuntary Manslaughter while committing a felony in Count No. Two.

I have previously defined firearm, on or about his person and under his control.

## COUNT THREE

## AGGRAVATED MURDER

The defendant is charged with Aggravated Murder in Count No. Three. Aggravated Murder in Count No. Three is purposely causing the death of another while committing or attempting to commit or while fleeing immediately after committing or attempting to commit the offense of Aggravated Robbery.

-27-

008479

Before you can find the defendant guilty, you must find beyond a reasonable doubt that on or about the 14th day of January, 1994, and in Hamilton County, Ohio, the defendant purposely caused the death of Melvin Olinger while committing or attempting to commit or while fleeing immediately after committing or attempting to commit the offense of Aggravated Robbery.

I have previously defined Aggravated Murder, Aggravated Robbery and while.

## VERDICT
### (LESSER INCLUDED OFFENSE)

If you find that the State proved beyond a reasonable doubt all the essential elements of the offense of Aggravated Murder in Count No. Three, your verdict must be guilty.

If, however, you find that the State failed to prove beyond a reasonable doubt any one of the essential elements of the offense of Aggravated Murder in Count No. Three, your verdict must be not guilty of Aggravated Murder in Count No. Three, and you will then proceed with your deliberations and decide whether the State has proven beyond a reasonable doubt all the elements of the lesser offense of Involuntary Manslaughter while committing a felony.

### INVOLUNTARY MANSLAUGHTER WHILE COMMITTING A FELONY

Involuntary Manslaughter is causing the death of another as a proximate

-28-

008180

result of committing or attempting to commit a felony.

Before you can find the defendant guilty, you must find beyond a reasonable doubt that on or about the 14th day of January, 1994, and in Hamilton County, Ohio, the defendant caused the death of Melvin Olinger as a proximate result of committing or attempting to commit the offense of Aggravated Robbery, a felony.

I have previously defined cause and Aggravated Robbery.

If you find beyond a reasonable doubt that the defendant committed the offense of Aggravated Robbery and that the death of Melvin Olinger was proximately caused by such unlawful act, then you will find the defendant guilty of the lesser included offense of Involuntary Manslaughter while committing a felony in Count No. Three even though the defendant had no purpose or intention of causing the death of Melvin Olinger.

## VERDICT

If you find that the State proved beyond a reasonable doubt all the essential elements of the lesser included offense of Involuntary Manslaughter while committing a felony in Count No. Three, your verdict must be guilty.

If you find that the State failed to prove beyond a reasonable doubt any one of the essential elements of the lesser included offense of Involuntary Manslaughter while committing a felony in Count No. Three, then your verdict

-29-

008481

must be not guilty.

## SPECIFICATIONS OF AGGRAVATING CIRCUMSTANCES

If you find the defendant guilty of Aggravated Murder in Count No. Three, you will continue your deliberations and determine whether the State proved beyond a reasonable doubt that the defendant was guilty of any specifications of aggravating circumstances.

If you find the defendant not guilty of Aggravated Murder in Count No. Three, you will not consider or decide any additional questions.

The specifications of aggravating circumstances set forth in Count No. Three of the indictment constitute a separate and distinct matter.

You must consider each specification and the evidence applicable to each specification separately and must state your finding as to each specification uninfluenced by your decisions as to any other specification. The defendant may be found guilty or not guilty of any one or all of the specifications.

Your decision on each specification will be expressed by a finding of guilty or not guilty as to that separate specification. Guilt on these additional questions must be proved beyond a reasonable doubt.

## SPECIFICATION NO. ONE TO COUNT NO. THREE

(For the purpose of escaping detection or apprehension or trial or punishment for another crime committed by the defendant).

-30-

The defendant, Lee Moore, is charged in Specification No. ~~Three~~ *One* to Count No. ~~One~~ *Three* with committing the offense of Aggravated Murder in Count No. Three for the purpose of escaping detection or apprehension or trial or punishment for another crime committed by him, to wit: Aggravated Robbery.

