You will have 40 forms of verdict. You will return only 19 forms duly signed by all 12 jurors.

The question of what punishment, if any, follows a conviction in this case is of no concern of the jurors at this time. The question of punishment, then, is not to enter into your consideration or your deliberations on the guilt or innocence of the defendant.

This being a criminal case requires the concurrence of all members of the jury, so all 12 of the jurors, when they have all agreed, will sign the verdict on which they have agreed, on the blank lines indicated on the bottom. The Court will place these verdict forms in your possession, together with the exhibits.

When you go to the jury room, your first duty will be to choose a foreman or forelady, who acts just like a chairperson of a meeting. The foreman or forelady will retain possession of the verdict forms and the exhibits and return them to the courtroom. He or she sees that your deliberations are conducted in an orderly fashion, that everyone has an opportunity to participate in the discussions and deliberations; otherwise, his or her activity is the same as any other juror.

DOES COUNSEL HAVE ANYTHING TO SAY?

CONCLUSION

Now, ladies and gentlemen, when we started this case, you all rose and

008691

## INSTRUCTIONS TO JURORS ON SENTENCING PROCEEDING

Welcome back. We are now ready to proceed with the sentencing proceeding. You will be required to make a sentencing recommendation to the Court as to each count of Aggravated Murder.

In this proceeding both the State and the defendant will have an opportunity to make an opening statement. However, the State will not have to re-prove the specifications of aggravating circumstance since the State already has proven them.

The defendant will then have an opportunity to present evidence of mitigating factors and after the evidence is presented, the State and the defendant will make their closing arguments.

Keep in mind that as to each count of Aggravated Murder, the State of Ohio has the burden of proving beyond a reasonable doubt that the aggravating circumstances, which the defendant has been found guilty of committing, are sufficient to outweigh any factors in mitigation of the sentence of death before you can return a sentencing recommendation of death as to that count of Aggravated Murder.

COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO

STATE OF OHIO : CASE No. B-9400481

    Plaintiff : Robert P. Ruehlman, Judge

-vs- :

LEE MOORE : CHARGE OF THE COURT ON SENTENCING PROCEEDING

    Defendant :

### INTRODUCTION

Members of the Jury: At the first trial of this case you decided the issues of guilt or innocence on the charge of aggravated murder and on the specifications of aggravating circumstances.

In this second trial or sentencing proceeding, additional evidence has been presented relative to factors in mitigation of the sentence of death.

Your duty now as to each count of aggravated murder is to determine if the State of Ohio has proven beyond a reasonable doubt that the aggravating circumstances which you found the defendant guilty of, outweigh the mitigating factors offered by the defendant and based upon your findings, you must make a recommendation to the Court on the sentence to be imposed for that aggravated murder conviction.

It is now my duty to instruct you on the law which applies to this proceeding. Again, the Court and the jury have separate functions. You decide the disputed facts and the Court provides the instructions of law. It is your sworn duty to accept these instructions and to apply the law as it is given to you. You are not

008693

permitted to change the law, nor to apply your own conception of what you think the law should be, nor are you to disregard the law in order to avoid an unpleasant decision.

## BURDEN OF PROOF

The State of Ohio seeks a recommendation from you of death as to each count of aggravated murder. In order to be entitled to this recommendation in any count of capital murder, the State has the burden of proving in that count of aggravated murder by proof beyond a reasonable doubt that the aggravating circumstance which the defendant was found guilty of committing is sufficient to outweigh the factors in mitigation.

In reaching your verdict you are instructed that you will consider all the evidence presented in the first trial as if fully presented again in this proceeding along with all the additional evidence presented in this proceeding.

## OUTWEIGH

To outweigh means to weigh more than, to be more important than.

In this regard it is the quality of the evidence that must be given consideration by you and the quality of the evidence may or may not be commensurate with the quantity of the evidence, that is, the number of witnesses or exhibits presented.

