

Mitigation
- Δ's unsworn statement — try to humanize client for Jury — make it difficult for them to kill him —

Jury Selection

Individual Voire Dire
- Issue Capital Punishment
- Issue of Pre Trial Publicity
Poll Panel on remaining issues

Standard Voire Dire instructions
This stage — Ask ?

4554 Lake Forest Drive   Blue Ash, Ohio  45242   513/733-8900

003351



Hrej Cf

A-3 escaping detection

A-7 Felony Murder

Duplication

Espenoza v Fla. if unproper Agg Factor considered
112 SCt 2926                 it is violation of 8th J

Jenkins - Duplication Oh Sup Cl.
*                                15 Oh St 3d 164
Pre-Conviction - File Motion to Merge
          ↳ prior to Penalty
Inst. out Jury - that it is merged
Stress effect Jury weighing too much
          Ohio Sup Cl - must be merged
*
Also do it - zue judge decides

4554 Lake Forest Drive   Blue Ash, Ohio 45242   513/733-8900

003352



**EMBASSY SUITES℠**

Review Questions!

No mitigate- in 1st phase or Guilt Phase
call it 1st phase in trial phase

Check co-Defr- Jur Record- testimony
arresting officer - credibility

☀ - consider Polygraph for mitigation
     Phase

Check est for
Pros- Objection comments as to    a matter of
law are not Agg, circumstances

4554 Lake Forest Drive   Blue Ash, Ohio 45242   513/733-8900

003353



Jurors
Look for Smart Jr? re Death Penalty

Jury instruction re Mitigation
instruction that if you can not be unanimous
as to death - you must move on to life

Prepare to Client

Save Anti-Death cases — better than
picking pro-death ?

4554 Lake Forest Drive    Blue Ash, Ohio 45242    513/733-8900

003354

Time-Log


EMBASSY SUITES℠

Subjected test — Need not be unanimous
questioning wts

If after – trial/phase – found guilty – are
you leaning toward death as opposed to life
of no challenge for cause – should be totally
unbiased

Person w/ Children
ok. When raised is it more important to have
children obey the law or think for themselves.

Life – will not get out
30+3 ÷ consec

30 yrs – day for day + 3.5 + 30 before eligible
+ 3 yrs ÷ other charges

4554 Lake Forest Drive   Blue Ash, Ohio 45242   513/733-8900

003355



- Jury
- Mot to strike
- Move Mistrial
- Move Curative Instruction

Jury Instruction
Address - 2 prong Indictment
principal offender + prior calculation
+ design.

Request charge on other offenses
MURDER -

NEGLIGENT HOMICIDE

---

JURY SELECTION 10:30 N-2
State jury not very full / Split Atty - didier
1 - total

others assist -

I - disagree w/ verdict - let's not argue -
let jury know you are concerned about impression

4554 Lake Forest Drive   Blue Ash, Ohio 45242   513/733-8900

003356



**EMBASSY SUITES**

MAKE PROSECUTOR
pick principal offender as pre-
calculator + design -
Make pros elect - + then ask for
specific instruction

State v Penix 32 Oh. St. 369 (1985)

Prosecutor Opens Door
When he argues life doesn't mean life

Check request for Jury Instruction as
to Reasonable Doubt at Mitigation Phase

4554 Lake Forest Drive    Blue Ash, Ohio  45242    513/733-8900

003357



Do you think Death Penalty automatically only verdict for person convicted of Agg. Murder.

? would mitigating facts affect

would it absolutely impair ability to consider W/ sentence - if yes - ADP-excuse

Not everyone convicted of intentional killing deserve to die - Legislature in wisdom - allow for life

 Clinical Psych

Defense Burden to carry forward in event of Mitigating Factors by Preponderance of Evid[ence]

Then Agg circumstances must outweigh Mitigating Factor beyond [reasonable doubt]

