counsel in the mitigation phase of the capital case.

Section 10, Article I, of the Ohio Constitution gives the indigent defendant a state constitutional right to the appointment of experts. R.C. 2929.024 authorizes the Court to appoint experts under the following circumstances:

> If the court determines that the defendant is indigent and the **** experts **** are reasonably necessary for the proper representation of a defendant charged with aggravated murder at trial **** the court shall authorize the defendant's counsel to obtain the necessary services for the defendant ****.

The statute goes on to state that the court shall grant the funds to employ the expert. The goal of the statute is to ensure a fair trial independent of a defendant's economic status.

In State vs. Jenkins (1984), 14 Ohio St. 3d 164, the Ohio Supreme Court cited two important factors to be considered in appointed experts to assist defense counsel under R.C. 2929.024:

> (1) the value of the expert assistance to the defendant's proper representation at either the guilt or sentencing phases of an aggravated murder trial, and
> (2) the availability of alternative devices that would fulfill the same functions as the expert assistance sought.

Jenkins, at 193.

More recently in State vs. Johnson (1986), 24 Ohio St. 3d 87, 90-91, the Ohio Supreme Court stated:

> It is quite clear . . . that the duty of defense counsel to investigate his client's background for mitigating factors is an indispensable component of the constitutional requirement that a criminal defendant . . . and particularly one on trial for his life . . . be afforded effective

5

003451

> representation and assistance from his lawyer
> . . . (a) trial judge must exercise extreme
> caution to ensure that full justice is accorded
> to the accused . . .
> . . . It is a vain act . . . to guarantee him
> counsel without giving such counsel a reasonable
> opportunity to explore and investigate potential
> mitigating factors.

The defense requests that this court appoint a mitigation specialist who is qualified to assist the defense in presenting information that is relevant to the mitigating factors designated under O.R.C. 2929.024(B). The preparation of an adequate defense in a capital case includes the right to discover and introduce appropriate mitigating evidence. Providing such services to a capital defendant is a necessary and essential requirement for adequate and proper representation.

Respectfully submitted,

*/s/ Daniel J. James*
Daniel J. James  #0008067
30 E. Central Parkway
1300 American Building
Cincinnati, Ohio  45202
(513) 721-1995

and

*/s/ Timothy J. Deardorff*
Timothy J. Deardorff  #0006308
2368 Victory Parkway
Suite 300
Cincinnati, Ohio  45206
(513) 872-7900

Attorneys for Defendant

6

003452

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Motion was hand delivered to the office of the Hamilton County Prosecutor, fourth floor of the Hamilton County Courthouse, this _____10th_____ day of May, 1994.

                                                     _____
                                                   Daniel J. James    #0008067
                                                   Attorney for Defendant




COURT OF COMMON PLEAS
CRIMINAL DIVISION
HAMILTON COUNTY, OHIO

STATE OF OHIO          :     Case No. B9400481
                              Judge Morrissey
        Plaintiff      :

vs.                    :     MOTION FOR ORDER TO
                             FURNISH COPY OF
LEE MOORE              :     TRANSCRIPT OF MOTION TO
                             SUPPRESS
        Defendant      :

Now comes the Defendant, LEE MOORE, by and through counsel, and represents to the Court that he is indigent and that it is necessary to the proper preparation of his defense in the within cause that he is furnished a copy of the transcript of the proceedings conducted in this court on May 5, 1994, concerning the hearing on Defendant's Motion To Suppress.

WHEREFORE, said Defendant moves this Court for an Order directing the Court Reporter to prepare a transcript of the proceedings held in this Court on May 5, 1994, and to furnish a copy to the Defendant and that the cost thereof be taxed into the cost of the within proceedings.

Respectfully submitted,

_____          _____
Daniel J. James J-074/0008067            Timothy J. Deardorff #0006308
Attorney for Defendant                    Attorney for Defendant
30 E. Central Pkwy., 13th Flr.            2368 Victory Parkway, Suite #300
Cincinnati, Ohio  45202                   Cincinnati, Ohio  45206
(513) 721-1995                            (513) 872-7900

003454

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing Motion was hand delivered to the office of the Hamilton County Prosecutor, 4th floor of the Hamilton County Courthouse, this 25th day of May, 1994.

