are the lower courts required to file these with the Supreme Court? To analyze Stumpf at 99, it would be illogical for the legislature to require collection of these opinions (note, not just journal entries, or other statistical information) in one section, and then intend they were irrelevant to the appellate courts required to receive them. Why require these to be filed, and provide the added incentive that these judgments aren't final until then, if these are not intended to provide highly relevant information?

The Ohio Supreme Court has thus obliterated any ability to rationally distinguish between life an death sentences. The court's failure to know what a life sentence case looks like and what the lower courts have decided is mitigating have rendered them unable to ensure against arbitrariness.

If the Ohio court had demonstrated a willingness to check excessive sentences by an occasional reversal on such grounds, there would be less concern. But that has not yet happened and there is serious doubt whether it ever could, given the state of capital appellate "review." The system and its application does not carry out the constitutionally and statutorily mandated responsibility to ensure against arbitrariness.

Ohio's statutory scheme on its face has flaws; in application, these are compounded by a failure to exercise a constitutionally necessary review. No capital indictment can be sustained under these circumstances.

003491

The epitome of the court's willful blindness is presented by State vs. Stumpf. Stumpf argued that his co-defendant received a life sentence of 20 years in a trial to a different jury and that his own death sentence was excessive and arbitrary. Stumpf, supra, at 108. Not only did the court refuse to consider whether a similar degree of mitigation was present in the two cases, the court completely ignored its usual criteria of ratifying the death sentence on the basis of the aggravating circumstances and the nature and circumstances of the offense. Even if a life sentence imposed upon a co-defendant following trial is not necessarily an impediment to affirming the death sentence, it is at the least a very relevant consideration. But the Ohio Supreme Court simply ignored this factor. The court's rationale was that the co-defendant following trial is not necessarily an impediment to affirming the death sentence it is, at the least, a very relevant consideration. But the Ohio Supreme Court simply ignored this factor. The court's rationale was that the co-defendant's sentence " is the verdict of a jury in a separate trial." Id. at 108. This reasoning begs the question of whether or not the sentence imposed on Stumpf was an arbitrary one.

    G.    THE APPELLATE REVIEW PROVISION OF R.C. 2929.05 FAILS TO SPECIFICALLY REQUIRE INQUIRY AND FINDINGS REGARDING ARBITRARINESS, PASSION, OR PREJUDICE, AND THUS IS CONSTITUTIONALLY INADEQUATE UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 9 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

003492

Appellate review of sentences to determine whether the death sentence is "imposed under the influence of passion, prejudice, or any other arbitrary factor", serves as "a check against the random and arbitrary imposition of the death penalty." Gregg vs. Georgia (1976). 428 U.S. 153, 204 and 206. Death sentences which are arbitrarily or capriciously imposed, due to freakish or infrequent imposition, bias, or discriminatory application, cannot be upheld under the Eighth and Fourteenth Amendments to the United Stated Constitution. See Furman vs. Georgia (1976), 408 U.S. 238, 309-310, 313. R.C. 2929.05 does not specifically require an inquiry and findings as to the possible influence of passion, prejudice, or any other arbitrary factor. Such an inquiry is constitutionally necessary according to the state and federal constitutions.

The Ohio Supreme Court's recent decision in State vs. Thompson (1987), 33 Ohio St. 3d 1, appears to engage in a review of whether passion or prejudice pervaded the capital sentencing proceeding. If the appellate courts consistently consider whether the sentence was possibly influenced by passions or prejudice, this statutory omission may be secured.

As written, however, Ohio's statutory scheme is inadequate to assure compliance with the Eighth and Fourteenth Amendments to the United States Constitution and similar provisions of the Ohio Constitution. If this review is not required explicitly by R.C. 2929.05(A), and is not deemed required by implication in every case

003493

through a construction of the statute, R.C. 1.46(A)(B)(C), then Ohio's capital sentencing scheme must fail.

