**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| LEE MOORE, | : | |
| | : | |
| Petitioner, | : | CASE NO.: C-1:00-CV-00023 |
| | : | |
| v. | : | JUDGE DLOTT |
| | : | |
| BETTY MITCHELL, WARDEN | : | MAGISTRATE JUDGE MERZ |
| | : | |
| Respondent. | : | |

**THE WARDEN'S OBJECTIONS TO THE MAGISTRATE
JUDGE'S RECOMMENDATION IN FAVOR OF GRANTING A
CONDITIONAL WRIT OF HABEAS CORPUS**

Respectfully submitted,

**MARC DANN
Ohio Attorney General**

s/Charles L. Wille
**CHARLES L. WILLE  (0056444)
Principal Assistant Attorney General**
Capital Crimes Section
30 East Broad Street, 23rd Floor
Columbus, Ohio 43215
(614) 728-7055; (614) 728-8600 (facsimile)
Email: cwille@ag.state.oh.us

**COUNSEL FOR RESPONDENT**

## STATEMENT OF THE CASE

The Petitioner, Lee E. Moore (hereinafter "Moore"), is under a sentence of death. On January 18, 2000, Moore filed a petition for a writ of habeas corpus in which he alleged that his conviction and death sentence are in violation of federal law or the Constitution of the United States. (Doc. 14) On March 20, 2000, the District Judge referred the case to United States Magistrate Judge Merz. On June 1, 2000, per the order of the Magistrate Judge, Moore filed an amended petition for a writ of habeas corpus. (Doc. 29) On July 17, 2000, Respondent filed an answer (Return of Writ) to the amended petition. (Doc. 31) On November 12, 2002, Moore filed a reply (Traverse) to Respondent's Return. (Doc. 81)

On June 23, 2003, the Magistrate Judge granted in part Moore's motion for discovery. (Doc. 93) On June 30, 2004, in conformity with the scheduling order issued by the Magistrate Judge, Moore filed a motion for an evidentiary hearing. (Doc. 102) On July 12, 2004, the Warden filed a memorandum in opposition. (Doc. 103) On July 23, 2004, Moore filed a memorandum in reply. (Doc. 104) On September 3, 2004, the Magistrate Judge issued a decision and order denying Moore's motion. (Doc. 105) Moore subsequently appealed that decision to the District Judge. On November 1, 2004, the Magistrate Judge issued a supplemental memorandum regarding Moore's appeal. (Doc. 109) On November 24, 2004, the District Judge overruled Moore's appeal and adopted the Magistrate Judge's order. (Doc. 111)

On December 3, 2004, the Magistrate Judge issued a scheduling order for the filing of final briefs. (Doc. 112) Consistent with the scheduling order, on April 11, 2005, Moore filed his Merit Brief. (Doc. 115). On May 11, 2005, the Warden filed her merit brief. (Doc. 116). On February 15, 2007, after the record was expanded at the joint

request of the parties, the Magistrate Judge issued a final report and recommendations (Doc. 128) in which he recommended the conditional grant of a writ of habeas corpus with respect to a part of the second ground alleged in support of relief, and the denial of a writ of habeas corpus with respect to the remaining grounds alleged in the petition.

## OBJECTIONS

The Warden respectfully objects to the Magistrate Judge's final report and recommendations, insofar as the Magistrate Judge recommends the conditional grant of a writ of habeas corpus with respect to allegations of error set forth in support of Moore's second alleged ground in support of relief.

On direct appeal before the Supreme Court of Ohio, Moore claimed, in support of his Thirteenth Proposition of Law, that his trial counsel was constitutionally ineffective in their preparation and presentation of mitigating evidence. Moore alleged specifically that counsel's deficient preparation of Dr. Chiappone's precipitated "devastating" testimony on cross-examination to the effect that Moore admitted killing Mr. Olinger to avoid apprehension and that he lied to the police when he claimed that the killing was accidental, thereby depriving him of a fundamentally fair sentencing hearing. The Supreme Court of Ohio denied relief, holding as follows:

> In his thirteenth proposition of law, Moore argues that counsel were ineffective at the penalty phase in failing to prepare adequately with witnesses, and that such failure resulted in a surprise revelation fatal to his case. Reversal of a conviction on the grounds of ineffective assistance of counsel requires defendant to show, first, that counsel's performance was deficient, and second, that the deficient performance prejudiced the defense so as to deprive defendant of a fair trial. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674, 693.