I have previously defined Aggravated Murder, Aggravated Robbery and Purpose.

If you find that the State proved beyond a reasonable doubt all the essential elements of the aggravated circumstance contained in Specification No. One to Count No. Three, your finding must be guilty as to Specification No. One to Count No. Three.

However, if you find that the State failed to prove any one of the essential elements of the aggravating circumstance contained in Specification No. One to Count No. Three, your finding must be not guilty as to Specification No. One to Count No. Three.

### SPECIFICATION NO. TWO TO COUNT NO. THREE

(Aggravated Murder During Specific Felony)

The defendant, Lee Moore, is charged in Specification No. Two to Count No. Three with committing the Aggravated Murder of Melvin Olinger in Count No. Three, while the said Lee Moore, was committing, attempting to commit, or fleeing immediately after committing or attempting to commit the offense of

-31-

008483

Aggravated Robbery, and the defendant, Lee Moore, was the principal offender in the commission of the Aggravated Murder or if not the principal offender, committed the Aggravated Murder with prior calculation and design.

I have previously defined Aggravated Murder, Aggravated Robbery, Principal Offender and Prior Calculation and Design.

If you find that the State proved beyond a reasonable doubt all the essential elements of the aggravated circumstance contained in Specification No. Two to Count No. Three, your finding must be guilty as to Specification No. Two to Count No. Three.

However, if you find that the State failed to prove any one of the essential elements of the aggravating circumstance contained in Specification No. Two to Count No. Three, your finding must be not guilty as to Specification No. Two to Count No. Three.

### SPECIFICATION NO. THREE TO COUNT NO. THREE

(Aggravated Murder During Specific Felony)

The defendant, Lee Moore, is charged in Specification No. Three to Count No. Three with committing the Aggravated Murder of Melvin Olinger in Count No. Three, while the said Lee Moore, was committing, attempting to commit, or fleeing immediately after committing or attempting to commit the offense of Kidnapping, and the defendant, Lee Moore was the principal offender in the

-32-

008484

commission of the Aggravated Murder or if not the principal offender, committed the Aggravated Murder with prior calculation and design.

I have previously defined Aggravated Murder, Kidnapping, Principal Offender and Prior Calculation and Design.

If you find that the State proved beyond a reasonable doubt all the essential elements of the aggravating circumstances contained in Specification No. Three to Count No. Three, your finding must be guilty as to Specification No. Three to Count No. Three.

However, if you find that the State failed to prove any one of the essential elements of the aggravating circumstance contained in Specification No. Three to Count No. Three, your finding must be not guilty as to Specification No. Three to Count No. Three.

<u>SPECIFICATION NO. FOUR TO COUNT THREE</u>

<u>GUN SPECIFICATION</u>

If you find the defendant guilty of Aggravated Murder or Involuntary Manslaughter while committing a felony in Count No. Three, you will also be asked to consider whether the defendant had on or about his person, or under his control, a firearm while committing the offense of Aggravated Murder or Involuntary Manslaughter while committing a felony in Count No. Three.

-33-

008485

## COUNT NO. FOUR

## AGGRAVATED ROBBERY

The defendant is charged with Aggravated Robbery. Before you can find the defendant guilty, you must find beyond a reasonable doubt that on or about the 14th day of January, 1994, and in Hamilton County, Ohio, the defendant in committing or attempting to commit a theft offense; to wit, theft of personal property, or in fleeing immediately thereafter, had on or about his person or under his control a deadly weapon; to wit, a handgun.

I have previously defined theft offense, deadly weapon and handgun.

## CONCURRENCE

The act of having the deadly weapon on or about his person or under his control, must occur as part of the sequence of acts leading up to, occurring during or immediately subsequent to the theft offense.

## VERDICT

If you find that the State proved beyond a reasonable doubt all the essential elements of the offense of Aggravated Robbery in Count No. Four, your verdict must be guilty.