## REASONABLE DOUBT

Reasonable doubt is defined by the Ohio legislature as follows:

> "Reasonable doubt" is present when the jurors, after they have carefully considered and compared all the evidence, cannot say they

-2-

008694

are firmly convinced of the truth of the charge. It is a doubt based on reason and common sense.

Reasonable doubt is not mere possible doubt, because everything relating to human affairs or depending on moral evidence is open to some possible or imaginary doubt.

"Proof beyond a reasonable doubt" is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of his own affairs."

## INSTRUCTION ON EVIDENCE

Now what is and what is not the evidence in this proceeding? Well, again, the indictment is not evidence. It simply apprised the defendant that he was charged with aggravated murder and specifications of aggravating circumstances and was the vehicle for bringing the matter to trial. Again, the opening statements of the attorneys and closing arguments which you have just heard are not evidence. The opening statements and the closing arguments by the attorneys are designed to assist you, but they are not evidence.

Any answers that were stricken by the Court or which you were instructed to disregard are not evidence, and must be treated as though never heard.

You must not draw any inference for or against either party from any questions which the Court did not permit to be answered. The Court rules on the admissibility of evidence, and if you do not know the answer to a specific question, to speculate on what the answer might have been is only to invent evidence and to be unfair to the parties.

Then what is the evidence in this proceeding?

-3-

008695

Well it is all the testimony you heard in the first trial and all the exhibits admitted into evidence in the first trial which you had the opportunity to examine, and which you will have with you again when you deliberate in this proceeding.

It is also all the testimony received from witnesses who testified during this proceeding and any additional exhibits admitted in this proceeding.

## FACTS, CREDIBILITY AND WEIGHT

Once again, you are the sole judges of the facts, the credibility of the witnesses and the weight of the evidence.

Again, to weigh the evidence, you must consider the credibility of the witnesses and to do this, you will apply the test of truthfulness which you apply in your daily lives.

These tests include the witness' appearance on the witness stand; their candor; what interest, if any, they may have in the outcome of this litigation; what relationship, if any, they have to anyone else involved in the case; the consistency or inconsistency of one thing they said with something else they said or with something else you believe to be true or untrue; whether they were in a position to know that concerning which they testified; and all the facts and circumstances surrounding the testimony. Applying these tests, you will assign to the testimony of each witness such weight as you deem proper.

You are not required to believe the testimony of any witness. You may believe or disbelieve all or any part of the testimony of any witness. It is your province to determine what testimony is worthy of belief, and what testimony is

-4-

008696

not worthy of belief.

## NATURE OF THE PROCEEDING

I repeat that the purpose of this proceeding is to have you decide whether the State of Ohio has proven beyond a reasonable doubt that the aggravating circumstances in each count of aggravated murder that the defendant was found guilty of committing are sufficient to outweigh the factors in mitigation of the imposition of the sentence of death.

## MEANING OF WORDS

Remember, also, that words in the English language, whether used in this charge or in the evidence you are to weigh, are to be given their normal and customary meaning in the English language unless you are specifically instructed to give them some specialized or different meaning in this charge.

This instruction on interpretation should govern you throughout your deliberations.

## AGGRAVATING CIRCUMSTANCES

What are aggravating circumstances? In this particular case, the Court has merged the three specifications of aggravating circumstance, that pertained to the offense of Aggravated Murder in Count No. One into one specification. The Court has also merged the offense of Aggravated Murder in Count No. Three into Count No. Two and has also merged the three specifications of aggravating circumstance that pertained to those counts of Aggravated Murder into two specifications of aggravating circumstance.

008697

The specification of aggravating circumstance in Count No. One is set out as follows:

SPECIFICATION NO. ONE IN COUNT NO. ONE.

The Defendant, Lee Moore, committed the Aggravated Murder of Melvin Olinger in Count No. One for the purpose of escaping detection or apprehension or trial or punishment for another crime committed by him, to wit; kidnapping and/or Aggravated Robbery.