Read State v Lochette

Dealing w/ Individual - not facts of the case

Victims Put Voir Dire Instruction explaining Phase I Phase II

4554 Lake Forest Drive   Blue Ash, Ohio 45242   513/733-8900

003359

CENTRAL PSYCHIATRIC CLINIC
COMMUNITY DIAGNOSTIC AND TREATMENT CENTER

909 Sycamore - Third and Fourth Floors
Cincinnati, Ohio  45202
(513) 651-9300


November 2, 1994

                                        RE:  LEE EDWARD MOORE
                                        DOC.#:  B94-00481

Mr. Lee Edward Moore was evaluated in reference to Mitigation of Death Penalty, pursuant to Ohio Revised Code 2929.03 and as defined in Ohio Revised Code 2947.06. Mr. Moore is charged with Aggravated Murder with Specification, Aggravated Robbery with Specification and Kidnapping. The defendant was evaluated by the undersigned, David Chiappone, Ph.D., Clinical Psychologist, on September 13, September 15, September 17, September 22 and October 20, 1994 for a total of approximately six hours at the Hamilton County Justice Center (HCJC). He was administered the Wechsler Adult Intelligence Scale-Revised (WAIS-R), the Wechsler Memory Scale, and the Bender Gestalt. Mr. Moore was also interviewed at the HCJC by Jenny O'Donnell, B.S., Psychology Trainee, on September 1, and September 12, 1994 for a total of approximately two hours and forty minutes. In addition, Ms. O'Donnell administered the Minnesota Multiphasic Personality Inventory (MMPI) on September 14, 1994 at the HCJC for approximately two hours and thirty minutes. The nonconfidential nature of the evaluation was explained to Mr. Moore prior to all sessions, and he acknowledged understanding such and signed a form to that effect. He also acknowledged his understanding that he was being evaluated for possible Mitigation of the Death Penalty. Collateral contact was made by the undersigned psychologist with the defense attorneys, Dan James and Tim Deardorff. Ms. O'Donnell made collateral contact with Dan James and Tim Deardorff, defense attorneys; Chuck Stiddham, mitigation specialist; Pamela King, juvenile probation officer; Mark Piepmeier, prosecuting attorney; Georgia Moore, the defendant's mother; Lee Moore Sr., the defendant's father; Ed Roberts, Fairfield Police; Dick Flagg, guidance counselor at Mt. Healthy High School; Westerfield, Mt. Healthy High School principal; Robin Thrasher, the defendant's sister; Beverly Parker, the defendant's sister; Shatunda Neal, the defendant's girlfriend; James Ray, father's friend; and Shirley McDaniel, a neighbor of the family. Records were obtained from the Hamilton County Justice Center (HCJC) Intake Assessment and medical chart, Children's Hospital, two letters from the defendant to his parents, employment records from McDonald's, Mt. Healthy High School records, the defendant's statement to the police, statements from the two alleged accomplices, Fairfield Police Department report of two alleged accomplices, coroner's report, medical records from a prior treating source Terry Schwartz, Psy.D., Juvenile Court contact records, Juvenile Detention Center in Butler and Hamilton County, Central Baptist School records, Orthopedic Diagnostic and Treatment Center, and Woodward High School. Records have not been received

003360

RE: LEE EDWARD MOORE

from the Talbert House for Young Men. What follows are my findings and information regarding mitigation.

In the interview, Mr. Moore presented as a large, stocky built, African American male appearing older than his nineteen years. He had short cropped hair, full beard and long fingernails. He was oriented in all spheres and was relevant and coherent. He did not appear to be suffering from any hallucinations, delusions or other symptoms of a major mood or thought disorder. He was somewhat downcast about being incarcerated. He could attend and concentrate as needed. His emotional expression throughout several interviews did not vary. His thoughts were logical, coherent and goal-directed. Memory was intact. He was able to complete all tasks presented to him and participated in psychological testing without any difficulty. Regarding the current allegations, Mr. Moore was able to provide a relevant and coherent story, explaining his acts relevant to the allegations and added that he was using marijuana and alcohol on the day of the offense.

Mr. Moore reported having juvenile charges of Carrying a Concealed Weapon, Receiving Stolen Property, Grand Theft Auto and Drug Abuse. Collateral contact with Pamela King, Juvenile Probation Officer, reported that Mr. Moore was cooperative in reporting weekly and would discuss his activities with her. Ms. King also said that his mother was involved with his court hearings and enforced his cooperation.