_____
Daniel J. James    #0008067

_____
Timothy J. Deardorff    #0006308

Attorneys for Defendant

COPY FILED
COMMON PLEAS COURT
HAMILTON COUNTY
CRIMINAL DIVISION
MAY 27 1994
JAMES CISSELL
CLERK OF COURTS

COURT OF COMMON PLEAS
CRIMINAL DIVISION
HAMILTON COUNTY, OHIO

STATE OF OHIO : Case No. B9400481
  Plaintiff : Judge Morrissey

vs. : MOTION FOR EXTENSION OF
      TIME TO FILE PRETRIAL
LEE MOORE : MOTIONS

  Defendant :

Comes now the Defendant by and through counsel, and respectfully moves this Court to grant additional time in which pretrial motions, on his behalf, may be filed until a date seven (7) days prior to the date finally set for trial. The reasons supporting this motion are more fully set forth in the accompanying Memorandum.

_____
Daniel J. James   #0008067
Attorney for Defendant
30 E. Central Parkway
1300 American Building
Cincinnati, Ohio  45202
(513) 721-1995

and

_____
Timothy J. Deardorff  #0006308
Attorney for Defendant
2368 Victory Parkway
Suite #300
Cincinnati, Ohio  45206
(513) 872-7900

003456

## MEMORANDUM IN SUPPORT

In support of this Motion requesting an extension of time in which to file additional pretrial motions, Ohio Rules of Criminal Procedure 12(C) provides:

> (C) Motion Date. All pretrial motions except as provided in Rule 7(E) and 16(F) shall be made within thirty-five days after arraignment or seven days before trial, whichever is earlier. <u>The Court, in the interest of justice, may extend the time for making pretrial motions.</u> (Emphasis added.)

Discovery from the State has not been provided and, therefore, counsel for Defendant is not in a posture to determine at this time what are the appropriate motions that they should file on behalf of the client. The interests of justice require that an extension of time be granted.

The additional time sought by the defendant will ensure that he receives the effective assistance of counsel guaranteed him by the Sixth and Fourteenth Amendments to the Constitution of the United States. As the Ohio Supreme Court recognized, "a lawyer has a duty to investigate the circumstances of the case and to explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction." (<u>State vs. Johnson</u>, (1986), 24 Ohio St. 3d 87, 89 (quoting 1 A.B.A. Standards for Criminal Justice (1982 Supp.), No. 4-4.1).

In order for defense counsel to make informed decisions for trial strategy, the defense must be allowed sufficient time to adequately and efficiently investigate all avenues of information. Failure to raise a pretrial motion prior to a deadline will result

003457

in the Defendant waiving these rights. <u>State vs. Moody</u> (1978), 55 Ohio St. 2d 64.

WHEREFORE, the Defendant prays that this Court grant the foregoing Motion and allow for the filing of pretrial motions until seven (7) days prior to the date finally scheduled for trial to commence.

*[signature]*
Daniel J. James    30008067
Attorney for Defendant

and

*[signature]*
Timothy J. Deardorff #0006308
Attorney for Defendant

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing Motion was hand delivered to the office of the Hamilton County Prosecutor, 4th floor of the Hamilton County Courthouse, this 27th day of May, 1994.

## NOTICE OF HEARING

Please take notice that a hearing on the foregoing Motion has been scheduled for the ____ day of _____, 1994, at _____ o'clock ____M., before Judge Morrissey, in Room #360, 3rd floor of the Hamilton County Courthouse, Court and Main Streets, Cincinnati, Ohio.

*[signature]*
Daniel J. James  #0008067
Attorney for Defendant

and

*[signature]*
Timothy J. Deardorff #0006308
Attorney for Defendant

003458



COPY FILED
COMMON PLEAS COURT
HAMILTON COUNTY
CRIMINAL DIVISION
MAY 27 1994
JAMES CISSELL
CLERK OF COURTS

COURT OF COMMON PLEAS
CRIMINAL DIVISION
HAMILTON COUNTY, OHIO

STATE OF OHIO

    Plaintiff

vs.