> H. THE OHIO DEATH PENALTY STATUTE IMPERMISSIBLY MANDATES IMPOSITION OF THE DEATH PENALTY AND PRECLUDES A MERCY OPTION IN THE ABSENCE OF MITIGATING EVIDENCE OR WHEN AGGRAVATING CIRCUMSTANCES OUTWEIGH MITIGATING FACTORS.
>
> THE STATUTE ALSO FAILS TO REQUIRE A DETERMINATION THAT DEATH IS THE APPROPRIATE PUNISHMENT.

The Ohio death penalty statutory scheme precludes a mercy option, either in the absence of mitigation or when the aggravating circumstances "outweigh" the mitigating factors. The statutes in those situations mandate that death shall be imposed. R.C. 2929.03, 2929.04. The sentencing authority is impermissibly limited in its ability to return a life verdict by this provision.

In Gregg, 428 U.S. at 199, the United States Supreme Court stated "nothing" in any of our cases suggests that the decision to afford an individual defendant mercy violates the Constitution. Furman held only that, "in order to minimize the risk that the death penalty would be imposed on a capriciously selected group of offenders, the decision to impose it had to be guided by standards so that the sentencing authority would focus on the particularized circumstances of the crime and the defendant." Gregg requires the state to establish, according to constitutionally sufficient criteria of aggravation and constitutionally mandated procedures, that capital punishment is appropriate for the defendant. Nothing

003494

requires the State to execute defendants for whom such a finding is made. Indeed the Georgia stature, approved in Gregg as being consistent with Furman, permits the jury to make a binding recommendation of mercy even though the jury did not find any mitigating circumstances in the case. Fleming vs. State (Ga. 1977), 240 S.E. 2d 37; Hayes vs. State (Ga. 1981), 283 S.E. 2d 238. Subsequent to Lockett the Fifth and Eleventh Circuits have repeatedly reviewed and remanded cases for error in the jury instructions when the trial court failed to clearly instruct the jury that they had the option to return a life sentence even if the aggravating circumstances outweighed mitigation. Chenault vs. Stynchcombe (C.A.5, 1978), 581 F. 2d 444; Spivey vs. Zant (C.A.5, 1981), 661 F. 2d 464; Goodwin vs. Balkcom (C.A.11, 1981), 684 F.2d 794; Westbrooke vs. Zant (C.A.11, 1983), 704 F. 2d 1487; Tucker vs. Zant (C.A.11, 1984), 724 F. 2d 882; Gray vs. Lucas (C.A.5, 1982), 677 F. 2d 1086; Prejean vs. Blackburn (D. La. 1983), 570 F. Supp. 985.

Capital sentencing that is constitutionally individualized requires a mercy option. An individualized sentencing decision requires that the sentencer possess the power to choose mercy and to determine that death is not the appropriate penalty for this defendant for this crime. In Barclay vs. Florida, supra, at 950, the Court stated that the jury is free to "determine whether death is the appropriate punishment."

Absent the mercy option, the accused faces a death verdict resulting from Lockett-type statute, i.e., a statute that mandated a death verdict in the absence of one of three specific mitigating factors. Under current Ohio law, the sentencer lacks the option of finding a life sentence appropriate in the face of a statute which requires that when aggravating circumstances outweigh mitigating factors "it shall impose a sentence of death on the offender." R.C. 2929.03(D)(3). A non-mandatory statutory scheme that affords the jury the discretion to recommend mercy in any case "overrides the risk that the death penalty will be imposed in spite of factors 'too intangible to write into a statute' which may call for a less severe penalty, and avoidance of this risk is constitutionally necessary." Conner vs. State (Ga. 1983), 302 S.E. 2d 266. Other state courts have also required a determination of "appropriateness" beyond mere weighing of aggravating circumstances and mitigating factors. People vs. Brown (1985), 40 Cal. 3d 512, reversed on other grounds (1987), ____ U.S. ____ 1, 107 S. Ct. 837.