On cross-examination, Moore's court-appointed psychologist, Dr. David Chiappone's, testified that Moore had admitted that he had murdered Olinger to escape detection. Moore argues that counsel could not have spent enough time with Dr. Chiappone's because if they had, they would not have called him as a witness. Moore contends that other facts support the conclusion that counsel were "unready to proceed" with the penalty phase: that the court pressed the parties to finish the mitigation phase by the following Wednesday (a week later) to accommodate a juror who had to leave town; that defense counsel had met with Dr. Chiappone's only once prior to the conclusions of the guilt phase of the trial, and had not, at that point, discussed his testimony with him; and that the wife of one of the defense counsel was expecting a child in a few days.

Moore's arguments under this proposition are purely speculative and do not compel a reversal of his death sentence. That defense counsel had not discussed Dr. Chiappone's testimony with him at the time the guilty verdict was issued does not mean that the several days available prior to the penalty phase were inadequate. The fact that a juror had to leave town by the following Wednesday does not necessarily mean that the penalty phase was rushed improperly.

Moore's arguments appear to assume that defense counsel did not begin to prepare for the mitigation phase until the guilty verdict was announced. There is nothing in the record to support such an assumption.

With respect to Dr. Chiappone's testimony, defense counsel attempted to rehabilitate this witness, or at least to have him explain the meaning of his comments made during cross-examination. It is clear that part of Dr. Chiappone's testimony did not aid Moore's efforts to secure a life sentence. When the prosecutor asked Dr. Chiappone's on cross-examination whether he had ever questioned Moore as to why he killed Olinger, Dr. Chiappone's said that Moore "had a difficult time explaining it * * * . He said he was afraid the man would identify him." The prosecutor then asked, "So he [Moore] shot him so he would not be identified?" Dr. Chiappone's replied, "That's the implication." Defense counsel's objection was overruled. The prosecutor then asked, "When [Moore] gave that statement to the police about dropping the wallet and the gun just went off and it was an accident, [Moore] told you that he made that up?" Dr. Chiappone's replied, "That is correct."

On redirect, defense counsel undercut the damage of the prior exchange by asking Dr. Chiappone's, "That Moore indicated that the man dropped the wallet, but that's the part * * * that he made up to police, that the man [Olinger] actually did not drop the wallet that [Moore] claimed that [Olinger] did?" Dr. Chiappone's replied, "Yes."

4

> Moore has not established that his defense counsel's preparation for mitigation fell below an objective standard of reasonable representation. Given the paucity of mitigating evidence available on Moore's behalf, he called four witnesses and presented evidence for only half a day, the short period of time between the verdict and the beginning of the penalty phase (four days) may not be an inadequate time in which to prepare. Moreover, nothing indicates that counsel did not prepare for the penalty phase prior to the close of the guilt phase. In fact, the evidence produced during the penalty phase indicates the opposite.
>
> We conclude that Moore has not demonstrated "a reasonable probability that, were it not for counsel's errors, the result of the trial court would have been different." *State v. Bradley* (1989), 42 Ohio St. 3d 136, 538 N.E.2d 373, paragraph three of the syllabus. Accordingly, we reject the thirteenth proposition of law

*State v. Moore*, 81 Ohio St.3d 22, 34-37 (1998).

The Magistrate Judge found that trial counsel were objectively unreasonable in putting Dr. Chiappone's on the stand, in view of Dr. Chiappone's testimony on cross-examination that Moore admitted lying to the police and to having shot Mr. Olinger to avoid being identified. The Magistrate Judge further found that counsel's error was prejudicial because the testimony was severely damaging to the defense's case in mitigation. In making the latter findings, and in determining that a conditional grant of the writ was warranted, the Magistrate Judge relied primarily on the decision of the United States Court of Appeals for the Sixth Circuit in *Combs v. Coyle*, 205 F.3d 269, 288 (6th Cir. 2000). *See* Report and Recommendations (Doc. 128), pages 45-48. In fact, the Magistrate Judge essentially concluded that grant of the writ was compelled by the Sixth Circuit's decision in *Combs*.