If you find that the State failed to prove beyond a reasonable doubt any one of the essential elements of the offense of Aggravated Robbery in Count No. Four, then your verdict must be not guilty.

-34-

008186

## GUN SPECIFICATION TO COUNT NO. FOUR

If you find the defendant guilty of Aggravated Robbery in Count No. Four, you will also be asked to consider whether the defendant had on or about his person, or under his control, a firearm while committing the offense of Aggravated Robbery in Count No. Four.

## COUNT NO. FIVE

### KIDNAPPING

The defendant is charged in Count No. Five with Kidnapping. Before you can find the defendant guilty, you must find, beyond a reasonable doubt, that on or about the 14th day of January, 1994, and in Hamilton County, Ohio, the defendant by force, threat, or deception removed Melvin Olinger from the place where he was found or restrained Melvin Olinger of his liberty for the purpose of facilitating the commission of a felony, to wit; Aggravated Robbery or flight thereafter or for the purpose of terrorizing or inflicting serious physical harm on Melvin Olinger.

I have previously defined force or threat, removal from place where found, restrain one of liberty, deception, serious physical harm, aggravated robbery and facilitating.

### VERDICT

If you find that the State proved beyond a reasonable doubt all the

-35-

008187

essential elements of the offense of Kidnapping in Count No. Five, your verdict must be guilty.

If you find that the State failed to prove beyond a reasonable doubt any one of the essential elements of the offense of Kidnapping in Count No. 5, then your verdict must be not guilty.

### ADDITIONAL FINDING FOR KIDNAPPING

If you find the defendant guilty of Kidnapping in Count No. Five you must further determine whether Melvin Olinger was released in a safe place unharmed.

If you find the defendant not guilty of Kidnapping in Count No. Five, you need not determine this additional finding.

### GUN SPECIFICATION TO COUNT NO. FIVE

If you find the defendant guilty of Kidnapping in Count No. Five, you will also be asked to consider whether the defendant had on or about his person, or under his control, a firearm while committing the offense of Kidnapping in Count No. Five.

### VERDICT

You will have with you the following forms of verdict. No inferences are to be drawn from the order in which the Court reads the verdict.

(READ VERDICT FORMS)

-36-

008488

You will have 40 forms of verdict. You will return only 20 forms duly signed by all 12 jurors.

The question of what punishment, if any, follows a conviction in this case is of no concern of the jurors at this time. The question of punishment, then, is not to enter into your consideration or your deliberations on the guilt or innocence of the defendant.

This being a criminal case requires the concurrence of all members of the jury, so all 12 of the jurors, when they have all agreed, will sign the verdict on which they have agreed, on the blank lines indicated on the bottom. The Court will place these verdict forms in your possession, together with the exhibits.

When you go to the jury room, your first duty will be to choose a foreman or forelady, who acts just like a chairperson of a meeting. The foreman or forelady will retain possession of the verdict forms and the exhibits and return them to the courtroom. He or she sees that your deliberations are conducted in an orderly fashion, that everyone has an opportunity to participate in the discussions and deliberations; otherwise, his or her activity is the same as any other juror.

DOES COUNSEL HAVE ANYTHING TO SAY?

## CONCLUSION

Now, ladies and gentlemen, when we started this case, you all rose and

-37-

008489

raised your right hand and you took an oath and you said you would well and truly try the issues between the State of Ohio and this defendant.

I know that you will carry out that oath, that you will determine the issues solely on the basis of the law that the Court has given to you and the testimony as you heard it from the witness stand and the exhibits. I know that you will be influenced in no way by any thoughts of bias or prejudice. Your efforts must be to arrive at a just verdict. Consider all the evidence impartially. You should confer with each other in your deliberations and give careful consideration to the views expressed by each juror.

The only issues are those outlined for you in these instructions. You must determine those issues solely on the basis of the evidence you have heard here on this witness stand in light of these instructions on the law. I know you will carry out that oath.