The specifications of aggravating circumstances in Count No. Two are set out as follows:

SPECIFICATION NO. ONE IN COUNT NO. TWO

The defendant, Lee Moore, committed the Aggravated Murder of Melvin Olinger in Count Two, while the said Lee Moore was committing, attempting to commit, or fleeing immediately after committing or attempting to commit the offense of kidnapping, and the defendant, Lee Moore, was the principal offender in the commission of the Aggravated Murder or if not the principal offender, committed the Aggravated Murder with prior calculation and design.

SPECIFICATION NO. TWO IN COUNT NO. TWO

The defendant, Lee Moore, committed the Aggravated Murder of Melvin Olinger in Count No. Two while the said Lee Moore was committing, attempting to commit, fleeing immediately after committing or attempting to commit the offense of Aggravated Robbery, and the defendant, Lee Moore, was the principal offender in the commission of the Aggravated Murder or if not the principal offender,

-6-

008698

committed the Aggravated Murder with prior calculation and design.

Remember that when a person is convicted of more than one count of Aggravated Murder, the penalty for each individual count must be assessed separately. Only the aggravating circumstances that are related to a particular count of Aggravated Murder can be considered in assessing the penalty for that count.

In deciding what penalty to recommend for Counts One and Two, you must consider each count and specification to each count separately.

## MITIGATING FACTORS

What are mitigating factors? The statutory law has established certain mitigating factors.

These statutory mitigating factors include:

(1)  The history, character, and background of the offender;

(2)  The youth of the offender;

(3)  Any other factors that are relevant to the issue of whether the offender should be sentenced to death.

## VERDICT

In reaching a verdict in this proceeding you must consider all of the evidence admitted at both trials and the arguments of counsel. You must then determine whether the State of Ohio has proven beyond a reasonable doubt that the aggravating circumstances in each count of Aggravated Murder which Lee Moore was found guilty of committing are sufficient to outweigh the mitigating factors

008699

present.

All twelve jurors must agree on a verdict. If all twelve members of the jury find, by proof beyond a reasonable doubt, that the aggravating circumstances in a particular count of Aggravated Murder which the defendant was found guilty of committing, outweigh the mitigating factors, then you must recommend to the Court a sentence of death as to that particular count.

On the other hand, if after considering all of the relevant evidence admitted at the two trials and the arguments of counsel, you find that the State of Ohio failed to prove by proof beyond a reasonable doubt that the aggravating circumstances in a particular count of Aggravated Murder which the defendant was found guilty of committing outweigh the mitigating factors, then you will not recommend to the Court a sentence of death as to that particular count of Aggravated Murder. In that event, you will determine which of two possible life imprisonment sentences to recommend to the Court as to that particular count of Aggravated Murder. Your recommendation to the Court shall be one of the following:

1. That Lee Moore be sentenced to life imprisonment with parole eligibility after twenty (20) full years of imprisonment; or

2. That Lee Moore be sentenced to life imprisonment with parole eligibility after thirty (30) full years of imprisonment.

You must understand that if you make one of these recommendations, it will be binding upon the Court, and the Court must impose the specific life sentence you recommend.

-8-

008700

In making your recommendation as to each count of Aggravated Murder, keep in mind that the fact there are some mitigating factors present does not preclude or prevent the death penalty if you find beyond a reasonable doubt that the aggravating circumstances still do outweigh the mitigating factors.

Now, the three possible sentencing recommendations as to each count will be in verdict forms which I am about to read to you. You should not draw any inferences from the order in which these verdict forms are read to you.

(READ VERDICT FORMS)

When you have reached a verdict recommending sentence in a particular count of Aggravated Murder, you will complete the verdict form which corresponds to your decision, signing that respective verdict form in ink.