Mr. Moore was born and raised in the Cincinnati area, one of eight children in two families, and the only child from the union of his parents. When the defendant was approximately six years old, his parents divorced. He was raised by his mother and had regular visitation with his father. When Mr. Moore reached his late teens and started having difficulties at school and legal problems, Mrs. Moore had the defendant live with his father. The defendant remembers his parents arguing but did not recall any violence between them. He described his mother as strict. Both parents have always worked. He remembers going to live with father at times, and father being variably present. It appears that Mr. Moore had difficulty with the divorce and felt the absence of a father figure. Robing Thrasher, the defendant's sister, indicated that Mr. Moore did miss father and was hoping that his parents would get back together. Robin Thrasher added that Mr. Moore was basically a "golden child" and that he received everything he needed in the home and was overprotected. He was a nonproblematic child until adolescent years and was teased in school and bullied by one particular young man. A friend of the family and neighbor, Shirley McDaniel, corroborated that Mr. Moore was teased as a youngster and had an altercation with a classmate. It appears that sometime after this, Mr. Moore started getting into trouble and was more willing to act out. In retaliation, Mr. Moore used brass knuckles in fighting with the youth. Mr. Moore received a Carrying a Concealed Weapon charge from that incident.

- 2 -

003361

RE: LEE EDWARD MOORE

Mr. Moore has generally intact physical health. He had no major head injuries, illnesses or surgeries as a child. Mr. Moore did not suffer any developmental delays. He did sustain two head injuries and a sprained ankle but medical records show those events as unrelated and not problematic. Collateral contact from the Hamilton County Justice Center reveals that Mr. Moore was seen in intake and had three sick calls regarding physical conditions.

Academically, Mr. Moore obtained eleven grades of formal education and eventually a GED in June, 1994. He was held back in the fourth grade and ninth grade. He made below average marks in school. He was in regular classes. His grades deteriorated when he started "hanging with the wrong crowd" and using marijuana and alcohol. In later years he was truant from school and dropped out. He was suspended for fighting. He did not engage in extracurricular activities. He made friends adequately. Collateral contact with Dick Flagg, guidance counselor of Mt. Healthy High School, revealed that Mr. Moore had discipline problems and decreased motivation. Yet, Mr. Moore was always polite in interactions with Mr. Flagg. What success Mr. Moore did have in school, however, appeared to be at mother's insistence and supervision. Mr. Flagg remembers Mr. Moore "trying to change his ways" on several occasions but his efforts were short-lived.

Vocationally, Mr. Moore last worked in 1992 as an usher for a few months but was fired for absenteeism. He worked at a fast food restaurant for several months but quit that job. He was fired from a grocery store for absenteeism. He said he would rather be "hanging with the boys." His longest period of employment was approximately five months. He admitted that bosses were critical of him for his irresponsibility, tardiness and absenteeism and that co-workers would be upset with him because they had to fill in for him. He stated that recently he felt his life was going nowhere and that he needed to get a job and this was at the insistence of his parents.

Prior to the current allegations, Mr. Moore was living with his father but felt he was living by himself. That is he liked living with his father. His father would not "nag him" like his mother did. He was able to do what he wanted to do. Mr. Moore was receiving some Social Security funds as father was retired. Mr. Moore had to pay rent to father but was able to retain some of the money from Social Security.

Mr. Moore has never been married and has no children. He had one serious relationship with Shatunda Neal, meeting her when he was sixteen, and this relationship lasted for about four years until he was arrested. He admitted that they argued periodically. She complained about his alcohol use.

Mr. Moore has never been psychiatrically hospitalized. He has never received psychiatric medications. He has never experienced

- 3 -

003362

RE: LEE EDWARD MOORE

any psychotic symptomatology. He denied suicide ideation or attempts. As an adolescent, after difficulties in school and in an incident that raised questions in Mrs. Moore's mind about her son's substance abuse, Mr. Moore did receive treatment for a short duration with Terry Schwartz, Psy.D., Psychologist. Mr. Moore felt it was not helpful. Mr. Moore has not received any psychiatric treatment while at the HCJC.

Regarding substance use, Mr. Moore started using alcohol and marijuana by age fifteen. Last use of both substances was on the day of his arrest. He reported that he would use both substances several times during the week and spend as much as $350.00 a week on marijuana. His drug of choice was marijuana. He has never had periods of sobriety. His mother and girlfriend complained about his drug use. On one occasion he came home and mother had to help him to bed, but he denied or would not talk about his substance use. Shatunda Neal, the defendant's girlfriend, reported that Mr. Moore has a problem with alcohol and marijuana. The defendant's father and sister, Beverly Parker, were aware of Mr. Moore's substance use, but were not aware to what extent. Mr. Moore claimed he started using alcohol and marijuana to get his mind off his problems. When using substances he experienced and reported personality change, use in the morning, financial difficulties, blackouts and loss of control. He has never received substance abuse treatment.