LEE MOORE

    Defendant

Case No. B9400481
Judge    Morrissey

<u>MOTION TO DISMISS
INDICTMENT</u>

    Now comes the Defendant herein, by and through counsel, and respectfully moves the Court to dismiss the within indictment upon constitutional grounds.

    Defendant, through his attorney, respectfully moves this court for an order dismissing that portion of the aggravated murder indictment in the above captioned matter which elevates the potential penalty from life imprisonment to death, on the grounds that R.C. 2903.01, 2929.02, 2929.021, 2929.022, 2929.023, 2929.03, 2929.04, and 2929.05, as read together and as applied in this case, violate the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Sections 2, 9, 10, and 16, Article I of the Ohio Constitution. The reasons in support of this motion are set out in the accompanying memorandum.

                                Respectfully submitted,

                                _____
                                Daniel J. James  #0008067
                                30 E. Central Parkway
                                1300 American Building
                                Cincinnati, Ohio  45202
                                (513) 721-1995

003459

and

*Timothy J. Deardorff* /s/
Timothy J. Deardorff, #0006308
2368 Victory Parkway
Suite 300
Cincinnati, Ohio 45206
(513) 872-7900

Attorneys for Defendant

## MEMORANDUM IN SUPPORT

A. THE DEATH PENALTY AUTHORIZED BY THE OHIO REVISED CODE DEPRIVES CAPITALLY-CHARGED DEFENDANTS OF THEIR LIVES WITHOUT DUE PROCESS OF LAW, DENIES EQUAL PROTECTION AND IMPOSES CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF THE OHIO AND UNITED STATES CONSTITUTIONS.

The right to life is a constitutionally protected fundamental right, Commonwealth vs. O'Neal (1975), 367 Mass. 440, 327 N.E. 2d 662, 668. The enjoyment of life is also explicitly guaranteed as an "inalienable right" by Section 1, Article I, Ohio Constitution. Therefore, "in order for the state to allow the taking of life by legislative mandate, it must demonstrate that such action is the least restrictive means toward furtherance of *** a compelling governmental end." O'Neal, 327 N.E. 2d 668.

The societal interests commonly advanced to justify capital punishment are, as the United States Supreme Court noted in Gregg vs. Georgia (1976), 428 U.S. 153, "deterrence of capital crimes by prospective offenders," "incapacitation of dangerous criminals and the consequent prevention of crimes that they may otherwise commit in the future," and "retribution". Id. at 183, and fn. 28. The

2

003460

court in <u>Gregg</u>, however, was not presented with and did not decide whether capital punishment is the least restrictive means for achieving the purported societal interests.

Despite the most exhaustive research by noted experts in the field, there is no convincing evidence that the death penalty is a deterrent superior to lesser punishment. "In fact, the most convincing studies point in the opposite direction." <u>Commonwealth vs. O'Neal</u> (1975), 369 Mass. 242, 339 N.E. 2d 676, 682 (hereinafter <u>O'Neal, II</u>). Studies in Ohio, more particularly, have similarly failed to show any deterrent effect by imposition of the death penalty. Over twenty years ago, a study spanning fifty (50) years of executions in Ohio found no evidence that executions have any discernible negative effect on homicide rates. Ohio Legisl. Serv. Comm'n., Capital Punishment (1961). See, also, Bailey, The Deterrent Effect of the Death Penalty for Murder in Ohio. A Time-Series Analysis (1979), 28 Cleve. St. L. Rev. 51, 68, 70. The Ohio Supreme Court has not addressed the issue of lack of evidence supporting deterrence in its previous decisions upholding the death penalty.

The second purported justification for the death penalty, that of incapacitation of the offender, can be achieved by restraint, a less restrictive means than destruction of human life.