The most recent case from the United States Supreme Court respecting the need for consideration of Mercy is California vs. Brown (1987), ____ U.S. ____ 1, 107 S. Ct. 837, wherein the court repeated "the Eighth Amendment's need for reliability in the determination that death is the appropriate punishment in a specific case." In Brown, the Court agreed that jurors may be

cautioned against reliance on "extraneous emotional factors," and that it was proper to instruct the jurors to disregard "mere sympathy." This instruction referred to the sort of sympathy that would be totally divorced from the evidence adduced during the penalty phase. The Court's analysis clearly approved and mandated that jurors be permitted to consider mercy, i.e., sympathy tethered or engendered by the penalty phase evidence.

The Ohio statute does not permit an appropriateness determination: a death sentence is mandated after a mere weighing. Finally while the Ohio Supreme Court has claimed that an "Ohio jury is not precluded from extending mercy to a defendant," State vs. Zuern (1987), 32 Ohio St. 3d 56, Ohio jurors are not in fact informed of this capability. In fact, the Ohio Supreme Court has permitted penalty phase jury instructions in direct contradiction to this extension of mercy capability. The Ohio "no-sympathy" instructions to juries do not in any way distinguish between "mere" sympathy (untethered), and that sympathy tied to the evidence presented in penalty phase, and therefore commit the very violation of the Eighth Amendment which the California instruction had narrowly avoided. While the Ohio Supreme Court claims extending mercy is permissible in Ohio, and acknowledged that "sentencing discretion is an absolute requirement of any constitutionally acceptable capital punishment statute," Zuern at 65, there is in fact no such indication on the statute's face, and no state court assurance that jurors are so informed. Bald, unsupported

assertions of compliance with the constitution are inadequate.

> I. R.C. 2929.03, 2929.04 AND 2929.05 VIOLATE THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 9 AND 16, ARTICLE I OF THE OHIO CONSTITUTION BY FAILING TO REQUIRE THE JURY TO DECIDE THE APPROPRIATENESS OF THE DEATH PENALTY.

Pursuant to R.C. 2929.05, Ohio appellate courts, when reviewing a death sentence, must make a determination that death is the only appropriate penalty. The trial court is not required to make such a determination.

A finding of appropriateness is constitutionally required. Coker vs. Georgia (1977), 433 U.S. 584. In Coker, the Court stated at 592, that the death penalty is unconstitutional "if it makes no measurable contribution to acceptable goals of punishment." The death penalty is unconstitutional if, in a particular case, it is not the only penalty that will appropriately serve the State's punishment goals.

The court consistently refers to the "need for reliability in the determination that death is the appropriate punishment in a given case." Woodson vs. North Carolina (1976), 428 U.S. 305; see, also Lockett vs. Ohio (1978), 438 U.S. 586, 604; Zant vs. Stephens (1983), 462 U.S. 862; Barclay vs. Florida (1983), 463 U.S. 939, 958-959 (Stevens, J., with Powell, J., concurring in judgment); California vs. Ramos (1983), 463 U.S. 922, 998-999.

Merely concluding that the aggravating circumstances outweigh those in mitigation is inadequate, since a jury might still conclude that "a comparison of the aggravating factors with the

totality of the mitigating factors leaves it in doubt as to the proper penalty," i.e., in doubt as to whether death is the appropriate punishment in a specific case. Smith vs. North Carolina (1982), 459 U.S. 1056, (Stevens, J., dissenting from denial of certiorari).

Whether the "ultimate penalty is warranted," Proffitt vs. Florida (1976), 428 U.S. 242, 253, must at times be considered by the jury in a manner analytically separate from the legislature's choice as to the significance of particular facts, labeled as aggravating circumstances. The jury, and sentencing judges, "maintain a link between contemporary community values and the penal system." Gregg vs. Georgia (176), 428 U.S. 153, 190.