However, Combs filed his petition prior to the enactment of the Anti-terrorism and Effective Death Penalty Act. Hence, the Sixth Circuit reviewed Combs' claims of ineffective assistance of counsel *de novo*, and did not apply the standard of deference

applicable to the legal determinations of the state courts under 28 U.S.C. Section 2254(d). *See* 207 F. 3d at 277 (noting specifically that presumption of correctness applied only to factual findings of state courts and not to mixed questions of law and fact). Under the standard of review set forth by 28 U.S.C. 2254(d)(1), the question presented in this case is whether the Supreme Court of Ohio's rejection of Moore's claim resulted in a decision that contravened or unreasonably applied a governing decision of the Supreme Court of the United States. A federal court in habeas corpus may overrule a state court only if the state court's determination on a federal question "applies a rule that contradicts the governing law set forth in *our* cases," or "confronts a set of facts that are materially indistinguishable from a decision of *this Court* and nevertheless arrives at a result different from *our precedent*." *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003), quoting *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000) (emphasis added).

      The Warden respectfully submits that the decision of the Supreme Court of Ohio rejecting Moore's allegations of ineffective assistance of trial counsel cannot be deemed contrary to or an objectively unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984), which, as recognized by the Ohio Supreme Court, is the controlling decision of the Supreme Court of the United States. The Supreme Court of Ohio essentially concluded that counsel could not be deemed ineffective under the *Strickland* standard simply because Dr. Chiappone's cross-examination resulted in testimony damaging to the defense's case. Other courts have reached a like conclusion in comparable circumstances. For example, in *Messer v. Kemp*, 760 F.2d 1080, 1092 (11th Cir. 1985), the Eleventh Circuit held that counsel was not ineffective in presenting the defendant's mother as a sentencing witness even though she stated during her testimony

6

that the defendant anticipated receiving a sentence of death.  In *Beaver v. Thompson*, 93 F.3d 1186, 1196-1197 (4th Cir. 1996), the Fourth Circuit similarly held that counsel's decision to call the *state's* expert as a witness for the defense was not unreasonable under the *Strickland* test.  *See also Hoxsie v. Kerby*, 108 F.3d 1239, 1246 (10th Cir. 1997) (to rise to the level of constitutional ineffectiveness as defined by *Strickland*, counsel's decision to call a particular witness "must have been completely unreasonable, not merely wrong") (internal citations and quotation marks omitted).

For all the foregoing reasons, the Warden respectfully requests that the Court sustain the Warden's objections to the Magistrate Judge's final report and recommendations, insofar as the Magistrate Judge recommends a conditional grant of the writ.

        **Respectfully submitted,**

        **MARC DANN**
        **Ohio Attorney General**

        s/Charles L. Wille
        **CHARLES L. WILLE  (0056444)**
        **Principal Assistant Attorney General**
        Capital Crimes Section
        30 East Broad Street, 23rd Floor
        Columbus, Ohio 43215
        (614) 728-7055; (614) 728-8600 (facsimile)
        Email: cwille@ag.state.oh.us

        **COUNSEL FOR RESPONDENT**

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing *The Warden's Objections To The Magistrate Judge's Recommendation In Favor Of Granting A Conditional Writ Of Habeas Corpus* has been sent via the court's electronic filing system to: Laurence E. Komp, Esquire (lekomp@swbell.net), 423 Madrina, Ballwin, Missouri, 63021; **and** Michael J. O'Hara, Esquire (Mohara@ortlaw.com), 25 Crestview Hills Mall Road, Suite 201, P. O. Box 17411, Covington, Kentucky, 41017; Counsel for Petitioner, this 28th day of February, 2007.

    s/Charles L. Wille
**CHARLES L. WILLE (0056444)**
Principal Assistant Attorney General