Until your verdict is announced in open court you are not to disclose to anyone else the status of your deliberations or the nature of your verdict.

After you retire, select a foreman or forelady, and whenever all 12 -- I repeat, all 12 -- jurors agree upon a verdict, you will all 12 sign the verdict in ink and advise the bailiff by using the buzzer in the jury room. You will then be returned to the courtroom.

-38-

008490

## ALTERNATE JUROR

To the alternate juror, I now say: you were selected to serve in the event some misfortune might occur to a member of the regular jury panel. Up to this point, fortunately, it has not been necessary for you t replace a member of the regular jury panel. Now that the regular panel is about to retire and commence deliberations on the issues of guilt or innocence, you are going to be taken to a separate room where you will remain while the regular jury panel is deliberating.

While you are awaiting the decision of the regular panel, you are not to discuss this case with anyone. Before any verdicts are read in open court, you will be given an opportunity to examine the same exhibits which the regular jury panel is permitted to considered in its deliberations.

Please keep in mind that your services in this case are not yet ended and may still be required. Therefore, all of the instructions which have been given to you since the commencement of this trial up to and including those given at this time must be carefully and completely obeyed.

008191

1

Moore, Lee                               POSSIBLE areas of concern: self esteem, depression

Psychological report by Terry Schwartz, Psy.D.-- Conduct D/O -- saw him approx. every week stated that Lee would not open up to him therefore he terminated.?????

School records Mt. Healthy -- C's and D's and F's
    withdrew in January 1993 - moving into the Woodward school district
    withdrawal dated for my 1992 so Lee could work full time
    expulsion in April 1991 9th grade

Initial Meeting with friends and family

POSITIVE
High amount of Family support
Feels close to his mother
Reported regular contact with father
Had positive peer influences

NEGATIVE
Family reports child "abused" by peers on the bus
    picked on from the 5th grade on
Prior to moving in with Lee Moore Sr. - poblems in school with truancy, low grades,
    poor peer relations, oppositional to his mother
Mother reported that she could not control Lee and sent him to live with his father at the
    age of 18, mother was the promary caretaker up to the point of moving in wiht
    his father (REJECTION BY MOTHER - NO INDIVIDUATION)
Substance Abuse - both alcohol and marijuana - possibly beginning around the age of
    15 or 16
Peer group engaged in sexual acting out

CRIMINAL Hx
1) assault on the bus with a set of brass knuckles - resulted from being attacked himself
    on the bus (?)
2) Stolen auto - probation
3) Trafficking or possesion of marijuana approx. age 17

**Lee Moore, Sr., Betty, Verdena (sister), Erik, (cousin)**
    (dad could not state child's birth date, had to ask wife. could not clearly recall
    the developmental milestones, did not give detailed history of Lee as a child
    while he was with the family) ( Erik andLee used to be close)
    1. Dad received letter from Lee, (have copy)
    2. Stated that Lee began school at age of 4 or

008192

2

    a. went to a private school because Mom wanted him too
    b. both parents worked through school years, had babysitters watch Lee while they at work
    c. Lee failed either 3 or 4 grade ( dad could not remember)
    d. school was Central Baptist
    e. Lee began at Mt. Healthy around the 3 or 4 grade because he had failed that greade and mom did not want to waste the money if he were not going to pass his classes. (dad seemed to isplay indifference to this, seemed to want to subtley blame mom for the school change) Central was expensive because it was private·
    f. seemed to recall that during the 5 and 6 grade Lee seemed to do ok.

3. Mom did most of the discipline - spanking with hand and sometimes with a belt

4. reported that Lee did drugs and alcohol around tha age of 17 or 18, felt that Lee was doing some selling also (Erik) Lee sucomed to peer pressure in this area because he wanted to be accepted - LEE DID NOT KNOW HOW TO ADEQUATELY MAKE FRIENDS NOR HOW TO DEAL WITH THE ACCEPTANCE OF THE FRIENDS HE DID MAKE - SOCIALLY AWKWARD (?)