Remember, you must not be influenced in your deliberations by any consideration of prejudice. It is your duty to carefully weigh the evidence, decide all disputed questions of fact, apply the instructions of the Court to your findings and render your verdict accordingly. In fulfilling your duty, your efforts must be to arrive at a just verdict. Consider all the evidence and make your finding with intelligence, impartiality and without bias or prejudice, so that the State of Ohio and this defendant will feel that this proceeding was fairly and impartially tried.

If, during the course of this proceeding the Court said or did anything that you consider an indication of the Court's view on the issue of sentencing, you are instructed to disregard it, the recommendation of sentence for each of the aggravated murder convictions is the sole responsibility of the Jury.

-9-

008701

The Court is going to place in your possession the exhibits which the Court admitted into evidence during the course of both the trials and the verdict forms which I have just read to you.

The foreperson will retain possession of all the exhibits and the verdict forms, returning them to the courtroom at the appropriate time.

The foreperson will see that your discussions are orderly, and that each juror has the opportunity to discuss the case fully and to cast a vote. Otherwise, the authority of the foreperson is the same as every other juror.

Until your verdict is announced in open court, you are not to disclose to anyone else the status of your deliberations, or the nature of your verdict.

(ASK ATTORNEYS IF THERE IS ANYTHING FURTHER)

After you retire, your first duty will be to select a foreperson. You may retain the same foreperson who served in the first trial or you may elect a new foreperson. Whenever all twelve, I repeat, all twelve of you agree on all the verdicts, you will execute the appropriate verdicts forms in ink, and you will notify the Bailiff that you are ready to return to the courtroom.

## ALTERNATE JUROR

To the alternate juror, I now say: you were selected to serve in the event some misfortune might occur to a member of the regular jury panel. Up to this point, fortunately, it has not been necessary for you to replace a member of the regular jury panel. Now that the regular panel is about to retire and commence deliberation on the issues of a sentencing recommendation you are going to be taken to a separate room where you will remain while the regular jury panel is deliberating.

008703

<u>COUNT TWO</u>

| | | |
|---|---|---|
| STATE OF OHIO | : | COURT OF COMMON PLEAS |
| | : | HAMILTON COUNTY, OHIO |
| Plaintiff | : | CASE NO. B-9400481 |
| -vs- | : | |
| LEE MOORE | : | |

WE THE JURY UNANIMOUSLY FIND THAT THE AGGRAVATING CIRCUMSTANCES THE DEFENDANT WAS FOUND GUILTY OF COMMITTING IN COUNT <u>TWO</u> DO NOT OUTWEIGH THE MITIGATING FACTORS AND RECOMMEND THAT THE DEFENDANT BE SENTENCED TO LIFE IMPRISONMENT WITH PAROLE ELIGIBILITY AFTER SERVING THIRTY (30) FULL YEARS OF IMPRISONMENT.

1. _____
2. _____
3. _____
4. _____
5. _____
6. _____

7. _____
8. _____
9. _____
10. _____
11. _____
12. _____
    **Foreperson**

008704

## COUNT TWO

| | | |
|---|---|---|
| STATE OF OHIO | : | COURT OF COMMON PLEAS |
| | : | HAMILTON COUNTY, OHIO |
| Plaintiff | : | CASE NO. B-9400481 |
| -vs- | : | |
| LEE MOORE | : | |

WE THE JURY UNANIMOUSLY FIND THAT THE AGGRAVATING CIRCUMSTANCES THE DEFENDANT WAS FOUND GUILTY OF COMMITTING IN COUNT <u>TWO</u> DO NOT OUTWEIGH THE MITIGATING FACTORS AND RECOMMEND THAT THE DEFENDANT BE SENTENCED TO LIFE IMPRISONMENT WITH PAROLE ELIGIBILITY AFTER SERVING TWENTY (20) FULL YEARS OF IMPRISONMENT.