Regarding the use of weapons, Mr. Moore has had a juvenile charge of Carrying a Concealed Weapon, involving brass knuckles in which he fought with a peer. Also, several weeks prior to the current allegations, Mr. Moore was robbed at gunpoint. Lee Moore, Sr., the defendant's father, and James Ray, father's friend, were told of this incident by Mr. Moore and related it to Ms. O'Donnell. It was after this incident that Mr. Moore reportedly obtained a weapon from his father's home, unbeknown to father. Lee Moore, Sr. counseled his son not to take the law into his own hands and told his son to report the assault to the police.

The Wechsler Adult Intelligence Scale-Revised (WAIS-R) revealed Mr. Moore obtained a Verbal IQ of 110, a Performance IQ of 97, a Full Scale IQ of 100, placing him in the average range of intellectual ability, and at the 50th percentile of the general population. There is no significant verbal versus performance differential. Mr. Moore displayed the intellectual capability to appreciate his and other's actions and the ability to handle high school studies. He has above average skill in learning a simple coding task involving active memory. It appears with structure he works fairly well. The Wechsler Memory Scale resulted in a memory quotient of 100 which is commensurate with the obtained IQ and suggests that he has intact memory abilities. There are no pathomonic signs on the Bender Gestalt test. Results of the Minnesota Multiphasic Personality Inventory suggest that Mr. Moore answered in such a fashion as to overendorse pathology and

- 4 -

C03363

invalidate the results. This is not inconsistent with individuals who are involved with such serious charges and possible consequences.

Summary of Mitigation Issues

Lee Moore, a nineteen year old, African American male explained that his actions relevant to the current offenses were a function of his feeling that his life was going nowhere and that he was abusing substances. Developmental perspective reveals that Mr. Moore grew up receiving all that he needed, especially from his mother and being somewhat overprotected, while having a distant father and struggling with the divorce of his parents. It appears that he did not receive guidance from his parent to give him a sense of direction in life and goals to work toward. Consequently, both academic and vocational history are incomplete. As a child, he was teased at times and felt he had to present a "tough guy" presentation. He did so on one occasion and eventually obtained a Carrying a Concealed Weapon charge after fighting with a peer. He has had short-term treatment regarding his acting out behavior as a juvenile, but he found it not helpful. Mr. Moore started to "hang" with the wrong crowd and was abusing substances in his adolescent years. In addition, prior to the allegations, Mr. Moore was himself accosted and soon thereafter he obtained a weapon. This young man who has not been able to utilize his potential (as noted by intelligence testing) and has struggled with his sense of identity, especially in terms of the loss of direction from a father figure. He turned to using substances, and obtained a weapon, to make him feel more like a member of "his own group."

David Chiappone, Ph.D.
Clinical Psychologist

DC/vle
11/1/94

RE:   LEE EDWARD MOORE

Diagnosis:

Axis I:        Polysubstance Dependence, alcohol and marijuana

Axis II:       Antisocial Personality

Axis III:      None Relevant

Treatment Recommendations:   Mitigation factors reveal substance abuse, anger at lack of parenting especially from father, sense of loss of direction in his life in spite of potential, and increasing episodes of acting out with violence and he has little if any direction.

- 6 -

003365

# The Supreme Court of Ohio

30 EAST BROAD STREET, COLUMBUS, OHIO 43266-0419

February 8, 1994

COMMITTEE ON THE
APPOINTMENT OF COUNSEL FOR
INDIGENT DEFENDANTS IN
CAPITAL CASES

(614) 466-1551
1-800-826-9010 (IN OHIO)

Honorable William J. Morrissey, Jr.
Hamilton County Court of Common Pleas
Courthouse: 1000 Main Street
Cincinnati, Ohio 45202

                      RE: State of Ohio vs. Lee Moore
                            Case No. B940481

The Committee on the Appointment of Counsel for Indigent Defendants in Capital Cases (Rule 65 Committee) has been notified of the appointment of Daniel J. James and Timothy Deardorff as trial counsel in the above case.