It is respectfully suggested that retribution cannot serve as the compelling State interest justifying capital punishment because there is no evidence that a less onerous penalty would not equally

3

satisfy the public's outrage and its desire for punishment. See O'Neal II, 339 N.E. 2d at 686-7. The State's possible reliance on retribution as a justification for the death penalty is further weakened by the imminent threat that the irreversible deprivation of life may befall an innocent or less culpable person.

The failure of the State to meet "its heavy burden of demonstrating that, in pursuing its legitimate objectives, it has chosen means which do not unnecessarily impinge on the fundamental constitutional right to life," O'Neal II, supra, 339 N.E. 2d at 688, requires the rejection of death as a punishment as it is violative of due process.

The punishment also violates the Cruel and Unusual Punishment Clauses because it is "more severe than is necessary to serve the legitimate interests of the State," Furman vs. Georgia (1972), 408 U.S. 238, at 359-60 (Marshall, J., concurring.) Additionally, the actual physical and psychological pain of execution itself is immeasurable. Electrocution does not produce instantaneous loss of consciousness.

Studies have established that past experience with the death penalty in this state and others are fraught with discrimination violative of equal protection. Ohio's capital sentencing provisions are patterned after those previously studied, which appear to have been applied in a racially-discriminatory manner as to the victim and defendant. See Bowers and Pierce, Arbitrariness and Discrimination Post-Furman Capital Statutes, Crime and

4

003462

Delinquency (Oct. 1980), 563, 594-595; see, also, Greenberg, Capital Punishment as a System (1982), 91 Yale L. J. 908. Such arbitrariness and discrimination persists under the Ohio statutory scheme which gives even greater discretion in sentencing to the trier of fact.

"Discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." Gregg, 428 U.S. at 189. Yet, the prosecuting attorney has acquired "virtually unlimited control over charging, inconsistent with a system of criminal procedure fair to defendants and to the public." Vorenberg, Decent Restraint of Prosecutorial Power (1981), 42 Harv. L. Rev. 1521, 1525.

In Ohio, no fair and consistent determination is made. The determination as to whether one is indicted with a death penalty specification is apparently largely a function of where a defendant is charged, not of the circumstances of the crime and the character of the individual. Cuyahoga County contains approximately fourteen percent (14%) of Ohio's population and has handed down approximately forty-four percent (44%) of Ohio's death penalty indictments. "Death Penalty Report," State Public Defender's Report (as of May 26, 1988). Furthermore, no independent review of the propriety of the charging decisions.

In effect, Ohio's system is designed so as to permit a prosecuting attorney to sidestep the procedural safeguards of Supreme Court decisions by allowing arbitrary charging decisions

5

003463

that unfairly impinge on defendants' rights before the trial safeguards commence. This denies equal protection and imposes cruel and unusual punishment if the product of intentional discrimination on the basis of an improper classification, or results in arbitrary, freakish imposition of death sentences. See <u>McCleskey vs. Kemp</u> (1987), 481 U.S. _____, 95 L. Ed. 2d 262; <u>State vs. Zuern</u> (187), 32 Ohio St. 3d 56. Defendant acknowledges that several of these general federal constitutional claims have been rejected by the Ohio Supreme Court in <u>State vs. Jenkins</u> (1984), 15 Ohio St. 3d 164, but have not yet been tested in the federal courts. Further, the Ohio Courts have not yet addressed these issues under the State constitution.

    B.   R.C. 2929.022, 2929.03, AND 2929.04 VIOLATE THE ACCUSED'S RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL AND TO A TRIAL BEFORE AN IMPARTIAL JURY, AS GUARANTEED BY THE SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTIONS 9, 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

Ohio's capital statutory scheme provides for a sentencing recommendation by the same jury which determines the facts at trial if LEE MOORE is found guilty. As is set forth in LEE MOORE'S Motion To Prohibit Death-Qualification of the Jury, this procedure violates LEE MOORE'S rights to effective assistance of counsel and to a fair trial before an impartial jury, as guaranteed by the State and Federal Constitutions.