Thus, one of the constitutionally required functions of a death penalty scheme is that the aggravating circumstances "reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of (aggravated) murder." Zant vs. Stephens, 462 U.S. at 877. An opportunity for the jury to find the death penalty inappropriate when "statutory aggravating circumstances exist, and arguably outweigh *** mitigating circumstances, but the (aggravating circumstances) are insufficiently weighty to support the ultimate penalty" "helps to fulfill (this) constitutionally required function." Barclay vs. Florida, 463 U.S. at 964, and fn. 7 (Stevens, J., with Powell, J., concurring in the judgment). See, also, Barclay at 954-955, and

41

002500

fn. 12 (plurality opinion discussion of Lewis vs. State (Fla., 1981), 398 So. 2d 432. Thus, a jury's "opposition to a particular aggravating circumstance is a legitimate consideration for imposing a life sentence, (as it) represent(s) factors which may call for a less severe penalty." Lockett vs. Ohio (1978), 428 U.S. 586, 605. The Ohio statute cannot be interpreted to in effect instruct the sentencer to ignore this fact calling for a less severe penalty. Ledewitz, The Requirement of Death: Mandatory Language in the Pennsylvania Death Penalty Statute (1982), 12 Duq. L. Rev. 103, 139-140. When an aggravating circumstance is present and no facts in mitigation are presented, for example, even though the aggravating circumstances outweigh the mitigating factors the sentencing body "must (still) determine whether the aggravating circumstances *** to be sufficiently substantial to call for the imposition of the death penalty." State vs. McDougall (N.C. Sup. Ct., 1983), 301 S.E. 2d 308, 324-328. See. Also, State vs. Watson (La. S. Ct., 1993), 423 So. 2d 1130; King vs. Mississippi (1983), 461 U.S. 919 (Marshall, J., dissenting from the denial of certiorari); Note, Capital Punishment in Ohio (1982), 31 Cleve. St. L. Rev. 495, 510-521.

The jury must be free to determine whether or not death is the appropriate punishment. Barclay vs. Florida, 463 U.S. at 950, quoting California vs. Ramos (1983), 463 U.S. 1008. The jury must make this decision and must make it in a fashion that will allow objective appellate review.

If the original sentencer does not make a finding that the penalty is appropriate in a particular case, then reviewing courts must speculate about whether the sentencer dealt with this issue. Arbitrary decisions will necessarily result where such a finding must be made for the first time on appeal because of speculation.

The present Ohio statutes create an unacceptable risk that death will be imposed in spite of factors in mitigation, or in the jury's decision that death is simply not an appropriate punishment for that man and that crime.

    J.    THE OHIO DEATH PENALTY SCHEME PERMITS IMPOSITION OF THE DEATH PENALTY ON A LESS THAN ADEQUATE SHOWING OF CULPABILITY BY FAILING TO REQUIRE A CONSCIOUS DESIRE TO KILL, PREMEDITATION, OR DELIBERATION AS THE CULPABLE MENTAL STATE.

The United States Supreme Court has stated that as the death penalty "is an extreme sanction, (it is) only suitable to the most extreme crimes." Gregg, 428 U.S. at 187. In Coker, 433 U.S. at 592, the court reaffirmed it s prior holding in Gregg that the death penalty for a deliberate murder was not grossly disproportionate. However, in Lockett at 613 (Blackmun, J., concurring), 619-620 (Marshall, J., concurring) and at 624 (White, J., concurring), members of the court expressed their views that imposition of the death penalty upon one who did not possess at least a purpose to cause the death of the victim would likely violate the Eighth Amendment.

A majority of the Supreme Court in Enmund vs. Florida (1982),

43

003501

458 U.S. 782, found the imposition of the death penalty upon a person who did not kill, attempt to kill, or intend to kill violated the Eighth and Fourteenth Amendments. The court stated:

> It is fundamental that "causing harm intentionally must be punished more severely than causing the same harm unintentionally: *** (To do otherwise is) "impermissible under the Eighth Amendment."