5. (Erik) Lee knew that the lifestyle that he was leading was wrong, but he did it anyway

6. (Erik and Dad) Lee did not seem to see things realistically, nor did he stop to fully consider the consequences of his actions

7. (dad) at 18 applied to Job Corps but was not accepted because of his past criminal history

8. (dad) 17 caught using drugs, unclear of the exact charge initially, could have been trafficking, however, the final charge was either possesion or use

9. (Erik and dad) Lee mood was silly when he was high

10. (dad) when Lee angry he usually slammed doors and went off in a huff

11. (Erik) Lee's behavior seemed right in line with the rest of the group he seemed to be no different nor display any other type of negative behavior

12. (group) Lee was talkative, smart, seemed to have normal cildhood

13. AROUND THE AGE OF 17 BEHAVIOR DETERIORATED -- Around this point in time Lee was jumped and this seemed to have an adverse effect on him

14. (Erik) Lee wanted money - always wanted the easy way - Lee probably never intended to use the gun - may have wanted to use the gun to scare - he probably scared and did not what to do - Lee always very panicky (nervous, jumpy) when he was scared  (WHY WAS THE GUN LOADED THEN?)

15. (Erik) Lee always saw the worst or negative side of things, never saw that there was positive ways out or that there was help available

16. Lee has been robbed - jumped X2 - one time a gun wa held to his head and they threatened to kill him (was the last incident - Lee 19) took his gold chain, shoes and hooded sweatshirt - THE SAME THINGS THAT LEE PURCHASED WITH THE

008493

3

CREDIT CARDS!!

    17. (Erik) Mt. healthy friends were the type who always wanted to be better or seem better thatn other people, however they were not into violence or negative things

    18. (Erik) Lee always a big risk taker, never though that he would get caught - always had things figured out so that he would not get into trouble

    19. (Erik) the robbery part of the crime was probably pre-meditated - Lee liked nice cars, wanted one - Olinger had a nice car.

    20. (Erik) prior to the robbery and murder, Lee and his friends had gone out for some time looking for possible robbery victims, unclear whether this was the planning stages or whether they were just having fun, they would talk and plan how to commit the robbery, however they never actually robbed anyone before mr. Olinger

        a. (Erik) BECAUSE LEE WAS ROBBED AT GUNPOINT AND IT HAD HIM SCARED AND WORKED ON HIM HE MAY HAVE THOUGHT THAT THIS WAS THE BEST AND QUICKEST WAY TO COMMIT THE ACT OF ROBBERY AND LEAVE SOMEONE VERY SCARED AND UNABLE TO DEFEND THEMSELVES

MARRIAGE OF LEE MOORE SR AND GEORGIA MOORE (ACCORDING TO LEE SR)

    1. characterized as bad marriage - many arguments over money, cars, clothes
    2. Georgia stong willed
    3. no drugs in the marriage, osme alcohol use dad claims recrational, no real alcohol abuse
    4. Lee used to sneak the beer into the home however when he was finished he woul leave the bottle out in the open to be discovered - used to sneak beer in frequently (drank 40 ozs. ?) Betty would yell at Lee when he brought the beer in the home, dad told him to drink it outside the home
    5. divorced when Lee was 6
    6. both parents worked - Georgia - 8 hrs/day
                        Lee sr. - building and remodeling about 12 hrs/day
                                  - last year of marriage worked for city 8 hrs/day
    7. babysitters took care of Lee

LIFE HX OF LEE SR.

    1. Born in Birmingham Ala.
    2. Moved to Cincinnati when a baby
    3. Mother died when he 7
    4. Siblings were left in Ala. with the grandparents
    5. Mother may have had a slow death of cancer
    6. Father sent Lee Sr. to live with his grandmother when he was 8 (1936)
    7. Age 17 moved back to Cinci with his father - started working then
    8. Siblings movedto Cinci about 2 years later
    9. Age 18 enlisted in the army

008194