1. _____
2. _____
3. _____
4. _____
5. _____
6. _____

7. _____
8. _____
9. _____
10. _____
11. _____
12. _____
    **Foreperson**

008705

```
********************
***  TX REPORT   ***
********************

TRANSMISSION OK

TX/RX NO              4717
CONNECTION TEL                    92415680
SUBADDRESS
CONNECTION ID
ST. TIME              03/20 09:41
USAGE T               11'16
PGS.                  15
RESULT                OK
```

# Harmon, Davis & Keys
## A Legal Professional Association

1400 Kroger Building
1014 Vine Street
Cincinnati, Ohio 45202
Fax (513) 333-4768
1-800-431-6810
(513) 241-1991

Partners
Perry Davis, Jr.
Arthur W. Harmon

Associates
Julia A. Sears
R. Bernard ____



## COVER SHEET

TO:

NAME: _Marie_

COMPANY: _Croswell & Adams_

FAX #: _241-5680_          DATE: _____

FROM:

NAME: _Julia Sears_         NUMBER OF PAGES ____
                            (Include cover sheet)

COMMENTS: _Here are corrections on Lee Moore pgs - 25 - 38._

008706

The information contained in this facsimile message is attorney privileged and confidential

# Harmon, Davis & Keys
## A Legal Professional Association

1400 Kroger Building
1014 Vine Street
Cincinnati, Ohio 45202
Fax (513) 333-4768
1-800-431-6810
(513) 241-1991

Partners
Percy Davis, Jr.
Arthur W. Harmon, Jr.

Associates
Julia A. Sears
R. Bernard [illegible]

## COVER SHEET

TO:

NAME: Marie

COMPANY: Croswell & Adams

FAX #: 241-5680    DATE: _____

FROM:

NAME: Julia Sears    NUMBER OF PAGES _____
(Include cover sheet)

COMMENTS: Here are corrections on Lee Moore pgs - 25 - 38.

The information contained in this facsimile message is attorney privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately and return the original message to us at the above address via U.S. Postal Service.

Thank you.

APH/95

008707

established a prima facie case of discrimination.

In this case, the prosecutor exercised a peremptory challenge to excuse prospective juror Freeman, an African American woman (T.p. 405). The defense established a prima facie case, and the court instructed the prosecution to provide a non-racial explanation (T.p. 408). The trial court allowed the challenge because she had her arms crossed when answering the prosecutor's questions, she listed drug and alcohol impairment as a possible mitigating factor, and a relative was a criminal defense lawyer (T.p. 414-415). The court failed to consider that juror Freeman stated she was willing to serve as a juror in the case (T.p. 261) and she could sentence Moore to death if appropriate (T.p. 259).

The prosecution's explanations offered were improper and inadequate to explain using three peremptory challenges to exclude blacks from a panel where they were already grossly under-represented. The state's assertion that Ms. Freeman should not serve because she was willing to consider drug or alcohol impairment as a possible mitigating factor is inherently suspect. The Ohio Supreme Court has recognized drug and alcohol impairment as legitimate mitigating factors to be considered in appropriate cases. State v. D'Ambrosio (1995), 73 Ohio St. 3d 141, 145, 652 N.E.2d 710, 714; State v. Sowell (1988), 39 Ohio St. 3d 322, 325-326, 530 N.E.2d 1294, 1300, cert. den. (1989), 490 U.S. 1028. A juror who cannot fairly consider this factor in mitigation cannot follow the laws and should be disqualified. A juror who can consider this factor in mitigation can follow the law and is a qualified juror. She is a qualified juror.

Jurors may not be excused for cause simply because they have a general objection to the death penalty or conscientious or religious scruples against its infliction. If the court permits such jurors to be excused for cause, any

25

008708

death penalty sentence imposed by the panel is unconstitutional. <u>Witherspoon v. Illinois</u> (1968), 391 U.S. 510, <u>rehearing denied</u> 393 U.S. 898. Similarly, excusing jurors because they are willing to follow the law and fairly consider legitimate mitigating factors, deprives Defendant of a fair hearing and a reliable weighing of the aggravating and mitigating circumstances, rendering any death recommendation unconstitutional.