The attorneys are certified by the Committee as follows:

Daniel J. James      -- Lead Trial Counsel

Timothy Deardorff   -- Trial Co-counsel & Appellate Counsel

Therefore, they are approved as counsel in the captioned case.

Enclosed is a Dispositional Report Form which must be completed and returned to us at the conclusion of this case.

Thank you for your cooperation. If you have any questions, please contact Keith Bartlett at (614) 466-1551.


cc: Daniel J. James
    Timothy Deardorff
94-AP-005

003366

State v Huertas
51 Oh St 3d 22 (1990)

Motion Suppress

Le motion                          Effect of Marijuana
125-153

p126: Jeanne It.    Jan 20, 1994    smoked cigs-full of Marij
       6" long lighted object
Pers.
p148- Smoked large joint
      what effect does Mary have on you normally

A- It just   it makes me feel high
   differently from, different from when I don't smoke it
   It made me feel high

p149. What I mean by high is it has, I can't explain it.
      It just made me feel high - Just something that
      I can't explain

Q- would you do anything different
A- I probably wouldn't, I probably wouldn't do
   anything different -   Just, I just had a different
   feeling
Q Does it make you feel good
A- Yeah  . Well

Statement
  pp 0-32
  other d - will not get death
  want to live

003367

870-7900 Tom Vendor ff

Neighbor - McDaniels
         + wife

- Beverly
- MOM
- Fami - has [illegible] condition

Father - Alcoholic
mother - Discipline
No Freedom
         Spoiled
4th Gr - Parents Divorced
   Dad - picks up - leaves w/ Betty
                No Time
DIVORCE   5th Gr - no father figure
              Nice Kid
PICKED on       Peer Pressure - Waves + smiles
              McDaniels -
              Small Child - fighting
   No Mother - Father -- no emotional relationships
         Kid younger than him
   5th & 6th Gr - Skipping School - kids coming over
         Wants to be accepted
         Peace Maker

MOM
- no affection
- Discipline
- Religion

[illegible] easily susceptible

MARIJUANA   ALCOHOL

Going to Winton Terrace instead of Mt Healthy


- Beverly McDaniels
  mother
  Dr C.

**PHONE CALL**

FOR Dan  DATE 11-14  TIME ___ A.M./P.M.

M Call Dr. Chiappone @:

OF (Have him) Emmerson

PHONE paged 853-5656

MESSAGE  or

Home 922-7149 (if you can't reach him @ other #. Judy said ok to talk to Mark.

☑ PHONED
☐ RETURNED YOUR CALL
☑ PLEASE CALL
☐ WILL CALL AGAIN
☐ CAME TO SEE YOU
☐ WANTS TO SEE YOU

SIGNED K.  TOPS FORM 4003

---

54-0135 / 853-5656

**PHONE CALL**

FOR Dan  DATE 11-14  TIME 2:25 A.M./P.M.

M Dr. Dave Chiappone

OF

PHONE 791-0600

MESSAGE Re: Lee Moore

☑ PHONED
☐ RETURNED YOUR CALL
☑ PLEASE CALL
☐ WILL CALL AGAIN
☐ CAME TO SEE YOU
☐ WANTS TO SEE YOU

SIGNED K.  TOPS FORM 4003

003369

Newby
DC
1/19/94
2hrs

10:w - ct
791-0600
7:w → law 29:30

Tony Schwartz
Conduct Disorder — precursor to Anti-Social Personality

Remorse - Not seeing
Schooling - days in bed to car

Bross Necks - M

Not too on

Pros
- No Remorse
- No Maj. Factor
- Anti Social

IQ - 100 Average

Anti-social - he fits all the criteria
Age 18. before 15 - 3 of 10   truant, fights, weapon
stole, lies
Pattern irresponsible behavior - no consistent w/e - aggressive fights
illegal activity - no plan impulsive

MMPI  Objective  Scales - so to
          to interpret
— OVER INDORSE → typical for people facing these charge
                very distressed  — very truthful
does not lead to diagnosis of Anti-Social

Dr. No answers — just tell them
every thing falling apart - all kinds of problems
no overall mental