    1. Denial of Effective Assistance of Counsel.

Ohio's bifurcated capital trial process with the same jury

violates LEE MOORE'S right to effective assistance of counsel as guaranteed under the Sixth and Fourteenth Amendments to the United States Constitution; McMann vs. Richardson (1970), 397 U.S. 759, 771, fn. 14; Powell vs. Alabama (1932), 237 U.S. 45, 47; Sections 10 and 16, Article I, Ohio Constitution; State vs. Hester (1976), 45 Ohio St. 2d 71.

First, under the operation of the current statute, if counsel argues to the jury a defense which loses at the guilt phase of the trial, in effect he is forced to simultaneously destroy the accused's credibility prior to the start of the trial sentencing phase. By invoking the accused's right to strenuously argue for his innocence in the first phase, if the defense loses in the first phase counsel will have significantly reduced the credibility desperately needed to successfully argue for a life sentence.

The legislature should have eliminated this Constitutional dilemma by providing for two separate juries, the first for determining guilt and the second for determining punishment. It is respectfully suggested that at the second trial the prosecuting attorney would be allowed to reiterate the specific evidence of aggravating circumstances. This proposed order of trial would eliminate the impairment of the right to have a defense presented with the effective assistance of counsel. The State essentially has "prevented (counsel) from assisting the accused during a critical stage of the proceeding". United States vs. Cronic

7

003465

(1984), 466 U.S. 648, 659, fn. 25. This creates constitutional error without any showing of prejudice necessary. Id.

Furthermore, extensive voir dire on the subject of the death penalty before the guilt phase places the Accused in the untenable position of appearing to the jury to feel his case is so poor on the merits insomuch as he is already discussing the topic of punishment. In Grigsby vs. Mabry (E.D. Ark. 1983), 569 F. Supp. 1273, affirmed (C.A.8, 1985) 758 F. 2d 226, the adverse affect that "death qualification" of prospective jurors has on the right to an impartial jury was noted:

> *** it denies the accused a trial by a jury representative of a cross-section of the community; *** it creates juries that are conviction prone.

Admittedly, the United States Supreme Court granted certiorari and reversed the Eighth Circuit. Lockhart vs. McCree (1986), ___U.S.___, 90 L. Ed. 2d 137. In doing so, however, Justice Rehnquist did not deny that the death-qualification process results in a jury more likely to convict. Id., 90 L. Ed. 2d at 147. Rather, the Court found that "Witherspoon Excludables" do not constitute a cognizable group for the purpose of a "fair cross section" analysis. Id. at 148. The Court employed a balancing test which, in effect, balances the State's interest in having a single jury for both phases of the trial against the defendant's right to have a fair and impartial guilt phase jury. In so holding, the Court held:

8

003466

> *** we will assume for the purposes of this opinion that the studies are both methodologically valid and adequate to establish that "death qualification" in fact produces juries somewhat more "conviction-prone" than "non-death-qualified" juries. We hold, nonetheless, that the Constitution does not prohibit the states from "death qualifying" juries in capital cases.

Id. at 147.

This identical issue is raised here on both federal and independent State constitutional grounds. The Ohio Constitution does guarantee a capitally-charged defendant the right to an impartial jury during the guilt phase, and one composed of a fair cross-section of the community under Sections 5, 10 and 16, Article I. Where a jury is not representative of the fair cross-section of the community as constitutionally required, it is clear that such a jury cannot be considered fair and impartial with respect to the issue of the innocence of defendants in capital cases. Id.

The Ohio Supreme Court has not dealt with this issue on the independent State constitutional grounds here asserted. Its decision in Jenkins, supra, cited Keeton vs. Garrison (C.A.4, 1984), 742 F. 2d 129 for the proposition that a criminal defendant "*** feels entitled to a jury more likely to acquit rather than an impartial jury." Jenkins, supra, at 188 citing Keeton at 134. This language in Keeton has clearly been discredited by Justice Rehnquist himself in Lockhart, supra. Keeton was never an accurate statement of what the scientific research in this area had established. Non-death-qualified juries are impartial. To hold

9

otherwise one must then assert that the normal jury in the ordinary criminal trial is acquittal-prone. This obviously absurd position is the necessary logical result of the ratio decondendi of Keeton. However, Lockhart, supra, clearly rejects this and hold that while the death-qualification process does result in a conviction-prone jury, that fact does not offend the federal constitution. The Ohio Supreme Court's recent decision in State vs. Zuern (1987), 32 Ohio St. 3d 56, 63, relied simply on Lockhart, and so also failed to address the State's constitutional protections to a fair and impartial jury pursuant to Sections 5, 10 and 16, Article I.