Enmund at 798.

The Ohio Legislature has attempted to meet this constitutional issue by requiring that "No person shall be convicted of aggravated murder unless he is specifically found to have intended to cause the death of another," and "that the prosecution must prove the specific intent of the person to have caused the death by proof beyond a reasonable doubt." R.C. 2903.01(D).

Nowhere, however, in the Ohio Revised Code is the phrase "specific intent" defined. There is considerable confusion over the meaning of this term in the criminal law sector, particularly when attempts are made to distinguish this from "general intent."

Even if the R.C. 2903.01(B) "discussion" of specific intent is deemed to result in a finding by the jury that the defendant had a conscious desire or objective to kill the victim, imposition of the death penalty would still be an excessive punishment. To avoid disproportionality, the defendant must have been found to have acted with premeditation and deliberation, or with prior calculation and design.

By failing to require the conscious desire to kill, or premeditation and deliberation as the culpable mental state, R.C.

44

2903.01(B) and R.C. 2929.04(A)(7) run afoul of the federal and state constitutions.

    K.    THE OHIO "BEYOND A REASONABLE DOUBT" STANDARD OF PROOF FAILS TO MEET THE REQUIREMENT OF HIGHER RELIABILITY FOR THE GUILT DETERMINATION PHASE OF A CAPITAL CASE.

        1.    The statutes fail to require proof beyond all doubt as to guilt that aggravating circumstances outweigh mitigating factors, and the appropriateness of death as a punishment before the death sentence may be imposed.

Insistence on reliability in guilt and sentencing determination is a vital issue in the Supreme Court's capital decisions. This emphasis on the need for reliability and certainty is a product of the unique decision that must be made in every capital case - the choice of life or death. The Supreme Court has consistently emphasized the "qualitative difference" of death as a punishment, stating that "death profoundly differs from all other penalties" and is "unique in its severity and irrevocability." Woodson 428 U.S. at 305; Lockett, 438 U.S. at 605; Gardner vs. Florida (1979), 430 U.S. 349; Gregg, 428 U.S. at 187.

The standard burden of proof required for capital cases should be proof beyond all doubt. The jury should be instructed during both phases that the law requires proof beyond all doubt of all the required elements. Most importantly, death cannot be imposed as a penalty except upon proof beyond all doubt of both the crime itself and the fact that the aggravating circumstances outweigh the mitigating circumstances.

003503

Proof beyond all doubt, a higher standard than the statutory proof beyond a reasonable doubt, should be required in a capital case because of the absolute need for reliability in both guilt and penalty phases. The irrevocability of the death penalty demands absolute reliability. Absent such a safeguard, the accused may be subject to a sentence of death in violation of his Eighth and Fourteenth Amendment rights.

The proof beyond a reasonable doubt standard is required in criminal cases "to safeguard men from dubious and unjust convictions." In re Winship (1970), 397 U.S. 358, 363. The petitioner in Winship was a juvenile facing a possible six years imprisonment. Crucial to the Court's decision was its assessment of the importance of the defendant's right not to be deprived of his liberty. Proof beyond a reasonable doubt was demanded in recognition that "the accused during a criminal prosecution has at stake interests of immense importance, both because of the possibility that he may lose his liberty upon conviction and because of the certainty that he would be stigmatized by the convictions." Id. Only this standard of proof adequately commanded "the respect and confidence of the community in applications of the criminal law." Id. at 364.

In a capital case, far more than liberty and stigmatization are at issue. The defendant's interest in his life must be placed on the scales. Only then can an appropriate balancing of the

interest be performed; only then can one know whether the "situation demands" a particular procedural safeguard. Given the magnitude of the interests at stake in a capital case and the necessity that the community "not be left in doubt whether innocent men are being condemned" <u>Winship</u> at 364, a high standard is required which reduces the margin of error "as much as humanly possible," <u>Eddings, supra,</u> at 878. The most stringent standard of proof that is "humanly possible" is proof beyond all doubt.