The Ohio Supreme Court agreed that examination of a prospective juror concerning his views on the death penalty need establish only that the juror is willing to consider all penalties provided by law, and that he is not irrevocably committed before trial to vote against the death penalty regardless of any evidence presented, or instructions given, by the court. <u>State v. Watson</u> (1971), 28 Ohio St. 2d 15, 57 O.O. 2d 95, 275 N.E.2d 153. ~~Defendant contends that~~ the state should not be permitted to exclude members of Defendant's race from the venire under the guise of stacking the jury with panel members who are unwilling to consider legitimate mitigating circumstances. At a minimum, the state should be required to articulate reasons relating to the jurors' potential judgment during the guilt phase of trial, since the Ohio and United States Supreme Courts have already determined that any juror who is willing to fairly consider the evidence and apply the law is competent to deliberate and decide whether to recommend death. The state did not articulate any legitimate reasons relating ~~No legitimate reason was ever articulated by the state which is related~~ to the facts in the instant case. The generalizations OFFERED ~~contained in the reasons articulated are~~ Do not adequately ~~to~~ explain excluding another member of Defendant's own race from an under represented group ~~already mostly white venire~~. As Justice Powell, writing for the majority in <u>Batson</u>, stated:

> Just as the equal protection clause forbids the states to exclude black persons from the venire on the assumption that blacks as a group are unqualified to serve as jurors, so it forbids the states to strike black veniremen on the assumption that they will be biased in a particular case simply because the defendant is black. The court's guarantee of equal protection, ensuring citizens that their state will not discriminate on account of race, would be meaningless were we to approve the exclusion of jurors on the basis of such assumptions, which arise solely from the juror's race. Nor may the prosecutor rebut the defendant's case merely by

26

008709

denying that he had a discriminatory motive or affirming his good faith in individual selections." Alexander v. Louisiana, 405 U.S., at 632. If these general assertions were accepted as rebutting a defendant's prima facie case, the equal protection clause "would be a vain and illusory requirement." Norris v. Alabama, supra, at 598.

Batson, supra

Wherefore, Defendant respectfully suggests that his conviction by a jury from which members of his own race were improperly excluded, violates equal protection and should be reversed.

**PROPOSITION OF LAW # 6**

ADMISSION IN EVIDENCE OF STATEMENTS ELICITED FROM DEFENDANT WHILE IN CUSTODY, WHICH ARE OBTAINED WITHOUT A KNOWING AND VOLUNTARY WAIVER OF MIRANDA RIGHTS, VIOLATES THE FIFTH AND SIXTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND PARALLEL CONSTITUTIONAL AND STATUTORY PROVISIONS IN THE STATE OF OHIO.

Appellant Lee Moore was arrested in a McDonald's parking lot in Cincinnati at 5:23 p.m. on January 20, 1994 (T.p. 8-9). The arresting officers approached Moore and his passenger, co-defendant Larry Kinley, Moore's passenger, after they had ordered food from the restaurant's drive-through but before they could pick it up from the window. (T.p. 19). Moore had not eaten since 9:00 a.m. that morning (T.p. 143). The arresting officer, with weapon drawn, opened Moore's door and told him to exit the vehicle. Moore complied. The officer patted Moore down and handcuffed him immediately (T.p. 129). None of the officers present at the scene advised Moore of his rights or explained to him why he was under arrest (T.p. 21, 132-133).

After keeping him at McDonald's for at least twenty minutes, the officers took Moore to a holding cell at the Mt. Healthy Police Department (T.p. 14). On the way to the police station, Moore repeatedly asked the officer driving the cruiser why he was being arrested, but the officer did not respond (T.p. 13-14). He was never advised of his Miranda rights (T.p. 15-16). At the station, Moore was then locked in a holding cell with no running water, but still unaware

27                                                                 008710