This highly prejudicial situation, as imposed on defense counsel by Ohio's statutory scheme, again renders his assistance to the accused ineffective. Under Ohio's statutory scheme, the defense counsel must choose between either engaging in sufficient voir dire on the death penalty issue, thereby risking the appearance to the jury of a surrender on the guilt issue, or forego voir dire on the death penalty issue and risk the empanellment of jurors whose undetected bias toward the death penalty would render them clearly unfit to sit on the jury. State vs. McClellan (1967), 12 Ohio App. 2d 204. Both choices created by the statute are constitutionally unacceptable to a defendant facing death as a possible punishment.

Ineffective assistance of counsel is also caused by the application of R.C. 2929.03(D)(1) because once an accused requests

10

003468

a mental examination, presumably with the hope that the results will be in mitigation of the offense, defense counsel has no control over the distribution of the results thereof to the jury, regardless of whether the results are in favor of or against the LEE MOORE'S best interest. Counsel must play a blind guessing game when requesting the examination and has not way to prevent the jury from reviewing the results which may be adverse to his client's interest or may suffer from procedural irregularities. Without any right to review the examination results prior to distribution to the jury, defense counsel is unable to fully and effectively serve the best interests of his clients. R.C. 2929.03 must be struck down as an unconstitutional deprivation of LEE MOORE'S right to effective assistance of counsel as guaranteed by both the Constitutions of Ohio and of the United States.

### 2. Denial of an Impartial Jury

LEE MOORE has an absolute right to an impartial jury under the Sixth Amendment to the United States Constitution. <u>Sheppard vs. Maxwell</u> (1966), 384 U.S. 333. A sentencing hearing is part of the criminal prosecution, <u>Mempa vs. Rhay</u> (1967), 389 U.S. 128, and therefore as a federal constitutional matter, a criminal defendant has the right to an impartial jury at his sentencing hearing. Ohio guarantees criminal defendant the right to an impartial jury pursuant to Section 10, Article I of the Ohio Constitution.

Ohio's bifurcated trial procedure wherein a single jury hears

and decides both the guilt and penalty phases of trial violates the LEE MOORE'S rights to an impartial jury at the sentencing hearing. Once a jury has found an accused guilty of aggravated murder, a very high probability exists that jury bias and animosity towards LEE MOORE will exist at the sentencing hearing, the existence of which should be a basis for challenge for cause during voir dire at the start of the trial.

Under Ohio's death penalty statutory scheme, an intolerable risk exists that an accused's life may be put in the hands of a hostile venire, which in effect creates uncertainty in the reliability of the determination reached. Such a risk cannot be tolerated in a capital case, Beck vs. Alabama (1980), 447 U.S. 625, 638. Therefore, the statute must be struck down as an unconstitutional violation of the accused's right to an impartial jury under the State and Federal Constitutions.

    C.    R.C. 2929.03, 2929.04 AND 2929.022 VIOLATE THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 9 AND 16, ARTICLE I OF THE OHIO CONSTITUTION BY FAILING TO PROVIDE ADEQUATE GUIDELINES FOR DELIBERATION, LEAVING THE JURY WITHOUT PROPER GUIDELINES IN BALANCING THE AGGRAVATING CIRCUMSTANCES AND MITIGATING FACTORS.

The language contained in the Ohio death penalty statutory scheme; "that the aggravating circumstances *** outweigh the mitigating factors" violates the Eighth and Fourteenth Amendments to the United States Constitution and Sections 9 and 16, Article I of the Ohio Constitution by inviting arbitrary and capricious jury

003470