The American Law Institute's Model Penal Code, cited by the United States Supreme Court as a statute "capable of meeting constitutional concerns," adopts the beyond-all-doubt standard at the sentencing phase. See <u>Gregg vs. Georgia</u> (176), 428 U.S. 153, 191-195. The Model Penal Code mandates a life sentence if the trial judge believes that "although the evidence suffices to sustain the verdict, it does not foreclose all doubt respecting the defendant's guilt." Model Penal Code Section 210.6(1)(f). If the trial judge has any doubt of the defendant's guilt, life imprisonment is automatically imposed without a sentencing hearing. The words used are "all doubt", not merely "doubt" or "reasonable doubt".

    2.    Ohio's definition of proof "beyond a reasonable doubt" result sin a burden of proof insufficiently stringent to meet the higher reliability requirement in capital cases at the guilt phase, and this has not been cured by appellate courts in their review of convictions or death sentences.

47

Ohio law provides standard jury instructions of "reasonable doubt" and "proof beyond a reasonable doubt" as the applicable burden of proof in capital cases. R. C. 2901.05(D). Both definitions have been repeatedly challenged in the courts as inadequate. "*** (T)he restyling has changed and distorted the former definitions to such an extent that the statutory definition of reasonable doubt requires little more than a preponderance of the evidence." State vs. Frost (May 2, 1978), Franklin App. No. 77AP-728, unreported (Whiteside, J., dissenting). See Cross vs. Ledford (1954), 161 Ohio St. 469; Holland vs. United States (1954), 348 U.S. 121; Scurry vs. United States (C.A.D.C. 1965), 347 F. 2d 468, 470, certiorari denied (1967), 289 U.S. 883 "***(I)mportant affairs is the traditional test for clear and convincing evidence. *** The jury *** is prohibited from convicting unless it can say beyond a reasonable doubt that defendant is guilty as charged. *** To equate the two in the juror's mind is to deny the defendant the benefit of a reasonable doubt." State vs. Crenshaw (1977), 51 Ohio App. 2d 63, 65; cf. State vs. Nabozny (1978), 54 Ohio St. 2d 195; State vs. Sennett (1980), 70 Ohio App. 2d 171. Recently, the Sixth Circuit found in a non-capital case that "although we may disapprove of the 'willing to act language' (in R.C. 2901.05(D)) *** the instructions here, when taken as a whole, adequately convey the concept of reasonable doubt to the jury." Thomas vs. Arn (C.A.6, 1983), 704 F. 2d 865, 869.

48

The Ohio reasonable doubt instructions, subject as they are to some challenge for inadequacy in non-capital case. Even in Winship, when considering the reasonable doubt standard, the Court stated that the factfinder must be convinced of guilt "with utmost certainty," Id. at 364, and that the court must impress on the trier of fact the necessity of reaching a subjective state of certitude. Id. at 363. Ohio's definition of a reasonable doubt is inadequate to meet even these standards. The old "proof to a moral certainty" instruction should be required at a minimum in death cases.

Recent cases have illustrated the gross inadequacy of the reasonable doubt standard in capital cases. In State vs. Miller (1977), 49 Ohio St. 2d 1981, the defendant was sentenced to death solely upon fingerprint evidence that he had explained in an exculpatory manner. A vie-Justice majority of the Ohio Supreme Court concluded that "there was sufficient substantial evidence for the triers of fact to conclude that Miller was the criminal agent of the crimes charged," Id. at 203, and therefore affirmed the c conviction and sentence of death. Two members of the Court dissented on the ground that the evidence did not exclude "every reasonable hypothesis of innocence" and listed other evidence inconsistent with Miller's guilt. According to the dissent, the result of the majority's affirmance was the "impos(ition of) the death penalty on evidence insufficient to sustain a conviction."

49

003507

Miller at 206. George Miller's death sentence was eventually commuted as a result of the decision in Lockett vs. Ohio (1978), 438 U.S. 586. If no such decision had been rendered by the United States Supreme Court, Miller would have been executed.

In the capital case tried under the new law, State vs. Herman Ray Rucker (May 26, 1982), Wayne C.P. No. 82-Cr-018, unreported, the jury attempted to reverse itself. After reaching a unanimous verdict on guilt, the jury returned for the sentencing hearing, heard the testimony, deliberated, and then asked the court for instruction as the jury was no longer in agreement as to the question of guilt. After instruction by the court that they could only determine sentence at the second hearing, the jury opted for the least restrictive sentencing alternative, life with parole eligibility in 20 years. A new trial was ordered based on perjured testimony. Subsequently, Rucker was found not guilty of all charges.

In Miller and in Rucker, doubt existed as to guilt of the accused. Yet Miller received a death sentence affirmed on appeal, and Rucker, after an apparently agonizing jury decision, received a life sentence with a minimum of twenty (20) full years. Doubt on guilt is absolutely untenable in a capital case. The accused's interest is not merely in liberty, but life itself. The State's interest in justice is also a vital one. It is not advanced by doubt about guilt. A compromise sentence such as in Rucker exacts

50

003508

too great a price from both the State and the accused. The result is a manifest injustice.

Given this inadequate definition of proof beyond a reasonable doubt, one would hope some appellate review could ensure that the innocent are not executed. Unfortunately, the lower courts cannot rely on the Ohio Supreme Court's review to cure the inadequacies in the proof standard. In State vs. Apanovitch (1987), 33 Ohio St. 3d 19, the four member court majority conceded the case before them was based solely on circumstantial evidence, and that the burden of proof then required exclusion of every reasonable hypothesis of innocence but then affirmed the conviction and death sentence as there was substantial evidence upon which a jury could reasonably conclude that the elements were proven beyond a reasonable doubt. The death sentence was affirmed as the evidence was not, as a matter of law, insufficient. In other words, the court will affirm as long as reasonable jurors could differ as to the proof beyond a reasonable doubt showing.

Three justices dissented from the affirmance of Apanovitch's death sentence, believing they were statutorily bound to engage in a review of the appropriateness of the death sentence that goes beyond a bare sufficiently of the evidence test, and found "there (was) a substantial possibility that the defendant may not be guilty." Apanovitch, supra, at 29 (Sweeney, Locher, and Brown, JJ., concurring in part and dissenting in part). Obviously, it is

encouraging that three members of the court are willing to affirm a conviction, but vacate a death sentence when there is "lack of certainty as to guilt," and "even though the crime would merit that penalty if there were no doubt as to the defendant's guilt." Id. at 31. But a minority of the court cannot assure that an innocent will not be executed.

> 3. The Ohio death penalty statutes fail to require that the jury consider as a mitigating factor pursuant to R.C. 2929.04(B) that the evidence fails to preclude all doubt as to the defendant's guilt.

The language of R.C. 2929.04(B)(7) and 2929.03(D)(2) contemplates a balancing process focusing upon the mitigating factors present in the case as compared to the offender's "guilt" with respect to the aggravating specifications.

In determining the appropriateness of the death penalty, the fact that the evidence presented failed to foreclose all doubt as to guilt must be considered as a relevant mitigating factor. "The jury should have before it not only the prosecution's unilateral account of the offense but the defense version as well. The jury should be afforded the opportunity to see the whole picture ***." People vs. Terry (1964), 395 P. 2d 381.

The failure to require jury consideration of the fact that the evidence does not foreclose all doubt as to guilt violates the constitutional standards established for the imposition of the death penalty.

52